IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER,<br>　　　　Plaintiff<br><br>　　　　v.<br><br>MULTIPLAN, INC.; CONNECTICUT GENERAL LIFE INSURANCE CO., INC.; GM FINANCIAL, d/b/a GM Financial-HRA; INTERPLEX NAS, INC., d/b/a Interplex Holding, Ltd.; HUMANSCALE; TETERBORO LEARNING CENTER, d/b/a FlightSafety International, Inc.; SHARP ELECTRONICS; MACY'S INC.; FERRING PHARMACEUTICALS, INC.; TATA CONSULTANCY SERVICES; JP MORGAN CHASE & CO.; NIPPON EXPRESS USA, INC., d/b/a Nippon Express; SAMSUNG C&T AMERICA, INC.; LSG SKY CHEFS GROUP, d/b/a Sky Chefs, Inc.; TAM METAL PRODUCTS, INC.; DAIICHI SANKYO, INC.; EMSL ANALYTICAL, INC.; and ABC CORPS. 1-100,<br>　　　　　　　　　　Defendants. | Civil Action No.:<br><br>3:17-cv-05967-MAS-LHG<br><br>Motion Return Date:<br>December 4, 2017<br><br>Oral Argument Requested |

## DEFENDANT MULTIPLAN, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Rachel R. Hager, Esq.
FINAZZO COSSOLINI O'LEARY
MEOLA & HAGER, LLC
67 East Park Place, Suite 901
Morristown, New Jersey 07960
(973) 343-4960
　　　　　　　- and -
Errol J. King. Esq.
Layna C. Rush, Esq.
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
450 Laurel Street, 20th Floor
Baton Rouge, Louisiana 70801
(225) 381-7000
*Attorneys for Defendant MultiPlan, Inc.*

## TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

    I.   INTRODUCTION ........................................................................................... 1

    II.  BACKGROUND .............................................................................................. 2

         A.  Procedural Background ............................................................................ 2

         B.  Allegations of the Complaint ................................................................... 3

    III. ARGUMENT .................................................................................................... 5

         A.  Legal Standard For ERISA §502(a) Preemption .................................... 5

         B.  Plaintiff Could Have Brought Its Claims Against The Plans Under §502(a) ................ 7

              1.    Plaintiff Is Seeking Benefits Due Under The Plans ..................................... 7

              2.    Plaintiff Has Derivative Standing By Assignment of Rights From Its Patients ............................................................................... 8

         C.  There is No Legal Duty Independent Of ERISA Or The Plan Terms As To The Claims Asserted Against The Self-Funded Plans .......................... 9

         D.  This Court Should Exercise Supplemental Jurisdiction Over State Law Claims that Are Not Preempted .................................................... 13

CONCLUSION ............................................................................................................ 15

## TABLE OF AUTHORITIES

**CASES**                                                                                                             **PAGE**

*Aetna Health Inc. v. Davila,*
    542 U.S. 200 (2004) ............................................................................................. 6,9

*Beneficial Nat'l Bank v. Anderson,*
    539 U.S. 1 (2003) ................................................................................................... 5

*Berry v. Cadence Industries Corp.,*
    552 F. Supp. 1284 (E.D. Pa. 1982) ..................................................................... 14

*Borough of West Mifflin v. Lancaster,*
    43 F.3d 780 (3d Cir. 1995) .................................................................................. 15

*CardioNet, Inc. v. Cigna Health Corp.,*
    751 F.3d 165 (3d Cir. 2014) ............................................................................. 8,12

*Caterpillar, Inc. v. Williams,*
    482 U.S. 386 (1987) .............................................................................................. 5

*City of Chicago v. Int' Coll. Of Surgeons,*
    522 U.S. 156, 173, 118 S. Ct. 523, 139 L.Ed. 2d 525 (1997) ............................. 14

*DiFelice v. Aetna U.S. Healthcare,*
    346 F.3d 442 (3d Cir. 2003) ................................................................................ 10

*Franchise Tax Bd. Of Cal. V. Contr. Laborers Vacation Tr. for S. Ca.,*
    463 U.S. 1 (1983) ................................................................................................... 5

*Giles v. NYLCare Health Plans, Inc.,*
    172 F.3d 332 (5th Cir. 1999) ................................................................................. 6

*N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.,*
    760 F.3d 297 (3d Cir. 2014) ................................................................................ 12

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.,*
    801 F.3d 369 (D.N.J. 2015) ................................................................................... 8

*N. Jersey Brain & Spine Cnt. v. Connecticut Gen. Life Ins. Co.,*
    CIV. A. 10-4260 SDW, 2011 WL 4737067 (D.N.J. June 30, 2011) .............. 11, 13

*Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan,*
    388 F.3d 393 (3d Cir. 2004) .......................................................................... passim

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987)..................................................................................................7

*Scheibler v. Highmark Blue Shield*,
    243 F. Appx. 691 (3d Cir. 2007)............................................................................10

*Shaffer v. Board of School Directors*,
    687 F.2d 718 (3d Cir. 1982)...................................................................................13

*Thomas v. Aetna Inc.*,
    CIV. A. 98-2552, 1999 WL 1425366 (D.N.J. June 8, 1999)................................13

*Wayne Surgical Ctr. v. Concentra Preferred Sys., Inc.*,
    No. 06-928, 2007 WL 2416428 (D.N.J. Aug. 20, 2007) ...................................11,13

## STATUTES

28 U.S.C. § 1331..................................................................................................................3

28 U.S.C. § 1367(c) ..........................................................................................................14

28 U.S.C. § 1446...............................................................................................................1,3

29 U.S.C. § 1132..................................................................................................................3

29 U.S.C. § 1132(a)(1)(B) ...................................................................................................6

§502(a)(1)(B) .......................................................................................................................9

ERISA §502(a)............................................................................................................ passim

I.  **INTRODUCTION**

Defendant, MultiPlan, Inc. ("MultiPlan"), offers this opposition to the Motion to Remand for Lack of Subject Matter Jurisdiction filed by Plaintiff, North Jersey Brain & Spine Center ("NJBSC"). NJBSC field the instant suit against MultiPlan, Connecticut General Life Insurance Company ("Cigna"), which NJBSC claims is an insurer or alternatively, administrator of self-funded health plans and fifteen self-funded health benefit plans (the "Plans") established pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). The crux of NJBSC's complaint is that it was either not paid or incorrectly paid for services it rendered to members of the Plans. Based on allegations of the Complaint and Jury Demand ("Complaint") (ECF No. 1, Ex. A), two of the defendant Plans, Nippon Express USA, Inc. ("Nippon") and GM Financial ("GMF"), removed the case to this Court pursuant to 28 U.S.C. § 1446. (ECF No. 1).

NJBSC seeks remand, claiming that this Court lacks subject matter jurisdiction. NJBSC avers that because it failed to indicate in the Complaint that it obtained assignments from its patients to seek payment from the Plans and because it carefully crafted its Complaint to only allege state law causes of action, its claims are not preempted pursuant to ERISA §502(a). NJBSC's argument fails for two reasons: (1) the removing Plans demonstrated that NJBSC does have derivative standing from its patients; and (2) some of the state law causes of action, as pled in

1

the Complaint, are not predicated on a legal duty that is independent of the terms of the ERISA Plans.

## II. BACKGROUND

### A. Procedural Background

On June 20, 2017, NJBSC filed its Complaint in the Superior Court of New Jersey, Somerset County (Docket No. SOM-L-768-17) against MultiPlan, Cigna and the Plans (ECF No. 1, Ex. A). With regard to Cigna and the Plans, NJBSC asserts claims of conspiracy (Complaint, ¶¶ 139-147), breach of implied contract (Complaint, ¶¶ 148-164), breach of covenant of good faith and fair dealing (Complaint, ¶¶ 173-176), promissory estoppel (Complaint, ¶¶ 177-183), negligent misrepresentation (Complaint, ¶¶ 184-190), tortious interference (Complaint, ¶¶ 198-207), unjust enrichment and quantum meruit (Complaint, ¶¶ 213-221), violations of New Jersey regulations governing reimbursement of emergency services rendered by out-of-network providers (Complaint, ¶¶ 222-228), violations of the Health Information Network and Technologies Act and Health Claims Authorization Processing and Payment Act (Complaint, ¶¶ 229-236), and business libel (Complaint, ¶¶ 237-243). NJBSC also seeks declaratory judgment against the plans declaring that NJBSC is entitled to balance bill all the Plans' members and their dependents for all unpaid or underpaid medical and surgical services (Complaint, ¶¶ 244-248).

On August 9, 2017, two of the self-funded health plans named in the suit, Nippon and GMF, with the consent of all properly served defendants, removed the case to this Court pursuant to 28 U.S.C. § 1446 and Section 502(a) of ERISA. (ECF No. 1). The basis for the removal is that the Complaint seeks benefits under the terms of ERISA plans. Complete preemption is conferred by federal question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132.

### B. Allegations of the Complaint

NJBSC alleges that it entered into an agreement entitled "MPI Participating Professional Group Agreement" ("Provider Agreement") whereby NJBSC would participate in MultiPlan's participating provider network. Complaint, ¶ 38. Pursuant to the terms of the Agreement, NJBSC agreed to accept a discounted rate of payment from MultiPlan's clients (*i.e.*, third party payers such as health insurers and health plans) when MultiPlan's clients access the Provider Agreement. Complaint, ¶¶ 40-41. In exchange for its participation in the MultiPlan network, NJBSC obtained several benefits including prompt payment of claims where MultiPlan's client accessed the Provider Agreement and steerage by virtue of being listed in MultiPlan's nationwide directory of participating providers. Complaint, ¶¶ 48, 61-62.

NJBSC claims that through "access agreements" or "client agreements", MultiPlan gave its clients discretion as to whether to access the Provider Agreement

3

(*i.e.*, third party payer could pay pursuant to the contract rate in the Provider Agreement or the third party payer could pay the claim based on interpretation of the patient's plan benefits). Complaint, ¶¶ 93-94. NJBSC alleges that when it submitted a claim to Cigna, Cigna would take one of two actions:

> <u>First,</u> CGLIC would either completely disregard the fact that the patient's plan participated in the MultiPlan program, and thus, it adjudicated the claim based on CGLIC's (erroneous) interpretation of the patient plan's benefits as if the plan was not participating in the MultiPlan program. <u>Second,</u> in the alternative, CGLIC would forward the claim to MultiPlan for "repricing" to determine whether NJBSC's "Contract Rate" was above the reimbursement amount that CGLIC and/or the Other Payor Defendants set as the "maximum amount the plan will pay" for the claim (or specific claim line within the claim) and the resulting "discount" and "savings" to Defendants from the repricing.

Complaint, ¶ 96. NJBSC alleges that Cigna adjudicated claims based on the Plan's benefit design, rather than pursuant to the Provider Agreement. This allegation is further demonstrated by NJBSC's allegations with regard to the exemplar claims:

- "Defendants refused to make payment, incorrectly alleging that the claim was untimely…. defendants did not pay them at all." Complaint, ¶ 68.

- "Defendants refused to make payment, incorrectly alleging that the services provided were not covered because NJBSC is an out-of-network provider. . . ." Complaint, ¶ 69.

- "Upon receipt, NJBSC timely submitted the Horizon EOB to CGLIC for processing and payment as the secondary health insurance payor. Defendants nevertheless did not make payment, refusing to acknowledge the Horizon EOB." Complaint, ¶ 71.

- "Defendants refused to pay CPT code 63042 (posterior extradural laminotomy, laminectomy for exploration/decompression, or excision of

4

>   herniated intervertebral disks procedures), claiming the service was a 'incidental procedure' and thus improperly 'bundled' it." Complaint, ¶ 77 (footnote omitted).
>
> - "Defendants denied coverage, asserting that J.G. did not have out-of-network benefits." Complaint, ¶ 82.

Thus, at least for some of the exemplar claims in the Complaint, NJBSC avers that the claims were adjudicated pursuant to the terms of the Plan documents and the Plans determined that the claims were not covered and made no payments.

## III.    ARGUMENT

### A.    Legal Standard For ERISA §502(a) Preemption

Federal district courts have original jurisdiction over cases that "arise under" federal law. Pursuant to the "well-pleaded complaint" rule, a plaintiff is ordinarily entitled to remain in state court so long as its complaint does not allege a federal claim on its face. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Franchise Tax Bd. of Cal. v. Contr. Laborers Vacation Tr. for S. Ca.*, 463 U.S. 1, 10 (1983). There is an exception to the well-pleaded complaint rule for matters that Congress has so completely preempted that any civil complaint that falls within this category is necessarily federal in character. *Id.* at 9–12. "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

Section 502(a) of ERISA—the statute's civil enforcement provision—is one such provision "with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan.*, 388 F.3d 393, 399-400 (3d Cir. 2004), quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). Section 502(a) allows an ERISA plan "participant" or "beneficiary" to file a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). By providing a civil enforcement cause of action, Section 502 completely preempts any state cause of action seeking the same relief, regardless of how artfully pleaded as a state action. Furthermore, because such a claim presents a federal question, it provides grounds for the exercise of jurisdiction upon removal. <u>One federal claim is sufficient to support removal</u>. *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332 (5th Cir. 1999).

Based on the U.S. Supreme Court's reasoning in *Davila*, the Third Circuit has articulated two conditions which must be met for a claim to be completely preempted under § 502(a) and therefore subject to removal: (1) that the plaintiff could have brought the claim under ERISA's civil enforcement scheme in § 502(a); and (2) that

6

there is no other independent legal duty that is implicated by a defendant's actions. *See Pascack Valley*, 388 F.3d at 400.

### B. Plaintiff Could Have Brought Its Claims Against The Plans Under § 502(a).

#### 1. Plaintiff Is Seeking Benefits Due Under The Plans.

NJBSC seeks payment of benefits from ERISA governed health plans. A claim may be brought under ERISA Section 502(a) "to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987). NJBSC alleges that it provided medically necessary surgical and related medical services to patients whose health plans were sponsored by their employer and administered by Cigna. Complaint, ¶ 66. The Plans are employer sponsored benefit plans providing benefits to the Plan participants; they are governed by ERISA. NJBSC alleges that it submitted claims for reimbursement to the defendants which they allegedly failed to pay either in whole or in part. Complaint, ¶¶ 68-75 and 88. Further, NJBSC claims that Cigna, as the claims administrator for the Plans, adjudicated the claims based on interpretation of the patient plan's benefits. Complaint, ¶ 96. Clearly, NJBSC is seeking to recover benefits due under various ERISA plans as well as seeking to enforce the rights of its patients under these plans.

### 2. Plaintiff Has Derivative Standing By Assignment of Rights From Its Patients.

Pursuant to § 502(a) of ERISA, a plan participant or beneficiary can file suit to recover benefits due to him under the terms of his plan. *Pascack Valley*, 388 F.3d at 400. A plan participant or beneficiary may also assign his or her rights under the plan to a health care provider. *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165 (3d Cir. 2014); *North Jersey Brain and Spine Center v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015). Doing so confers derivative standing on the health care provider. *Id.*

In the instant case, NJBSC has obtained derivative standing from its patients by virtue of assignments. As the Plans established in their Notice of Removal, NJBSC has alleged that plan participants completed "forms or other documents providing the patient's insurance information and requesting the patients provide their insurance card." The noted forms, which are posted on NJBSC's website, include a form entitled "Insurance Authorization and Assignment Form" which was attached to the Notice of Removal. *See* ECF No. 1, Ex. D. Moreover, as set forth in the Notice of Removal, NJBSC has previously represented in related litigation that by signing such forms, their patients assigned their right to pursue claims for benefits under ERISA. *North Jersey Brain and Spine Center v. Aetna, Inc.*, 801 F.3d at 370-71. The Plans also attached the claims form for each of the patients identified

8

in the Complaint to the Notice of Removal. The claim form indicates that the patient assigned its claim for benefits. *See* ECF No. 1 and 2, Ex. E, Box 27.

Moreover, the MultiPlan Network Professional Handbook, which NJBSC attached to and made part of its Complaint, requires healthcare providers to obtain an assignment of benefits from the patient. *See* Complaint, Ex. B, p. 21. Thus, NJBSC is required to obtain an assignment to receive payment; has submitted claims wherein it indicated it had obtained an assignment; and includes a copy of its template assignment form on its website wherein the patient authorizes NJBSC to recover benefits under ERISA § 502(a) on behalf of the patient. These facts when considered cumulatively are ample evidence that NJBSC has obtained assignments from its patients to seek payment of benefits from the Plans.[1]

### C. There Is No Legal Duty Independent Of ERISA Or The Plan Terms As To The Claims Asserted Against The Self-Funded Plans.

At least some of the state law claims asserted by NJBSC in the Complaint are predicated on the Plan's administrative decisions regarding coverage. The Third Circuit recognizes that a plaintiff's state law claims are preempted by ERISA if the

---

[1] This Court can consider the evidence as a whole when determining whether NJBSC is proceeding by way of assignment. *See Pascack Valley*, 388 F.3d at 400 ("In determining whether a plaintiff has artfully pled his suit so as to couch a federal claim in terms of state law, we are permitted to look beyond the face of the complaint"); *see also AETNA Health, Inc. v. Davila*, 542 U.S. at 211 (to determine whether a cause of action falls within the scope of § 502(a)(1)(B), courts must examine the complaint, the statute on which the state law claims are based, and the various plan documents).

9

claim could have been the subject of a civil enforcement action under § 502(a). *Scheibler v. Highmark Blue Shield*, 243 F. Appx. 691 (3d Cir. 2007). Furthermore, the Third Circuit has consistently held that challenges to an administrative decision regarding whether a certain benefit is covered under an ERISA plan are completely preempted by ERISA. *Id.* at 693; *see also DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 446 (3d Cir. 2003). In the instant case, NJBSC is clearly challenging Cigna's decision regarding whether a benefit is covered under an ERISA plan. This is borne out by the allegations of non-payment as to certain of the exemplar claims:

- "Defendants refused to make payment, incorrectly alleging that the claim was untimely.... defendants did not pay them at all." Complaint, ¶ 68.

- "Defendants refused to make payment, incorrectly alleging that the services provided were not covered because NJBSC is an out-of-network provider. . . ." Complaint, ¶ 69.

- "Upon receipt, NJBSC timely submitted the Horizon EOB to CGLIC for processing and payment as the secondary health insurance payor. Defendants nevertheless did not make payment, refusing to acknowledge the Horizon EOB." Complaint, ¶ 71.

- "Defendants refused to pay CPT code 63042 (posterior extradural laminotomy, laminectomy for exploration/decompression, or excision of herniated intervertebral disks procedures), claiming the service was a 'incidental procedure' and thus improperly 'bundled' it." Complaint, ¶ 77 (footnote omitted).

- "Defendants denied coverage, asserting that J.G. did not have out-of-network benefits." Complaint, ¶ 82.

NJBSC is undoubtedly challenging a determination of whether a benefit is covered under the plan. NJBSC attempts to link the non-payment to the Provider

10

Agreement, stating that the service should have been paid at 80% of billed charges under the "MultiPlan program", but that does not negate the fact that NJBSC admits that it was not paid because of a coverage decision. Complaint, ¶¶ 68-85. NJBSC even admits that when a MultiPlan client does access the Provider Agreement, the client still maintains the ability to make coverage decisions under the Plan. Complaint, ¶ 40. A determination of whether a service is covered is always made pursuant to the plan document; the plan document is critical to a determination of whether a particular benefit is provided for. *See N. Jersey Brain & Spine Ctr. v. Connecticut Gen. Life Ins. Co.*, CIV.A. 10-4260 SDW, 2011 WL 4737067 (D.N.J. June 30, 2011); *Wayne Surgical Ctr. v. Concentra Preferred Sys., Inc.*, No. 06-928, 2007 WL 2416428, at *4 (D.N.J. Aug. 20, 2007).

Unlike in *Pascack Valley*, the crux of the dispute here does not involve interpretation of the Provider Agreement. In *Pascack Valley*, under the terms of the Subscriber Agreement, the health plan had to remit payment to the healthcare provider for covered services within a 30-day window or the discount rate offered by the healthcare provider was forfeited. *Pascack Valley*, 388 F.3d at 396. The dispute arose after the healthcare provider submitted claims for services and the health plan remitted payment based on the discounted rate. The healthcare provider subsequently sued the plan for alleged breach of the agreement on the theory that the plan's payment had been made outside the 30-day window and thus, was improperly

11

discounted. In *Pascack Valley*, the interpretation of the ERISA plan was not an essential part of resolving the claim. The dispute was over the *amount* of payment that was due under the Subscriber Agreement. In the instant case, as evidenced by the exemplar claims discussed above, the dispute is not over the amount of payment. The dispute is over *whether the service was covered.*

NJBSC admitted that it received no payment on some of the exemplar claims because the Plan determined there was no coverage. Complaint, ¶¶ 68-85. In *Pascack Valley*, the Court held that ERISA does not preempt claims over the amount of reimbursement, but it does preempt claims over whether the plan covers a particular service. As the Third Circuit articulated in *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 177-178 (3d Cir. 2014), there is a distinction between claims seeking coverage under a health plan and claims seeking reimbursement for coverage. Here, NJBSC's state law claims are conditioned upon the terms of an ERISA Plan and interpretation of the plan is necessary to determine if a duty exist. See *N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014).

Plaintiff's claims for promissory estoppel, unjust enrichment and quantum meruit seek payment of medical charges and relate to challenges to the administration of benefits. With regard to its promissory estoppel claim, NJBSC states that it called to confirm that the services rendered "were covered under

defendant's respective insurance plan." Complaint, ¶ 178. NJBSC further alleges that "defendants have not paid NJBSC correctly." Complaint, ¶ 181. With regard to the unjust enrichment and quantum meriut claims, NJBSC claims "at all relevant times, all defendants refused to pay NJBSC correctly for the surgical and related medical services plaintiff provided to MultiPlan Patients." Complaint, ¶ 215. These claims of action are predicated on whether the services provided are covered under the terms of the plans. The claims cannot be resolved without reference to the benefit plans governed by ERISA and interpretation of the plan terms. *See North Jersey Brain and Spine Center v. Connecticut General Life Ins. Co.*, No. 10-4260 (SDW), 2011 WL 4737067 (D.N.J. June 30, 2011); *see also Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.*, No. 06-928, 2007 WL 2416428, at *5 (D.N.J. Aug. 20, 2007) (concluding that state law claims for unjust enrichment, tortious interference, and violation of New Jersey Fraud Act cannot be resolved with reference to ERISA benefit plans); *Thomas v. Aetna Inc.*, CIV. A. 98-2552, 1999 WL 1425366, at *9 (D.N.J. June 8, 1999) (reaching same conclusion as to fraudulent inducement claim).

### D. This Court Should Exercise Supplemental Jurisdiction Over State Law Claims That Are Not Preempted.

When a plaintiff asserts a sufficiently substantial federal question, so as to vest the district court with subject matter jurisdiction, the district court has discretion to exercise or decline pendent jurisdiction. *Shaffer v. Board of School Directors*, 687

13

F.2d 718, 723 (3d Cir. 1982). The Court should exercise jurisdiction over NJBSC's state law claims in this instance.

Under § 1367(c), a district court may decline to exercise supplemental jurisdiction if (1) a claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; and (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. None of these factors are present in the instant case. The issues of state law are not novel or complex; the elements of these causes of action are well-established. The state law claims do not predominate over the ERISA claims. Also of importance, any factual inquiries for the claims will be very similar and will involve the testimony of many of the same witnesses. Finally, NJBSC has not even suggested any exceptional circumstances that warrant the decline of supplemental jurisdiction.

In addition to the statutory provisions of 28 U.S.C. § 1367(c), the Court should consider the relevant factors of judicial economy, convenience, fairness, and comity. *City of Chicago v. Int' Coll. of Surgeons*, 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997); *Berry v. Cadence Industries Corp.*, 552 F. Supp. 1284 (E.D. Pa. 1982). Certainly judicial economy and convenience militate in favor of this Court retaining jurisdiction. The ERISA governed claims and state law claims are

14

based on the same nucleus of operative facts and inconsistent results could occur if the claims are subject to two different forums. *See Borough of West Mifflin v. Lancaster*, 43 F.3d 780 (3d Cir. 1995).

## IV.  CONCLUSION

While some of NJBSC's claims may be predicated on its contractual relationship with MultiPlan, at least five of the exemplar claims are dependent on whether there was coverage under the patient's Plan, not the amount of reimbursement. As such, some of the claims at issue in this litigation are completely preempted by ERISA § 502(a). One federal claim is sufficient to support removal. Moreover, this Court should exercise supplemental jurisdiction over any remaining state law claims. For these reasons, NJBSC's Motion to Remand For Lack Of Subject Matter Jurisdiction should be dismissed.

Dated:  November 1, 2017

By:   */s/ Rachel R. Hager*
      Rachel R. Hager, Esq.
      FINAZZO COSSOLINI O'LEARY
      MEOLA & HAGER, LLC
      67 East Park Place, Suite 901
      Morristown, New Jersey 07960
      (973) 343-4960

      - and -

      Errol J. King. Esq.
      Layna C. Rush, Esq.
      BAKER, DONELSON, BEARMAN,

                    CALDWELL & BERKOWITZ, PC
                    450 Laurel Street, 20th Floor
                    Baton Rouge, Louisiana 70801
                    (225) 381-7000
                    *Attorneys for Defendant MultiPlan, Inc.*