E. Evans Wohlforth, Jr.
Caroline E. Oks
Charlotte M. Howells
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4879

Joshua B. Simon
Warren Haskel
Dmitriy Tishyevich
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

*Attorneys for Defendants Connecticut General Life Insurance Co.; GM Financial; Interplex NAS, Inc.; Humanscale; Teterboro Learning Center; Sharp Electronics Corp.; Macy's Inc.; Ferring Pharmaceuticals, Inc.; Tata Consultancy Services; JPMorgan Chase & Co.; Nippon Express USA, Inc.; Samsung C&T America, Inc.; LSG Sky Chefs Group; Tam Metal Products, Inc.; Daiichi Sankyo, Inc.; and EMSL Analytical, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER,<br><br>Plaintiff,<br><br>v.<br><br>MULTIPLAN, INC., et al.,<br><br>Defendants. | Civil Action No. 3:17-cv-05967 |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

## TABLE OF CONTENTS

**Page**

INTRODUCTION...................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 3

    A.    The Parties. ................................................................................... 3

    B.    The ERISA Participants Assigned Their Benefits to NJBSC. ............... 4

    C.    NJBSC's Claims for Benefits. ........................................................ 6

    D.    Defendants' Notice of Removal and NJBSC's Motion to Remand...... 7

ARGUMENT ............................................................................................................ 7

I.      STANDARD FOR ERISA PREEMPTION ................................................. 7

II.     NJBSC COULD HAVE BROUGHT CLAIMS ON ITS PATIENTS' BEHALF UNDER SECTION 502(A). ...................................... 8

    A.    Defendants Have Met Their Burden to Show that NJBSC Received Assignments from the Patients at Issue. .................................. 8

        1.    NJBSC's 'Executed Assignment Rule' Has No Basis in Law. .................. 9

        2.    The Health Insurance Claim Forms that NJBSC Submitted to Cigna Are Further Proof of Assignments. ............................ 12

        3.    In the Alternative, NJBSC Should Be Required to Produce Assignments for the Eighteen Patients at Issue. ..................... 14

    B.    Defendants Are Not Required to Produce ERISA Plans to Establish Standing. .................................................................. 15

III.    NJBSC'S CLAIMS ARE NOT BASED ON LEGAL DUTIES INDEPENDENT OF ERISA..................................................................... 16

    A.    Because NJBSC Has No Direct Contract with Cigna or the ERISA Plan Sponsors, NJBSC's Challenges to Reimbursement—Particularly to Claim Denials—Turn on Plan Terms and Are Thus Preempted. ................... 17

    B.    No Independent Contract Exists Between NJBSC and Cigna or the ERISA Plan Sponsors.................................................... 19

    C.    The Supposed "*Memorial Hospital* Rule" Is Not the Law in This Circuit, and It Is Irrelevant Here in Any Event.................................... 21

D.     NJBSC's "General Applicability" Argument Is Baseless. ................................. 23

E.     Counts XI and XII (New Jersey Statutes and Regulations) Are Preempted......... 24

     1.     Resolution of Counts XI and XII Requires Interpreting ERISA Plans.............................................................................................................. 24

     2.     The Savings Clause Does Not Apply........................................................ 27

**IV.     SUPPLEMENTAL JURISDICTION IS APPROPRIATE.......................................... 27**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004)..........................................................................................7, 8

*Aetna Life Ins. Co. v. Huntingdon Valley Surgery Ctr.*,
2015 WL 1954287 (E.D. Pa. Apr. 30, 2015) ...........................................................23

*Barnert Hosp. v. Horizon Healthcare Servs., Inc.*,
2007 WL 1101443 (D.N.J. Apr. 11, 2007) ..............................................................20

*Borough of W. Mifflin v. Lancaster*,
45 F.3d 780 (3d Cir. 1995)........................................................................................28

*Children's Hosp. Corp. v. Kindercare Learning Ctrs., Inc.*
360 F. Supp. 2d 202 (D. Mass. 2005) .......................................................................23

*Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan*,
143 F. App'x 433 (3d Cir. 2005) .............................................................................11

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*,
2017 WL 685101 (D.N.J. Feb. 21, 2017) ...................................................3, 24, 25

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*,
591 F.3d 1337 (11th Cir. 2009) .....................................................................13, 17, 23

*Cypress Fairbanks Med. Ctr. v. Pan-Am Life Ins. Co.*,
110 F.3d 280 (5th Cir. 1997) ....................................................................................22

*De Asencio v. Tyson Foods, Inc.*,
342 F.3d 301 (3d Cir. 2003)......................................................................................29

*DeMaria v. Horizon Healthcare Servs., Inc.*,
2015 WL 3460997 (D.N.J. June 1, 2015) ..............................................................13

*Elite Orthopedic & Sports Med. PA v. Aetna Ins. Co.*,
2015 WL 5770474 (D.N.J. Sept. 30, 2015) ...........................................6, 13, 17, 18

*Emergency Physicians of St. Clare's v. United Health Care*,
2014 WL 7404563 (D.N.J. Dec. 29, 2014)..............................................................12

*Emerus Hosp. Partners, LLC v. Health Care Serv. Corp.*,
41 F. Supp. 3d 695 (N.D. Ill. 2014) .......................................................................13

*Englewood Hospital & Med. Ctr. v. Aftra Health Fund*,
    2006 WL 3675261 (D.N.J. 2006) ......................................................................20

*Geisinger S. Wilkes-Barre Med. Ctr. v. Duda*,
    2008 WL 919531 (M.D. Pa. Mar. 31, 2008).......................................................22

*J&J Mobile Home Park Inc. v. Bell*,
    266 F. App'x 195 (3d Cir. 2008) ........................................................................3

*Khan v. Guardian Life Ins. Co. of Am.*,
    2016 WL 1574611 (D.N.J. Apr. 19, 2016) ........................................................16

*Lee v. Cent. Parking Corp.*,
    2015 WL 4510128 (D.N.J. July 24, 2015)..........................................................15

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
    800 F.3d 99 (3d Cir. 2015)...............................................................................15

*McCall v. Metro Life Ins. Co.*,
    956 F. Supp. 1172 (D.N.J. 1996) ......................................................................21

*Meacle v. Horizon Blue Cross Blue Shield of N.J., Inc.*,
    2005 WL 2811786 (D.N.J. Oct. 27, 2005)..........................................................9

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996)........................................................................................23

*MedWell, LLC v. CIGNA Healthcare of New Jersey, Inc.*,
    2013 WL 5533311 (D.N.J. Oct. 7, 2013)...........................................................12

*Menkes v. Prudential Ins. Co. of Am.*,
    762 F.3d 285 (3d Cir. 2014)........................................................................7, 23

*Metro. Life Ins. Co. v. Taylor*,
    481 U.S. 58 (1987)............................................................................................7

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*,
    801 F.3d 369 (3d Cir. 2015).........................................................................5, 10

*N. Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co.*,
    2017 WL 659012 (D.N.J. Feb. 17, 2017) ...........................................9, 10, 13, 24

*N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*,
    2011 WL 4737067 (D.N.J. June 30, 2011).....................................................20, 21

*N. Jersey Ctr. for Surgery, P.A. v. Horizon Blue Cross Blue Shield of N.J., Inc.*,
    2008 WL 4371754 (D.N.J. Sept. 18, 2008) ...................................................12, 16

*N. Jersey Spinal Medical & Surgery, P.A. v. IBEW Local 164*2012
WL 1988708 (D.N.J. May 31, 2012) ...................................................14

*N. Shore-Long Island Jewish Health Care Sys., Inc. v. MultiPlan, Inc.,*
953 F. Supp. 2d 419 (E.D.N.Y. 2013) .............................................13, 18

*N.J. Carpenters & the Tr. Thereof v. Tishman Const. Corp. of N.J.,*
760 F.3d 297 (3d Cir. 2014)............................................................16

*N.J. Spinal Med. & Surgery, P.A. v. Aetna Ins. Co.,*
2009 WL 3379911 (D.N.J. Oct. 19, 2009).......................................9, 14

*Newark Beth Israel v. N. N.J. Teamsters Ben. Plan,*
2006 WL 2830973 (D.N.J. Sept. 29, 2006) ........................................20

*NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of N.J., Inc.,*
979 F. Supp. 2d 513 (D.N.J. 2013) .....................................................9

*Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan,*
388 F.3d 393 (3d Cir. 2004)....................................................... *passim*

*Pilot Life Ins. Co. v. Dedeaux,*
481 U.S. 41 (1987)....................................................................7, 27

*Premier Health Ctr., P.C. v. UnitedHealth Grp.,*
2012 WL 1135608 (D.N.J. Apr. 4, 2012) ...........................................10

*Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield,*
2017 WL 751851 (D.N.J. Feb. 27, 2017) .............................................9

*In re Prudential Ins. Co. Am. Sales Practice Litig.,*
148 F.3d 283 (3d Cir. 1998)........................................................27, 29

*Pryzbowski v. U.S. Healthcare, Inc.,*
245 F.3d 266, 273 (3d Cir. 2001)..................................................18, 21

*R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.,*
168 N.J. 255 (2001) ......................................................................26

*Shore v. Independence Blue Cross & Independence Health Grp.,*
2016 WL 6821944 (E.D. Pa. Nov. 17, 2016) .......................................16

*Somerset Orthopedic Associates, P.A. v. Aetna Life Insurance Co.,*
2007 WL 432986 (D.N.J. Feb. 2, 2007) .............................................16

*Sportscare of Am., P.C. v. Multiplan, Inc.,*
2011 WL 223724 (D.N.J. Jan. 24, 2011).......................................10, 18

*Spring E.R., LLC v. Aetna Life Ins. Co.*,
    2010 WL 598748 (S.D. Tex. Feb. 17, 2010) ........................................................13

*Steel Valley Auth. v. Union Switch & Signal Div.*,
    809 F.2d 1006 (3d Cir. 1987)...................................................................................3

*Temple Univ. Hospital v. Grp. Health, Inc.*,
    413 F. Supp. 2d 420 (E.D. Pa. 2005) ....................................................................20

*UPMC Presby Shadyside v. Whirley Indus., Inc.*,
    2005 WL 2335337 (W.D. Pa. Sept. 23, 2005).......................................................20

*Vaimakis v. United Healthcare/Oxford*,
    2008 WL 3413853 (D.N.J. Aug. 8, 2008) .............................................................12

*Zgrablich v. Cardone Indus., Inc.*,
    2016 WL 427360 (E.D. Pa. Feb. 3, 2016) ..............................................................2

**Statutes & Regulations**

28 U.S.C. § 1331 .......................................................................................................7

28 U.S.C. § 1367 ................................................................................................27, 28

28 U.S.C. § 1441 .......................................................................................................7

29 U.S.C. § 1132(a) ........................................................................................ *passim*

29 U.S.C. § 1144(a) .............................................................................7, 22, 23, 27

N.J. Admin. Code § 11:22 ........................................................................24, 25, 26, 27

N.J. Admin. Code § 11:24 ........................................................................24, 25, 26, 27

N.J. Stat. Ann. § 17:48 .......................................................................................24, 26

N.J. Stat. Ann. § 17B:26 .....................................................................................24, 26

N.J. Stat. Ann. § 17B:27 .....................................................................................24, 26

N.J. Stat. Ann. § 17B:30 ...........................................................................................24

N.J. Stat. Ann. § 26:2J .......................................................................................24, 26

## INTRODUCTION[1]

This case belongs in federal court for a straightforward reason. North Jersey Brain & Spine Center ("NJBSC") brings claims on behalf of eighteen patients, each of whom is covered by an Employment Retirement Income Security Act ("ERISA") plan. Whether NJBSC is entitled to any additional benefits from Defendant Connecticut General Life Insurance Co. ("Cigna") and/or Defendants ERISA Plan Sponsors[2] for medical services that NJBSC performed for those patients depends on the terms of the ERISA plans that are at issue here. (*See* Compl. ¶¶ 68-71, 78-79, 82, 85.) The law is clear that no matter how NJBSC styles its claims regarding coverage or denial of benefits, ERISA preempts such claims, and federal jurisdiction thus exists.

NJBSC tries to obscure this reality by contending that it brought this action to recoup monies that Defendants purportedly owe under the Provider Agreement that NJBSC signed with MultiPlan, Inc. But this is incorrect: Cigna and the ERISA Plan Sponsors do not owe money to NJBSC under that Provider Agreement because they are ***not*** parties to it. Indeed, the ***only*** connection these Defendants have to NJBSC's payment disputes is that they provided benefits coverage to—or, in the case of Cigna, administered benefits claims for—NJBSC's patients through

---

[1] Unless otherwise noted, all emphases have been added, and all citations, alterations, and internal quotation marks have been omitted.

[2] The "ERISA Plan Sponsors" are the entities named in the Complaint as the "Other Payor Defendants" and consist of GM Financial, Interplex NAS, Inc., Humanscale, Teterboro Learning Center, Sharp Electronics Corp., Macy's Inc., Ferring Pharmaceuticals, Inc., Tata Consultancy Services, JPMorgan Chase & Co., Nippon Express USA, Inc., Samsung C&T America, Inc., LSG Sky Chefs Group, Tam Metal Products, Inc., Daiichi Sankyo, Inc., and EMSL Analytical, Inc. In some cases, Plaintiffs appear to have named the wrong party. For example, Defendants Samsung C&T America, Inc. and JPMorgan Chase & Co. are not the plan sponsors for any of the patients named in the Complaint. Whether the Complaint names the proper entities as plan sponsors is irrelevant to this motion. However, as set forth in the Notice of Removal, each of the patients identified in the Complaint are covered by an ERISA benefits plan. (*See* Notice of Removal (Dkt. No. 1) ¶ 5.)

employee benefits plan covered by ERISA; NJBSC's claims are preempted as a result. NJBSC's remand motion ignores the fundamental role that the ERISA plans play in this lawsuit, and NJBSC instead offers made-up new rules, nonexistent burdens of proof, and supposed distinctions for complete preemption. None is supported by law.

*First*, NJBSC asserts that this action should be remanded because to prove that NJBSC has standing, Defendants supposedly had to produce signed assignment forms for each patient along with copies of each applicable ERISA plan. (*See* Pl.'s Br. in Supp. of Remand for Lack of Subject-Matter Jurisdiction ("Br.") at 9-22.) No such evidentiary burden exists at this stage. Defendants are not required to remove all doubts about standing to effectuate removal, contrary to NJBSC's claims; rather, the removing party need only establish federal subject-matter jurisdiction (including a provider's standing to sue) "by a preponderance of the evidence." *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 402 (3d Cir. 2004). Defendants easily satisfy this standard here. NJBSC previously represented to courts that it routinely obtains assignments from patients—indeed, courts have relied on NJBSC's representations to find that those assignments allow NJBSC to pursue claims for ERISA benefits—and Cigna has provided a copy of that assignment form, along with copies of the claim forms that NJBSC submitted to Cigna for the eighteen patients at issue to show further evidence of assignments. No more is needed.

*Second*, NJBSC's continued attempts to reframe this dispute as a non-ERISA suit are unconvincing. NJBSC asserts that its claims are supposedly "all grounded on the independent duties relating to, directly or indirectly, the Provider Agreement." (Br. at 23-24.) But again, NJBSC does not—because it cannot—dispute that it is seeking money in this lawsuit because its patients were denied benefits under the ERISA plans. Under well-settled case law, this alone is enough to invoke federal jurisdiction under ERISA Section 502(a). *See Zgrablich v. Cardone Indus., Inc.*,

2016 WL 427360, at *6 (E.D. Pa. Feb. 3, 2016) ("right to payment claim[s]," as opposed to amount of payment claims, are preempted by ERISA). NJBSC also bases two of its counts on alleged violations of certain New Jersey statutes and regulations that relate to claim processing and reimbursement. But as another court already held, those provisions necessarily involve interpretation of ERISA plans, and these counts are thus preempted. *See Cohen v. Horizon Blue Cross Blue Shield of N.J.*, 2017 WL 685101, at *6 (D.N.J. Feb. 21, 2017).

*Third*, NJBSC argues that this Court should take the most inefficient path forward—keep the federal portion of this case, and strip state-law claims from it so that Defendants have to defend two lawsuits involving the same issues in two different courts. (Br. at 39.) This is baseless. NJBSC's claims predominantly relate to ERISA plans and should be resolved by this Court. To the extent any of NJBSC's claims truly implicate only state-law issues, the Court should exercise supplemental jurisdiction over those claims rather than have the parties litigate them separately.

## FACTUAL BACKGROUND[3]

### A.    The Parties.

All Defendants other than Cigna and MultiPlan are employers that have sponsored ERISA benefits plans for the benefit of their employees and their employees' dependents. These ERISA Plan Sponsors retained Cigna to administer claims for employees who participate in those plans (the "ERISA Plan Participants"). (Compl. ¶¶ 9, 68-85.) The health benefits available to the ERISA Plan Participants and plan members are set forth in healthcare benefits plans, and are subject to various limitations and restrictions set forth in those plans. (*See id.* ¶ 33.)

---

[3]    This section cites the factual allegations of the Complaint and the Notice of Removal, both of which are taken as true for purposes of this motion only. *See Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987); *J&J Mobile Home Park Inc. v. Bell*, 266 F. App'x 195, 196 (3d Cir. 2008).

3

Cigna maintains a network of healthcare providers—known as "participating" or "in-network" providers—who accept negotiated discounted rates from Cigna in exchange for receiving access to Cigna's plan members. (*See id.* ¶¶ 32-33.) Providers who are not part of Cigna's network, on the other hand, are considered "non-participating" or "out-of-network" providers. (*See id.* ¶¶ 31-32.) NJBSC "is an out-of-network (or non-participating) medical practice." (*Id.* ¶ 6.) NJBSC alleges that between 2012 and 2016, it rendered medical services to eighteen patients—identified as A.P., R.G., M.G., D.B., P.A., M.R., M.C., A.F., N.N., A.N., H.T., J.L., M.B., I.G., J.G., T.J., E.M., and V.G. (*See* Ex. A to Notice of Removal (Dkt. No. 1.1) ¶¶ 68-85.) Each of these ERISA Plan Participants was entitled to benefits set forth in an ERISA benefits plan (the "ERISA Plans"). (*See* Notice of Removal ¶ 5.)[4] NJBSC is incorrect that only the plans of removing defendants, Nippon and GMF, are "alleged to be so-called 'ERISA Plan[s]'" (Br. at 5), because the removal notice alleges that ***all*** of "the benefits plans of the other ERISA Plan Sponsors" are ERISA Plans. (Notice of Removal ¶ 5.)

### B.     The ERISA Participants Assigned Their Benefits to NJBSC.

NJBSC regularly obtains assignments of benefits from its patients. When the ERISA Plan Participants arrived at NJBSC, NJBSC required them to "complete forms or other documents providing the patients' insurance information and request[s] the patients' provide their insurance cards." (Compl. ¶ 86.) Those documents included a form titled the "Insurance Authorization and Assignment" form—which currently contains the following broad assignment provision, whereby each patient assigns to NJBSC all of his or her ERISA-related rights:

> I authorize . . . North Jersey Brain and Spine to appeal to my insurance company
> on my behalf . . . . I hereby assign to North Jersey Brain & Spine Center all

---

[4]     The ERISA Plan Sponsors are private employers that sponsor plans for the benefit of their employees and their employees' dependents. (*See* Notice of Removal ¶ 5.) Cigna administers members' claims through the ERISA Plans. (*See id.*)

> payments for medical services rendered to myself or my dependents . . . . I hereby further assign to North Jersey Brain & Spine Center all of my rights under my insurance contract, including all of my rights governed by the statutes and regulations of [ERISA], including, without any limitation whatsoever, my rights to "recover benefits" under ERISA Section 502(a)(1)(B), my rights to recover civil statutory penalties under ERISA Section 502(c)(1)(B); and my rights to pursue breach of fiduciary claims under ERISA Sections 502(a)(2) and 502(a)(3).

(Ex. D to Notice of Removal (Dkt. No. 1-4).)

While in this case NJBSC disclaims any reliance on any assignments of benefits, NJBSC has historically used assignments with similar language dating back at least as far as 2011. (*See* Ex. 1 at 10-12 (2011 versions of NJBSC assignment for three patients, attached as exhibits to notice of removal in *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, Case No. 13 Civ. 5286 (WJM) (MF) (Dkt. No. 1-1) (D.N.J. Sept. 4, 2013).) Significantly, in prior lawsuits, NJBSC represented that it obtains this (or similar) assignment from each patient before providing medical services, and it also argued that through such assignments, NJBSC has standing to bring ERISA benefit claims on the patients' behalf. (*See infra* Section II.A; Appellants' Br., *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 2014 WL 3402438, at *4 (3d Cir. June 30, 2014) (representing to the Third Circuit that "each of the plan members who received treatment executed an authorization and assignment to NJBSC").) The Third Circuit has relied on these representations to find that NJBSC has derivative ERISA standing. *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc.* ("*NJBSC*"), 801 F.3d 369, 372 (3d Cir. 2015) (reversing the district court and agreeing with NJBSC's argument that "an assignment of the right to payment *is sufficient*" for derivative standing).

After treating ERISA Plan Participants, NJBSC submitted health insurance claim forms to Cigna. (Ex. E to Notice of Removal (Dkt. No. 2).) In those claim forms, NJBSC represented that the patient had assigned his or her right to benefits to NJBSC by marking an 'x' in Box 27 (titled "Accept Assignment"). (*Id.* at 1.) In those forms, NJBSC also represented that patients had signed

5

the Insurance Authorization and Assignment Form by writing "PATIENT SIGNATURE ON FILE" in Box 13, which states: "INSURED'S . . . SIGNATURE, I authorize payment of medical benefits to the undersigned physician or supplier for services described below." *Id.*[5]

### C.    NJBSC's Claims for Benefits.

NJBSC filed this Complaint in the Superior Court of New Jersey, alleging thirteen causes of action—some only against MultiPlan, and others against Cigna and ERISA Plan Sponsors. NJBSC alleges that Cigna and the ERISA Plan Sponsors failed to reimburse NJBSC properly, claiming that it should have been reimbursed pursuant to its Provider Agreement with MultiPlan. (Compl. ¶ 137.) NJBSC concedes that neither Cigna nor the ERISA Plan Sponsors are parties to that agreement. But NJBSC nevertheless claims that these Defendants should be held to the Provider Agreement rates, because they supposedly conspired with MultiPlan to induce NJBSC to enter into the Provider Agreement. (*Id.* ¶¶ 97-111.)

Even as alleged by NJBSC, the rates in the Provider Agreement had nothing to do with a substantial portion of the claims at issue. At least eight of the eighteen patients on whose behalf NJBSC brought this lawsuit involve an outright denial of services (as opposed to a dispute about the amount of payment), because NJBSC alleges those claims were denied because they were either not covered under the plans or were untimely. (*See* Compl. ¶¶ 68-71, 78-79, 82, 85 (patients A.P., R.G., M.G., D.B., H.T., J.L., J.G., V.G.).) NJBSC also alleges that Defendants failed to pay about a third of the patients' out-of-network emergency service claims and to timely reimburse certain claims pursuant to New Jersey state laws and regulations. (*See id.* ¶¶ 69-70, 74, 81, 83-84.)

---

[5]    This Court can properly take these claim forms into account when ruling on the remand motion, because "when removal is based on preemption, the court may look beyond the face of the complaint to determine whether the plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Elite Orthopedic & Sports Med. PA v. Aetna Ins. Co.*, 2015 WL 5770474, at *3 (D.N.J. Sept. 30, 2015).

D.      **Defendants' Notice of Removal and NJBSC's Motion to Remand.**

Defendants Nippon Express USA, Inc. and GM Financial timely removed the state court action to this Court with the consent of each other defendant. As set out in the Notice of Removal, this Court has original subject matter jurisdiction under 28 U.S.C. § 1331 because the Complaint asserts claims to enforce rights and to recover benefits due under ERISA-governed plans; such claims are preempted by ERISA and are removable pursuant to 28 U.S.C. §§ 1331 and § 1441(a)-(c) as well as the complete preemption doctrine. NJBSC then filed its motion to remand.

## ARGUMENT

## I.      STANDARD FOR ERISA PREEMPTION.

As the Supreme Court and this Circuit have recognized, "ERISA possesses 'extraordinary pre-emptive power.'" *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 293 (3d Cir. 2014) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). One of ERISA's main objectives is "to provide a uniform regulatory regime over employee benefit plans." *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). ERISA's sweeping preemption provisions are necessary to accomplish this goal, because otherwise, "the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).

ERISA contains two preemption provisions. The first—and the only one that applies here—is Section 502(a), known as complete preemption. *See* 29 U.S.C. § 1132(a).[6] As the Supreme Court explained, in light of ERISA's exclusive civil enforcement provisions, "any state-

---

[6]   29 U.S.C. § 1132(a)(1) ("A civil action may be brought—(1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."). The second preemption provision, not relevant to this brief, is Section 514(a), known as express preemption. *See* 29 U.S.C. § 1144(a).

law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209. Under this analysis, it does not matter whether a plaintiff styles its claims under state law (as NJBSC purported to do here)—because "when the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.* at 207-08. Such disguised ERISA claims are preempted, no matter how they are styled.

Thus, an action may be removed under Section 502(a) even if federal jurisdiction is not presented on the face of the complaint. *Pascack*, 388 F.3d at 399. Section 502(a) has such "extraordinary pre-emptive power in that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Davila*, 542 U.S. at 209. Removal under Section 502(a) is proper if: (1) the provider-plaintiff could have brought its claims under Section 502(a), and if no other independent legal duty supports the provider's claims. *Pascack*, 388 F.3d at 400. As detailed below, both elements are met here.

## II.   NJBSC COULD HAVE BROUGHT CLAIMS ON ITS PATIENTS' BEHALF UNDER SECTION 502(A).

### A.   Defendants Have Met Their Burden to Show that NJBSC Received Assignments from the Patients at Issue.

To bring Section 502(a) claims on its patients' behalf, NJBSC must have an assignment from its patients. *Pascack*, 388 F.3d at 400. NJBSC asserts that Defendants cannot prove NJBSC had the ability to sue on its patients' behalves unless Defendants produce executed assignments for each of the ERISA Plan Participants. (*See* Br. at 12.) This impossibly high standard is not the law. Indeed, because insurers and plan sponsors typically do not have copies of patients' executed assignment forms, it ***cannot*** be the law because it would make federal removal impossible.

8

The evidence that Cigna and the ERISA Plan Sponsors *do* have, however, is more than enough to satisfy Defendants' burden for removal. As detailed further below, NJBSC's own allegations indicate that its patients execute assignments before they receive medical services, and those assignments—the text of which is available to this Court—are broad enough to allow NJBSC to bring claims for ERISA benefits. Nothing more is needed at this stage.

### 1.     NJBSC's 'Executed Assignment Rule' Has No Basis in Law.

NJBSC contends that to effectuate removal, Defendants must "dispel all doubts regarding . . . jurisdiction" (Br. at 9)—*i.e.*, something akin to proof beyond all reasonable doubt. That is not the law. Instead, this circuit merely requires the removing party to "establish[] federal subject-matter jurisdiction by a preponderance of the evidence." *Pascack*, 388 F.3d at 402.[7]

NJBSC's argument that the preponderance standard can only be met by providing actual copies of executed assignments is also incorrect. Indeed, courts routinely hold that at the pleadings stage, no documentary evidence is required, so long as other proof—for instance, allegations setting forth the language of the assignment—support an inference that an assignment was executed and that it encompassed the claims at issue. *See, e.g.*, *Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, 2017 WL 751851, at *5 (D.N.J. Feb. 27, 2017) ("To [prove ERISA standing], a plaintiff may include in its complaint the particular language of the assignment or include the assignment of benefit document itself."); *NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 979 F. Supp. 2d 513, 523 (D.N.J. 2013) (noting that "it was not

---

[7]   *Accord, e.g.*, *N. Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co.*, 2017 WL 659012, at *4 n.7 (D.N.J. Feb. 17, 2017), *report & recommendation adopted*, 2017 WL 1055957 (D.N.J. Mar. 20, 2017) ("Aetna has [the] burden of establishing that Plaintiff received valid assignments . . . by a preponderance of the evidence."); *N.J. Spinal Med. & Surgery, P.A.*, 2009 WL 3379911, at *3 (same); *Meacle v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 2005 WL 2811786, at *2 (D.N.J. Oct. 27, 2005) (same).

necessary to attach actual copies of the assignments," and holding that a party may establish standing with allegations showing that assignments "conferred them with the right to receive the full benefits of [the applicable] Plan").[8]

This standard is easily met here. As NJBSC alleges, it requires patients to complete forms before they obtain medical treatment. (*See* Compl. ¶ 86.) This allegation is squarely consistent with representations that NJBSC has made to courts before. *See, e.g.*, *NJBSC*, 801 F.3d at 370 (noting that "[p]rior to surgery, ***each [NJBSC] patient*** executed an assignment"). The forms that NJBSC's patients complete include a form titled "Insurance Authorization and Assignment" (current version attached as Ex. D to Notice of Removal), which contains assignment language that this Court has previously held sufficient for standing under ERISA. *See N. Jersey Brain & Spine Ctr.*, 2017 WL 659012, at *4; *see also NJBSC*, 801 F.3d at 370-71, 372 (finding language where patients "assign[ed] to [NJBSC] all payments for medical services rendered to myself or my dependents" sufficient to bring ERISA claims for benefits).

NJBSC's attempts to distance itself from its prior representations are unavailing. NJBSC contends that "speculative assertions in an affidavit regarding what is 'customary in the profession' are insufficient." (Br. at 13.) The relevance of this is unclear, since Defendants do not rely on any "speculative assertions" about general industry practices. Instead, Defendants rely on NJBSC's own allegations, NJBSC's own assignment forms, and NJBSC's ***own representations*** to courts

---

[8]   *See also Premier Health Ctr., P.C. v. UnitedHealth Grp.*, 2012 WL 1135608, at *5 (D.N.J. Apr. 4, 2012) (explaining that "Defendants need not attach the assignments to their Amended Complaint or briefs" to escape remand); *Sportscare of Am., P.C. v. Multiplan, Inc.*, 2011 WL 223724, at *4 (D.N.J. Jan. 24, 2011), *report & recommendation adopted*, 2011 WL 500195 (D.N.J. Feb. 10, 2011) (same). Indeed, NJBSC's insistence that documentary proof is required to establish assignments at the pleadings stage is inconsistent with its own arguments to the Third Circuit that to show "derivative ERISA standing," a provider need merely "provide notice pleading in accordance with the *Twombly-Iqbal* standard." (Reply Br. of NJBSC, *NJBSC v. Aetna, Inc.*, No. 14-2101, 2014 WL 4967109, at *21-22 (3d Cir. Sept. 29, 2014).)

about their practices with respect to collecting assignments. And it is also telling that despite its protests about Defendants' supposed "speculation," NJBSC does not dispute that its patients in fact do sign assignments before they receive medical treatment—tacitly conceding the point.

NJBSC's backpedaling about what it had previously represented to the Third Circuit (*id.* at 14) is even less convincing. NJBSC contends that that case involved "different patients receiving different medical treatment[.]" (*Id.*) But notably, NJBSC does not say that it used different assignment forms for different patients depending on treatment. Nor did NJBSC draw any such fine distinctions in its Third Circuit brief in 2014, when it said that "***[e]ach*** of the plan members who received treatment executed an authorization and assignment," and that "[t]he assignments are ***identical***." (Appellants' Br., *NJBSC v. Aetna, Inc.*, 2014 WL 3402438, at *4 (3d Cir. June 30, 2014).)

The case law on which NJBSC relies likewise does not help its arguments. For example, in *Pascack* and *Community Medical Center*, the Third Circuit rejected a defendant's attempt to prove assignments by citing plan policies that obligated providers to obtain assignments. *See Pascack*, 388 F.3d at 401-02 (holding that proof of assignment could not be shown through a declaration that the plan "consistently followed the claims and claim review procedures" in the summary plan description, in absence of even any "mention [of] the execution of assignments"); *Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan*, 143 F. App'x 433, 435 (3d Cir. 2005) (rejecting argument that assignments could be inferred based on language in the subscriber agreement requiring provider to collect assignments). That plainly is not what Defendants are doing here. Instead, Defendants have put forth evidence that NJBSC regularly obtained assignments from its patients, and also offered proof that those assignments are broad enough to encompass ERISA benefit claims under Third Circuit precedent.

The other cases on which NJBSC relies are inapposite for that same reason: there, too, defendants failed to put forth *any* evidence to indicate that patients had executed assignments. *See Emergency Physicians of St. Clare's v. United Health Care*, 2014 WL 7404563, at *3 (D.N.J. Dec. 29, 2014) (finding no standing given only vague allegation that the patient "assigned certain rights, including but not limited to the right to submit medical bills"); *MedWell, LLC v. CIGNA Healthcare of New Jersey, Inc.*, 2013 WL 5533311, at *4 (D.N.J. Oct. 7, 2013) (finding no standing where defendants conceded assignments were ineffective and no evidence of assignments was presented).[9] Here, conversely, NJBSC's own allegations establish that its patients signed assignments before receiving medical services, and NJBSC's own documents provide the language of those assignments.

### 2. The Health Insurance Claim Forms that NJBSC Submitted to Cigna Are Further Proof of Assignments.

NJBSC fares no better when it argues that the HCFA-1500 claim forms that it *itself* submitted to Cigna are not a reliable way to prove assignments. Even though the foregoing evidence (*i.e.*, NJBSC's business practice of collecting assignments from patients, plus the language of those assignments from NJBSC's own forms) alone is enough to show for removal purposes that NJBSC could bring ERISA benefit claims on behalf of patients, the claim forms that NJBSC submitted to Cigna cement that proof.

NJBSC contends that several courts have rejected the use of HCFA-1500 claim forms to show assignments for removal purposes. This is not correct, and courts have in fact taken the

---

[9]    *See also N. Jersey Ctr. for Surgery, P.A. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 2008 WL 4371754, at *8 (D.N.J. Sept. 18, 2008) (finding no assignments given only vague allegations that provider was an "assignee[] and/or third-party beneficiary of the contracts of health insurance between [its] patients who are Horizon subscribers and Horizon."); *Vaimakis v. United Healthcare/Oxford*, 2008 WL 3413853, at *4 (D.N.J. Aug. 8, 2008) (report and recommendation) (same).

contrary view. Indeed, this court has held repeatedly that where a provider represents on a claim form that it accepted an assignment from the patient—evidenced by marking box 27 'acceptance of assignment' and noting in box 13 that it has the patient's signature authorizing the payment of medical benefits to the provider—the court can infer that an assignment was executed. *See, e.g.*, *Elite Orthopedic & Sports Med. PA v. Aetna Ins. Co.*, 2015 WL 5770474, at *1, *3 (D.N.J. Sept. 30, 2015) (relying on boxes 13 and 27 in claim forms that provider submitted to Aetna to infer assignments); *DeMaria v. Horizon Healthcare Servs., Inc.*, 2015 WL 3460997, at *8 (D.N.J. June 1, 2015) (noting that provider's submission of claim forms, which authorized assignment of payment of medical benefits, "creates a derivative right to sue for payment under both ERISA and New Jersey contract law," and collecting cases).

So NJBSC is incorrect when it says that courts in this district have "repeatedly reject[ed] health insurers' attempts to bootstrap HCFA-1500 in place of actual proof of an executed assignment." (Br. at 17.) Courts outside this circuit are in accord, recognizing that at the pleadings stage, assignments can be inferred through claim forms submitted by the provider showing that patients had assigned their benefits. *See, e.g.*, *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1351 (11th Cir. 2009); *Emerus Hosp. Partners, LLC v. Health Care Serv. Corp.*, 41 F. Supp. 3d 695, 699 (N.D. Ill. 2014); *N. Shore-Long Island Jewish Health Care Sys., Inc. v. MultiPlan, Inc.*, 953 F. Supp. 2d 419, 430 (E.D.N.Y. 2013); *Spring E.R., LLC v. Aetna Life Ins. Co.*, 2010 WL 598748, at *3 (S.D. Tex. Feb. 17, 2010).

The case law on which NJBSC relies is inapposite. In *North Jersey Brain & Spine Center*, Aetna tried to prove assignments with a ***blank*** claim form—which made "no reference to NJBSC, Aetna, or any of the patients whose claims [were] at issue"—with only an unsubstantiated allegation that NJBSC regularly submitted such forms with box 27 checked. *See* 2017 WL 659012,

at *4 n.7. Here, conversely, Defendants have provided ***completed forms*** for all eighteen patients at issue, with box 27 checked on each form. (*See* Ex. E to Notice of Removal.)

*North Jersey Spinal Medicine & Surgery, P.A. v. Aetna Insurance Co.*, 2009 WL 3379911 (D.N.J. Oct. 19, 2009), does not help NJBSC for the same reason—there, too, Aetna did ***not*** produce completed forms for the patients at issue, and it instead submitted only two forms: one "entirely blank," where "box 27 has not been checked"; and another one that was "entirely indiscernible without a more detailed explanation and/or supporting evidence." *Id.* at *4. Here, again, Defendants submitted completed forms and have also explained what those forms mean. Finally, *North Jersey Spinal Medical & Surgery, P.A. v. IBEW Local 164* does not even address the issue, much less hold that Defendants must produce executed assignments; it dismissed on a different and now defunct view that a claimant cannot "assign the right to sue in federal court along with the substantive rights under the plan." 2012 WL 1988708, at *2 (D.N.J. May 31, 2012), *overruled by NJBSC*, 801 F.3d at 372.

Finally, NJBSC tries to muddy the waters by asserting that certain articles suggest that the meaning of box 27 on the HCFA-1500 form "is unclear" and "highly contextual." (Br. at 16.) ERISA preemption cannot be avoided with such speculation. Particularly in light of other evidence of NJBSC's assignments, this argument is disingenuous at best, and amounts to little more than an attempt to create confusion where none exists.

### 3.  In the Alternative, NJBSC Should Be Required to Produce Assignments for the Eighteen Patients at Issue.

As detailed above, Defendants have more than met their burden to demonstrate that the ERISA Plan Participants assigned their claims to NJBSC. To the extent this Court needs any more proof, it should require NJBSC—the only party with access to such documents—to produce them.

Courts "have the authority to allow discovery in order to determine whether subject-matter

14

jurisdiction exists." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015). And courts routinely allow jurisdictional discovery in circumstances like this—where the party arguing that no subject matter jurisdiction exists in fact may have documents that prove the opposite. *See, e.g.*, *Lee v. Cent. Parking Corp.*, 2015 WL 4510128, at *1 (D.N.J. July 24, 2015) ("Irrespective of the burden of proof, a party should not be permitted to profit from the absence of evidence that it could readily obtain, and may even possess.").

NJBSC has the signed patient assignment forms, and requiring NJBSC to produce evidence of assignments for eighteen patients is plainly not burdensome. On the other hand, requiring Defendants to produce such forms before they can effectuate removal would effectively deprive Defendants of a federal forum to which the law entitles them, because they cannot produce documents which they do not have. Accordingly, to the extent the Court decides that individual forms are required at this stage, the Court should order NJBSC to produce those forms for the eighteen patients at issue, or else submit a sworn declaration that no such forms exist.

### B.   Defendants Are Not Required to Produce ERISA Plans to Establish Standing.

Continuing its efforts to invent new burdens of proof in an effort to defeat removal, NJBSC next argues that Defendants were supposedly required to produce all ERISA Plans at issue and affirmatively demonstrate that none contain anti-assignment provisions. (*See* Br. at 19.) Again, this simply is not the law. Just as NJBSC is not required to disprove Defendants' affirmative defenses at the pleadings stage, Defendants need not disprove every hypothetical roadblock to standing, nor do they need to prove standing beyond a shadow of a doubt; instead, Defendants merely have the "burden of establishing federal subject-matter jurisdiction by a preponderance of the evidence." *Pascack*, 388 F.3d at 402.

None of NJBSC's cases is to the contrary. For example, while NJBSC argues that *North Jersey Center for Surgery, P.A.* supposedly stands for the proposition that "a removing-insurer **must attach the subject health plan** to the removal pleading" (Br. at 20 (emphasis in original)), it in fact says no such thing. Instead, the court there noted that *had* a plan been provided, and *had* it contained an anti-assignment provision, the provider may not have standing; but because defendant did not provide the plan with the removal papers, the court specifically did "not render an opinion on the issue." *See* 2008 WL 4371754, at *8 n.5. The only other case NJBSC cites, *Somerset Orthopedic Associates, P.A. v. Aetna Life Insurance Co.*, likewise says nothing about what a removing defendant must include in the removal papers; instead, it notes that defendant there had argued that "there is no allegation of an anti-assignment provision" but did not provide a copy of the benefit plan to support that argument. 2007 WL 432986, at *2 (D.N.J. Feb. 2, 2007). The Court should disregard NJBSC's attempt to impose a new evidentiary burden for removal.

## III.   NJBSC'S CLAIMS ARE NOT BASED ON LEGAL DUTIES INDEPENDENT OF ERISA.

The second prong of the *Pascack* test asks whether an independent legal duty supports a plaintiff's claim. *See* 388 F.3d at 400. A legal duty is "independent" only if it "would exist whether or not an ERISA plan existed." *N.J. Carpenters & the Tr. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 303-04 (3d Cir. 2014); *see also Khan v. Guardian Life Ins. Co. of Am.*, 2016 WL 1574611, at *2 (D.N.J. Apr. 19, 2016) ("[T]he claims 'relate to' the Plan because if there were no Plan, there would be no alleged causes of action."). Moreover, to be preempted by ERISA, a claim does not require interpretation of plan terms; it is enough if the claim merely relies on the existence of an ERISA plan or challenges denial of claims that are subject to ERISA plans. *See Shore v. Independence Blue Cross & Independence Health Grp.*, 2016 WL 6821944, at *3 (E.D. Pa. Nov. 17, 2016) ("While Plaintiff's claims will likely not require detailed interpretation of the underlying

16

ERISA plan, they clearly rely upon the existence, and alleged breach, of an ERISA contract. Federal jurisdiction is appropriate on these grounds."); *Conn. State Dental Ass'n v. Anthem Health Plans Inc.*, 591 F.3d 1337, 1353 (11th Cir. 2009) (no independent legal duty for claims that "assert[] improper denials of medically necessary claims and violations of ERISA procedural requirements").

No matter how NJBSC couches its claims, its main thrust is plainly to recover additional benefits to which NJBSC contends it is entitled by virtue of providing medical services to the ERISA Plan Participants. As detailed below, these claims are thus subject to removal, even if not pled as federal causes of action. *See, e.g.*, *Elite Orthopedic & Sports Med. PA*, 2015 WL 5770474, at *3 (a "complaint need not present a federal cause of action on its face for removal to be proper.").

A.  **Because NJBSC Has No Direct Contract with Cigna or the ERISA Plan Sponsors, NJBSC's Challenges to Reimbursement—Particularly to Claim Denials—Turn on Plan Terms and Are Thus Preempted.**

Counts II, V, VI, VII, and X are preempted because they allege, in form or substance, that Defendants failed to properly reimburse NJBSC for services it rendered to Defendants' insureds. (*See* Compl. ¶¶ 160, 181, 186, 203, 220.) Indeed, for at least eight of the eighteen patients at issue, NJBSC's own allegations make clear that NJBSC is challenging Defendants' denial of services— not merely the amount of payment—as the claims were denied either because the services were not covered under the ERISA Plans or because the claim was not timely:

- A.P. - "Defendants refused to make payment, incorrectly alleging that the claim was untimely";

- R.G. - "Defendants refused to make payment, incorrectly alleging that the services provided were not covered because NJBSC is an out-of-network provider";

- M.G. - "Defendants grossly underpaid the first claim and then refused to make any payment on the second claim";

- D.B. - "On or about May 9, 2015, NJBSC timely submitted a clean claim for reimbursement to Horizon Blue Cross Blue Shield ("Horizon"), the patient's primary health insurance carrier.

Horizon processed the claim and provided plaintiff an Explanation of Benefits ("EOB") . . . Defendants nevertheless did not make payment, refusing to acknowledge the Horizon EOB":

- H.T. - "Defendants . . . refused to pay for CPT codes 63056 and 6305";

- J.L. - "Defendants . . . refused to pay for several services or pay them correctly, despite their express pre-authorization";

- J.G. - "Defendants denied coverage, asserting that J.G. did not have out-of-network benefits";

- V.G. - "[D]efendants refused to make payment, erroneously contending that the claim was submitted too late."

(*See* Compl. ¶¶ 68-71, 78-79, 82, 85.) In short, all these claims allege that Defendants improperly reduced or denied payments supposedly due to NJBSC, which means that NJBSC is disputing Defendants' determinations as to what was owed to NJBSC under the terms of the ERISA Plans.

Thus, to determine whether NJBSC was properly reimbursed, the Court will need to determine whether Defendants appropriately administered benefits for the patients at issue in accordance with the terms of the applicable ERISA plans. This inquiry necessarily involves analysis of the ERISA plan provisions that define the terms of the patients' coverage and the related payment obligations. *See Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 273 (3d Cir. 2001) (a claim that "challenges the administration of or eligibility for benefits . . . falls within the scope of § 502(a) and is completely preempted"); *Sportscare of Am. v. Multiplan, Inc.*, 2011 WL 223724, at *4 (D.N.J. Jan. 24, 2011) (in finding the second *Pascack* prong satisfied for provider's action against insurance plan and third party repricer, noting that "[t]he amount of payment . . . at issue would necessarily implicate the rates in the ERISA plans under which Plaintiff claims it has received assignments"); *Elite Orthopedic*, 2015 WL 5770474, at *3 (claims that "obviously look for recovery of insurance benefits under the insureds' health plan . . . fall within the scope of § 502(a)"; *N. Shore-Long Island Jewish Health Care System Inc. v. Multiplan, Inc.*, 953 F. Supp. 2d 419, 443 (E.D.N.Y. 2013) ("given that any payments here for medical services are derived from

18

rights created under the [ERISA plan], these cases remain inextricably intertwined with the interpretation of Plan coverage and benefits.").

NJBSC also argues that thirteen of its eighteen patients' claims are not preempted because their claims "turns on the amount or level of coverage" rather than the existence of coverage because "defendants issued partial payments" with respect to those thirteen patients. (Br. at 24-25.) But the fact that a partial payment was made plainly does ***not*** mean that "[c]overage and eligibility [for those claims] . . . are not in dispute," as was the case in *Pascack*. 388 F.3d at 402-403. Indeed, even for patients where Defendants made partial payments, NJBSC is still challenging Defendants' coverage and eligibility determinations by alleging that Defendants failed to pay for certain services that were supposedly covered by the plans. (*See* Compl. ¶ 78 (alleging that for patient H.T., partial payment was made, but that Defendants "refused to pay for CPT codes 63056 and 63057"); *id.* ¶ 79 (alleging that for patient J.L., partial payment was made, but that Defendants "refused to pay for several services or pay them correctly")).) And in any event, in so arguing, NJBSC concedes that the claims of at least five of the eighteen patients do turn solely on existence of coverage, as they must; so it is indisputable that—at the very least—this Court has jurisdiction with respect to those benefits claims and all causes of action that rely on them.

**B.    No Independent Contract Exists Between NJBSC and Cigna or the ERISA Plan Sponsors.**

NJBSC next argues that an independent legal duty exists because of its contract with MultiPlan, attempting to analogize this case to *Pascack*. (Br. at 23-24.) This is unconvincing.

In *Pascack*, the plaintiff-hospital brought a lawsuit against a labor union welfare benefit plan, alleging that the plan failed to properly pay certain claims on time. 388 F.3d at 395-96. The hospital had contracted with MagNet, a company similar to MultiPlan, which agreed to provide discounted rates to members for medical services provided to beneficiaries. *Id.* at 396. Importantly,

though, in *Pascack*, there was a contract between MagNet and the benefit plan which set forth consequences for a late payment, and also set forth the payment rate for untimely-paid claims. *See id.* at 396-97. But here, there is **no** contractual agreement between NJBSC on one hand, and Cigna or ERISA the Defendant Plan Sponsors on the other hand, that sets forth any specific payment rates for NJBSC's claims. Instead, those payment rates are set forth in the NJBSC—MultiPlan agreement, to which Cigna and the ERISA Plan Sponsors are not parties.

NJBSC's reliance on *Pascack* is also unavailing for another reason: there, members' "[c]overage and eligibility . . . [were] not in dispute," and the Third Circuit recognized that had they been, "interpretation of the Plan might form an 'essential part' of the Hospital's claims" such that preemption would exist. *See id.* at 402. But here, NJBSC certainly *is* disputing Defendants' coverage and eligibility determinations for at least some of the eighteen patients at issue.[10]

*North Jersey Brain & Spine Center v. Connecticut General Life Insurance Co.* ("*CGLIC*")—another case involving NJBSC and Cigna—is instructive. 2011 WL 4737067 (D.N.J. June 30, 2011), *report & recommendation adopted by* 2011 WL 4737063 (D.N.J. Oct. 6, 2011). There, NJBSC brought claims for promissory estoppel and unjust enrichment, and asserted that

---

[10]   The other cases NJBSC cites likewise do not support its argument. A number of them are inapposite because they deal with providers who had direct contracts with the insurer defendants, which gave rise to the separate legal duties. *See Barnert Hosp. v. Horizon Healthcare Servs., Inc.*, 2007 WL 1101443, at *1-2 (D.N.J. Apr. 11, 2007) (provider-plaintiffs were parties to "individual Network Hospital Agreements" with defendant payor); *Englewood Hospital & Med. Ctr. v. Aftra Health Fund*, 2006 WL 3675261, at *5 (D.N.J. 2006) (plaintiff-provider "was an intended third-party beneficiary of the contract between the [payor] and Multiplan.") *Temple Univ. Hospital v. Grp. Health, Inc.*, 413 F. Supp. 2d 420, 425 (E.D. Pa. 2005) (finding that plaintiff had adequately pled claim as a third party beneficiary). Here, NJBSC does not allege it was a third party beneficiary. Other cases cited by NJBSC have facts analogous to *Pascack* and are distinguishable on the same grounds. *Newark Beth Israel v. N. N.J. Teamsters Ben. Plan*, 2006 WL 2830973, at *1-2 (D.N.J. Sept. 29, 2006) (alleging contract between payor and network); *UPMC Presby Shadyside v. Whirley Indus., Inc.*, 2005 WL 2335337, at *1 (W.D. Pa. Sept. 23, 2005) (alleging that provider agreement network was "leased" to defendant payor).

Cigna was supposed to pay certain claims at usual, customary, and reasonable rates. 2011 WL 4737067, at *1-2. NJBSC opposed removal, again relying on *Pascack*; but the court correctly recognized that unlike in *Pascack*, "no separate contract govern[ed] [NJBSC's] right to payment." *Id.* at *7. Magistrate (now District) Judge Arleo correctly identified the nub of the issue—with no contract, NJBSC's claims were "inextricably intertwined with the interpretation and application of ERISA plan coverage and benefits," and its claims were preempted. *Id.* Just so here: NJBSC does not, and cannot, contend that the MultiPlan Provider Agreement obligates ***Cigna*** or the ***ERISA Plan Sponsors*** to reimburse NJBSC at particular rates, because Cigna and the ERISA Plan Sponsors are not parties to that contract. Instead, the only relevant agreements between NJBSC and Cigna/ERISA Plan Sponsors are the ERISA Plans themselves.

### C.   The Supposed "*Memorial Hospital* Rule" Is Not the Law in This Circuit, and It Is Irrelevant Here in Any Event.

NJBSC next tries to rely on a supposed "*Memorial Hospital* rule"—a Fifth Circuit decision that declined to find preemption in a case where a provider allegedly relied on pre-authorization communications from an insurer. (Br. at 26-30.) This is baseless. No such rule exists in this circuit, no Third Circuit decision has applied it, and recent decisions hold squarely to the contrary.

NJBSC contends that the Third Circuit "follow[s] the *Memorial Hospital* rule," citing only a single district court decision. (*Id.* at 28 (citing *McCall v. Metro Life Ins. Co.*, 956 F. Supp. 1172, 1185-87 (D.N.J. 1996)). For one, *McCall* obviously is not a Third Circuit holding, and this lone twenty-year-old decision predates much of this Circuit's recent ERISA preemption jurisprudence, such as *Pascack* and *Pryzbowski*. And tellingly, recent decisions applying that more recent and binding Third Circuit precedent have come out the opposite way, holding—as NJBSC well knows—that state-law claims by providers that rely on alleged pre-authorization representations from insurers ***are*** preempted by ERISA. *See NJBSC*, 2011 WL 4737067, at *2 (finding NJBSC's

21

promissory estoppel and unjust enrichment claims preempted, even though NJBSC had allegedly provided services "[r]elying on . . . representations" from Cigna, because despite the "alleged false oral promise to pay," resolution of these claims still could not be "resolved without reference to the [ERISA] benefit plans"); *Geisinger S. Wilkes-Barre Med. Ctr. v. Duda*, 2008 WL 919531, at *2-3 (M.D. Pa. Mar. 31, 2008) (rejecting provider's reliance on *Memorial Hospital*, and finding an estoppel claim based on pre-authorization of coverage preempted).

   *Memorial Hospital* is also inapposite. There, the court found that a provider's claims were not preempted under Section 514(a)—rather than Section 502(a), the only preemption provision at issue here—because the patients in fact were not covered by the plan ***at all***. *See Cypress Fairbanks Med. Ctr. v. Pan-Am Life Ins. Co.*, 110 F.3d 280, 283 (5th Cir. 1997) (clarifying that *Memorial Hospital* should be understood to mean that Section 514(a) does not preempt provider's state-law claims if such claims are "premised on a finding that the beneficiary is ***not covered at all*** by an existing ERISA plan."). Here, though, NJBSC specifically alleges that the patients are "covered" by ERISA plans. (*See* Compl. ¶¶ 68-85.)

   Other out-of-circuit cases that NJBSC cites in urging this Court to follow *Memorial Hospital* are likewise inapplicable; indeed, the court in the prior *NJBSC* action has already rejected the same arguments that NJBSC is raising here. *See NJBSC*, 2011 WL 4737067, at *7-8 (rejecting NJBSC's reliance on "cases outside of this Circuit, which pre-date *Pascack* and other binding Third Circuit Precedent," and explaining that even if the court "were to consider those cases," they are "distinguishable" because they "were based either on a finding that the plan participant or beneficiary was not covered at all by an existing ERISA plan or were analyzed under express preemption (or conflict preemption) under section 514(a) of ERISA rather than under section 502(a).") (collecting cases, many of which NJBSC cites in its brief at page 29). Other cases on

22

which NJBSC relies likewise are irrelevant because they involved a contract between the provider and the payor; but there is none in this case. *See Children's Hosp. Corp. v. Kindercare Learning Ctrs., Inc.* 360 F. Supp. 2d 202, 206 (D. Mass. 2005) (finding independent duty where there was an "independent contract between the two entities"); *Conn. St. Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1342 (11th Cir. 2009) (plaintiffs bringing claims pursuant to provider agreement directly with insurer). In short, the cavalcade of out-of-circuit cases that NJBSC recites is both inconsistent with the law in this Circuit and inapposite to the allegations in this lawsuit.

### D. NJBSC's "General Applicability" Argument Is Baseless.

NJBSC's next argument is that because certain of its claims are based on "New Jersey common law," which is a "law[] of general applicability," those claims arise from independent duties and cannot be preempted. (Br. at 30-31.) This doctrine is made up from whole cloth. Moreover, it makes no sense: taken to its logical conclusion, NJBSC's argument means that ***any*** claim rooted in the common law—breach of contract, promissory estoppel, unjust enrichment, and many more—could never be preempted by ERISA. This outcome would eviscerate the "extraordinary pre-emptive power" of ERISA, which is necessary to fulfill ERISA's legislative purpose of providing a uniform regulatory regime over benefit plans, *see Menkes*, 762 F.3d at 293, and it plainly cannot be correct.

Not surprisingly, NJBSC offers no reliable support for this novel position. It cites *Medtronic, Inc. v. Lohr* (Br. at 31), but that case applies only to preemption under the Medical Device Amendments to the Federal Food, Drug, and Cosmetic Act—not ERISA—and is inapplicable here. *See* 518 U.S. 470, 501 (1996). *Aetna Life Ins. Co. v. Huntingdon Valley Surgery Center* does not even cite *Lohr*; moreover, it deals with express preemption under Section 514(a) rather than complete preemption under Section 502(a). 2015 WL 1954287, at *4 (E.D. Pa. Apr.

30, 2015). Finally, the third case NJBSC cites, *North Jersey Brain & Spine Center*, does not even discuss the concept of the laws of general applicability, let alone hold that claims based on such laws are exempted from ERISA's broad preemption reach. *See* 2017 WL 659012.

### E. Counts XI and XII (New Jersey Statutes and Regulations) Are Preempted.

Counts XI and XII are based on Defendants' alleged violations of certain New Jersey statutes and regulations. Those counts are preempted because they require the application and interpretation of ERISA plan documents. (Notice of Removal ¶ 14.) NJBSC contends otherwise, supposedly because those statutes and regulations are incorporated into the MultiPlan Provider Agreement. (Br. at 35-36.) Not so. Even if every single relevant statute and regulation in fact were incorporated into the agreement—and they are not[11]—these counts still would be preempted for the same reason as NJBSC's contract-based claims are. (*See supra* Section III.A.) But even if, as NJBSC contends, Counts XI and XII arise independently from any contractual claims, they still would be preempted because their resolution requires interpretation of ERISA plans, and these provisions provide no private right of action and thus create no independent duty.  Nor does ERISA's savings clause apply.

### 1. Resolution of Counts XI and XII Requires Interpreting ERISA Plans.

As another court has already held, the regulatory and statutory provisions on which NJBSC relies for Counts XI and XII relate to the processing and payment of plan benefits, and these counts are thus preempted under Section 502. *See Cohen v. Horizon Blue Cross Blue Shield of N.J.*, 2017

---

[11]  Count XI alleges violations of the following regulatory provisions: N.J. Admin. Code §§ 11:22-5.8, 11:24-5.3, 11:24-5.1 and 11:24-9.1(d). Count XII alleges violations of the following statutory and regulatory provisions: the Healthcare Information Networks and Technologies Act ("HINT Act"), N.J. Stat. Ann. §§ 17B:30-23, 17:48-8.4, 17:48A-7.12, 17:48E-10.1, 17B:26-9.1, 17B:27-44.2, the New Jersey Health Claims Authorization, Processing, and Payment Act ("HCAPPA"), N.J. Stat. Ann. § 26:2J-8.1, and N.J. Admin. Code § 11:22-1, *et seq.* The agreement does not specifically incorporate each of these provisions.

WL 685101, at *6 (D.N.J. Feb. 21, 2017) (finding that, for purposes of removal, claims of violation of N.J. Admin. Code § 11:24-5.3 and HINT Act were preempted).

*First*, NJBSC brings claims under New Jersey statutes and state regulations that govern reimbursement of claims for emergency services by out-of-network providers (Count XI). With respect to claims for emergency services, to be reimbursable, the emergency service must first be "*covered* under the health benefits plan[.]" *See* N.J. Admin. Code § 11:24-5.3(c). Because "it is impossible to determine the merits of [this] claim without first reviewing the provisions of [the patient's] ERISA-governed plan" to determine whether the benefit was covered, these claims are preempted. *See Cohen*, 2017 WL 685101, at *7; *see also id.* (concluding that "the emergency services regulation does not create an independent legal duty," because "the plan itself is the source for determining which services are 'covered.'").

*Second*, the prompt-payment regulations on which NJBSC relies for its Count XII similarly involve coverage determinations, and Count XII is thus preempted for that same reason. The regulations impose certain time limits on "payment of *clean* claims," N.J. Admin. Code §11:22-1.5(a), which means (among other things) that "[t]he claim is for a service or supply *covered* by the health benefits plan." N.J. Admin. Code §11:22-1.2(a). Because this Court would need to look to plan terms to determine what claims are covered, it is preempted. *See Cohen*, 2017 WL 685101, at *8 (analyzing these regulations and finding the claim preempted because it "requires the Court to delve into [plaintiff's] plan to determine what is covered" and because the "basis for recovery is determined by the plan itself and what is covered").

Recognizing that *Cohen* is on all fours with this case, NJBSC tries to distinguish it by contending that "unlike [in] *Cohen*, the N.J. statutes and regulations are incorporated in the Provider Agreement, and so do not require the Court to consider . . . 'ERISA plans.'" (Br. at 37

25

n.10.) This makes no sense. Regardless of whether these regulations are incorporated into the contract, resolving the emergency services claims *still* requires this Court to determine, among other things, whether NJBSC's emergency claims at issue are "covered under the health benefits plan," N.J. Admin. Code §11:24-5.3(c) (because otherwise, there is no violation of the regulation—and thus no breach of the contract that incorporates the regulation).  The same is true for the prompt payment claim—to determine whether NJBSC submitted clean claim will require a determination, among other things, that the claim was "covered" by the applicable ERISA plan, *see* N.J. Admin. Code §11:22-1.5(a), N.J. Admin. Code §11:22-1.2(a). These inquiries cannot be resolved without reference to the ERISA Plans.

*Finally*, these provisions create no private right of action and thus do not give rise to an independent legal duty. The New Jersey Supreme Court has unequivocally refused to imply a private right of action in laws regulating the insurance industry where (as here) the Legislature has not provided for one expressly. *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 271 (2001). In *Gaydos*, the New Jersey Supreme Court also noted that courts "have been reluctant to infer a statutory private right of action" in two circumstances: (1) "where the Legislature has not expressly provided for such action"; and (2) "where the statutory scheme contains civil penalty provisions." *Id.* at 271, 274. That precisely describes the statutes and regulations on which NJBSC relies: they do not provide a private cause of action, and they do contain civil penalty provisions enforced by regulatory authorities.[12] Thus, no private right of action exists, and NJBSC has no independent duties based on these provisions.

---

[12]  *See* N.J. Stat. Ann. §§ 17:48-8.4, 17:48A-7.12, 17:48E-10.1, 17B:26-9.1, 17B:27-44.2, 26:2J-8.1 (setting standards for processing electronic claims, along with civil penalties for non-compliance); N.J. Admin. Code § 11:22-1, *et seq.* (setting standards for payment of claims relating to health benefit plans and dental plans, along with civil penalties at the election of the of the Division of Banking and Insurance); N.J. Admin. Code § 11:22-5.8 (setting minimum

### 2.      The Savings Clause Does Not Apply.

In a footnote, NJBSC also appears to argue that ERISA's "savings clause," Section 514(a), 29 U.S.C. § 1144(b)(2)(A)—which provides that laws "regulating insurance, banking or securities" remain viable even if otherwise subject to ERISA preemption—prevents preemption of NJBSC's claims related to New Jersey health statutes and regulations, to the extent any of the ERISA plans at issue here are fully-insured. (*See* NJBSC Br. at 38 n.10.) But preemption under Section 514 (*i.e.*, conflict preemption) is not at issue here; instead, complete preemption under Section 502(a) is. Because the savings clause of Section 514 does not limit the preemptive sweep of Section 502's "comprehensive" and "deliberately expansive" civil enforcement scheme, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 54 (1987), this argument is beside the point.

## IV.   SUPPLEMENTAL JURISDICTION IS APPROPRIATE.

As detailed above, NJBSC's arguments that its claims escape ERISA preemption are without merit. Nonetheless, to the extent this Court determines that any of NJBSC's claims are not preempted, this Court should exercise supplemental jurisdiction over those remaining claims.

A federal court with jurisdiction over claims may also exercise jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. The Third Circuit has interpreted this provision to require the following: (1) "the federal claims must have substance sufficient to confer subject matter jurisdiction;" (2) "the state and federal claims must derive from a common nucleus of operative fact;" and (3) "[the] plaintiff's claims [must be] such that he would ordinarily be expected to try them all in one judicial proceeding." *In re Prudential Ins. Co. Am. Sales Practice*

---

standards for health benefit, prescription drug, and dental plans); N.J. Admin. Code §§ 11:24-5.3, 11:24-51, 11:24-9.1(d) (setting standards for coverage of emergency and urgent care, health care services, and statement of members' rights).

*Litig.*, 148 F.3d 283, 302 (3d Cir. 1998).

Courts have discretion to decline to exercise supplemental jurisdiction in four discrete circumstances, as set forth in 28 U.S.C. § 1367(c):

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

NJBSC invokes the second exception only (tacitly conceding that no other exceptions apply), and argues that its state-law claims substantially predominate over the ERISA claims. But the Third Circuit has recognized that the "substantially predominates" standard "was fashioned as a ***limited exception*** to the operation of the doctrine of pendent [now supplemental] jurisdiction—a doctrine that seeks to promote judicial economy, convenience, and fairness to litigants by litigating in one case all claims that arise out of the same nucleus of operative fact." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995). Accordingly,

> When a district court exercises its discretion not to hear state claims under § 1367(c)(2), the advantages of a single suit are lost. For that reason, § 1367(c)(2)'s authority should be invoked only where there is an important countervailing interest to be served by relegating state claims to the state court. This will normally be the case only where "a state claim constitutes the real body of a case, to which the federal claim is only an appendage"—only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.

*Id.* It follows, then, that a court must consider whether declining to exercise supplemental jurisdiction over state claims would create duplicative proceedings in federal and state court. *Id.*

NJBSC has brought its claims as a block, based on what it alleges constitutes an 'illustrative' sample of eighteen patients and their claims. (Compl. ¶ 7.) Each involves claims for

medical treatment by the same medical provider. There are a number of ERISA plans at issue, but all are administered by the same claims administrator (Cigna), and NJBSC's grievance is based upon that claim administration—not some individual quirks of the underlying plans—and the substantive allegations of liability at this point appear common to all plans. And although NJBSC's counts here arise from the claims of many patients, all have been assigned to one party—NJBSC.

So plainly the best path forward is to deal with these claims—all of which have to do with monies that NJBSC contends it is owed under Defendants' plans—in a single lawsuit. Indeed, NJBSC itself apparently agrees that it "would ordinarily be expected to try them all in one judicial proceeding," *In re Prudential*, 148 F.3d at 302, because NJBSC **did** bring them in a single proceeding. Nor are the federal claims here an "appendage" to the case—the ERISA-governed claims will deal with the same underlying merits as any that might be found to be non-ERISA. So to the extent the Court may find that certain individual claims are not subject to ERISA, the Court should exercise supplemental jurisdiction over them and retain this lawsuit in federal court.

Finally, in a last-ditch effort to remand, NJBSC contends that Defendants "studiously avoid specifying whether the 16 of the 18 non-removing defendants' plans are in fact 'ERISA plans.'" (Br. at 39.) This is incorrect. (*See* Notice of Removal ¶ 5.) But to the extent there is any doubt, Defendants confirm that **all** the plans at issue here are, indeed, subject to ERISA.

In sum, NJBSC is simply incorrect on preemption and on supplemental jurisdiction. As detailed above, all or substantially all of the claims are properly brought as ERISA claims. Far from "a federal tail . . . wag[ging] what is in substance a state dog," *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003), there is little doubt that the vast majority of NJBSC's claims are subject to federal law. NJBSC's arguments for remand do not even apply to all of the claims; so even if those arguments have merit as to some of the claims, the case still belongs in federal

court. Severing the claims would result in parallel proceedings in federal and state court, which makes no sense as a matter of case management or judicial economy.

For the above reasons, Defendants respectfully request that this Court deny NJBSC's Motion to Remand. In the alternative, Defendants respectfully request that this Court grant limited jurisdictional discovery to confirm that this Court has subject matter jurisdiction.

Dated: November 1, 2017                    Respectfully Submitted,

                                           *s/ E. Evans Wohlforth, Jr.*

Joshua B. Simon                            E. Evans Wohlforth, Jr.
Warren Haskel                              Caroline E. Oks
Dmitriy Tishyevich                         Charlotte M. Howells
KIRKLAND & ELLIS LLP                       GIBBONS P.C.
601 Lexington Avenue                       One Gateway Center
New York, New York 10022                   Newark, New Jersey 07102-5310
(212) 446-4800                             (973) 596-4500

*Attorneys for Defendants Connecticut General Life Insurance Co.; GM Financial; Interplex NAS, Inc.; Humanscale; Teterboro Learning Center; Sharp Electronics Corp.; Macy's Inc.; Ferring Pharmaceuticals, Inc.; Tata Consultancy Services; JPMorgan Chase & Co.; Nippon Express USA, Inc.; Samsung C&T America, Inc.; LSG Sky Chefs Group; Tam Metal Products, Inc.; Daiichi Sankyo, Inc.; and EMSL Analytical, Inc.*