E. Evans Wohlforth, Jr.
Caroline E. Oks
Charlotte M. Howells
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4879

Joshua B. Simon
Warren Haskel
Dmitriy Tishyevich
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

*Attorneys for Defendants Connecticut General Life
Insurance Co.; GM Financial; Interplex NAS, Inc.;
Humanscale; Teterboro Learning Center; Sharp
Electronics Corp.; Macy's Inc.; Ferring
Pharmaceuticals, Inc.; Tata Consultancy Services;
JPMorgan Chase & Co.; Nippon Express USA,
Inc.; Samsung C&T America, Inc.; LSG Sky Chefs
Group; Tam Metal Products, Inc.; Daiichi Sankyo,
Inc.; and EMSL Analytical, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER, <br><br> Plaintiff, <br><br> v. <br><br> MULTIPLAN, INC., et al., <br><br> Defendants. | Civil Action No. 3:17-cv-05967 |

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND</u>

## <u>TABLE OF CONTENTS</u>

<b><u>Page</u></b>

**INTRODUCTION**................................................................................................... 1

**FACTUAL BACKGROUND** ............................................................................... 3

    A.    The Parties. ............................................................................. 3

    B.    Most of the ERISA Participants Assigned Their Benefits to NJBSC.................... 4

    C.    NJBSC's Claims for Benefits. ................................................ 5

    D.    Defendants' Notice of Removal and NJBSC's Motion to Remand....................... 6

    E.    The Court's Denial of Remand Without Prejudice and Plaintiffs' Subsequent Dismissal of Counts XI and XII. ...................................... 6

**ARGUMENT** ......................................................................................................... 7

**I.**    **STANDARD FOR ERISA PREEMPTION.** ................................................ 7

**II.**    **NJBSC RECEIVED VALID ASSIGNMENT OF BENEFITS FOR MOST OF THE PATIENTS AT ISSUE.** .................................................. 8

    A.    NJBSC Produced Valid Assignments for Fourteen of the Eighteen Patients With Claims at Issue. .................................................... 8

    B.    The Third Circuit Has Already Found NJBSC's Claims in this Suit Are Not Beyond the Scope of the Assignments........................... 10

**III.**    **NJBSC'S CLAIMS ARE NOT BASED ON LEGAL DUTIES INDEPENDENT OF ERISA.** ........................................................ 12

    A.    NJBSC's Claims Involve Disputes Over Coverage Under ERISA Plans............. 13

    B.    NJBSC's Claims Based on Alleged Violations of New Jersey Regulations and Statutes Are Preempted by ERISA. ........................... 17

**IV.**    **SUPPLEMENTAL JURISDICTION IS APPROPRIATE.** ......................... 19

**CONCLUSION** ..................................................................................................... 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila,*
542 U.S. 200 (2004) ..........................................................................................7, 8

*Albright v. R.J. Reynolds Tobacco Co.,*
531 F.2d 132 (3d Cir. 1976) ...................................................................................17

*Alicea v. Outback Steakhouse,*
2011 WL 1675036 (D.N.J. 2011) ...........................................................................22

*Allen v. Rite-Aid, Inc.,*
1991 WL 148272 (E.D. Pa. July 30, 1991) .............................................................17

*Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield,*
890 F.3d 445 (3d Cir. 2018) .....................................................................................9

*Barnert Hosp. v. Horizon Healthcare Servs., Inc.,*
2007 WL 1101443 (D.N.J. Apr. 11, 2007) .............................................................15

*Bd. of Trustees of Laborers Health & Welfare Tr. Fund for N. Cal. v. Doctors
Med. Ctr. of Modesto, Inc.,*
No. C-07-1740EMC, 2007 WL 2385097 (N.D. Cal. Aug. 17, 2007),
*aff'd sub nom. Bd. of Trustees of Laborers Health & Welfare Tr. Fund for N.
Cal. v. Doctors Med. Ctr. of Modesto,* 351 F. App'x 175 (9th Cir. 2009) ............10

*Borough of W. Mifflin v. Lancaster,*
45 F.3d 780 (3d Cir. 1995) .....................................................................................21

*Bryfogle v. Carvel Corp.,*
666 F.Supp. 730 (E.D. Pa. 1987) ...........................................................................17

*Cape Reg'l Med. Ctr. v. Cigna Health & Life Ins. Co.,*
No. CV 17-5284, 2018 WL 2980386 (D.N.J. June 14, 2018) ................................22

*CardioNet, Inc. v. Cigna Health Corp.,*
751 F.3d 165 (3d Cir. 2014) ........................................................................... *passim*

*Carnegie-Mellon Univ. v. Cohill,*
484 U.S. 343 (1988) ...............................................................................................18

*Children's Hosp. Corp. v. Kindercare Learning Ctrs., Inc.*
360 F. Supp. 2d 202 (D. Mass. 2005) .....................................................................17

2617058.1   106782-95640

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*,
  2017 WL 685101 (D.N.J. Feb. 21, 2017) ........................................................3, 6, 17

*Conn. State Dental Ass'n v. Anthem Health Plans Inc.*,
  591 F.3d 1337 (11th Cir. 2009) ..................................................................14, 16, 17

*Elite Orthopedic & Sports Med. PA v. Aetna Ins. Co.*,
  2015 WL 5770474 (D.N.J. Sept. 30, 2015) ..........................................................5, 14

*Englewood Hospital & Med. Ctr. v. Aftra Health Fund*,
  2006 WL 3675261 (D.N.J. Dec. 12, 2006) ...................................................................15

*Geisinger S. Wilkes-Barre Med. Ctr. v. Duda*,
  2008 WL 919531 (M.D. Pa. Mar. 31, 2008) ...............................................................16

*In re Amoco*,
  964 F.2d (7th Cir. 1992) ..................................................................................................18

*In re Prudential Ins. Co. Am. Sales Prac. Litig.*,
  148 F.3d 283 (3d Cir. 1998) ...........................................................................................19

*J&J Mobile Home Park Inc. v. Bell*,
  266 F. App'x 195 (3d Cir. 2008) .......................................................................................3

*Khan v. Guardian Life Ins. Co. of Am.*,
  2016 WL 1574611 (D.N.J. Apr. 19, 2016) .............................................................11, 12

*Mazzola v. AmeriChoice of New Jersey, Inc.*,
  2013 WL 6022345 (D.N.J. Nov. 13, 2013) ............................................................20, 22

*Menkes v. Prudential Ins. Co. of Am.*,
  762 F.3d 285 (3d Cir. 2014) ..............................................................................................7

*Metro. Life Ins. Co. v. Taylor*,
  481 U.S. 58 (1987) ..............................................................................................................7

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*,
  801 F.3d 369 (3d Cir. 2015) ....................................................................................8, 9, 10

*N. Jersey Brain & Spine Ctr. v. CIGNA Healthcare of NJ, Inc.*,
  2010 WL 11594901 (D.N.J. Jan. 12, 2010) ...................................................................18

*N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*,
  2011 WL 4737067, at *5 (D.N.J. June 30, 2011),
  *report and recommendation adopted*,
  2011 WL 4737063 (D.N.J. Oct. 6, 2011) ...........................................................9, 16, 18

*N. Jersey Brain & Spine Ctr. v. Saint Peter's Univ. Hosp.*,
  2013 WL 5366400 (D.N.J. Sept. 25, 2013) .......................................................................8

*N. Shore-Long Island Jewish Health Care System Inc. v. Multiplan, Inc.*,
    953 F. Supp. 2d 419 (E.D.N.Y. 2013) ...................................................................14

*N.J. Carpenters & the Tr. Thereof v. Tishman Const. Corp. of N.J.*,
    760 F.3d 297 (3d Cir. 2014)................................................................................11

*Newark Beth Israel v. N. N.J. Teamsters Ben. Plan*,
    2006 WL 2830973 (D.N.J. Sept. 29, 2006) .........................................................15

*Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*,
    388 F.3d 393 (3d Cir. 2004)......................................................................... *passim*

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987).......................................................................................7, 11

*Premier Health Center, P.C. v. UnitedHealth Group*,
    292 F.R.D. 204 (D.N.J. 2013)...............................................................................11

*Pryzbowski v. U.S. Healthcare, Inc.*,
    245 F.3d 266 (3d Cir. 2001)................................................................................13

*Shore v. Independence Blue Cross & Independence Health Grp.*,
    2016 WL 6821944 (E.D. Pa. Nov. 17, 2016) .......................................................14

*Sportscare of Am., P.C. v. Multiplan, Inc.*,
    2011 WL 500195 (D.N.J. Feb. 10, 2011) ..............................................................8

*Sportscare of Am. v. Multiplan, Inc.*,
    2011 WL 223724 (D.N.J. Jan. 24, 2011) .............................................................13

*Steel Valley Auth. v. Union Switch & Signal Div.*,
    809 F.2d 1006 (3d Cir. 1987)................................................................................3

*Temple Univ. Hospital v. Grp. Health, Inc.*,
    413 F. Supp. 2d 420 (E.D. Pa. June 29, 2005)......................................................15

*Trans Penn Wax Corp. v. McCandless*,
    50 F.3d 217 (3d Cir. 1995)..................................................................................18

*UPMC Presby Shadyside v. Whirley Indus., Inc.*,
    2005 WL 2335337 (W.D. Pa. Sept. 23, 2005) ....................................................15

*Zapiach v. Empire Blue Cross Blue Shield*,
    2018 WL 1838017 (D.N.J. April 17, 2018)..........................................................22

*Zgrablich v. Cardone Indus., Inc.*,
    2016 WL 427360 (E.D. Pa. Feb. 3, 2016) .............................................................3

2617058.1   106782-95640

**Statutes & Regulations**

28 U.S.C. § 1331.............................................................................................6

28 U.S.C. § 1367...............................................................................19, 20, 22

28 U.S.C. § 1441.............................................................................................6

29 U.S.C. § 1132(a)...............................................................................2, 5, 7, 8

29 U.S.C. § 1144(a).........................................................................................7

ERISA........................................................................................................3, 21

ERISA § 502(a)....................................................................................... *passim*

2617058.1   106782-95640

# INTRODUCTION[1]

At the conclusion of oral argument on NJBSC's original motion to remand, and with the benefit of the parties' extensive briefing, the Court found that "[two] issues *may* ultimately impact its analysis"—whether NJBSC received valid assignments of benefits from the patients identified in its complaint, and whether the plans covering those patients contained anti-assignment provisions—and ordered the parties to conduct jurisdictional discovery on both issues.  D.E. 46, April 25, 2018 Hr'g Tr. at 38:14-40:11 (emphasis in original).  Defendants thus produced documents reflecting the Employment Retirement Income Security Act ("ERISA") plans at issue, and NJBSC produced assignments.

This jurisdictional discovery confirms that this case belongs in federal court.   There is now no dispute that all eighteen "exemplar" patients identified in NJBSC's Complaint were covered by an ERISA plan and that at least ten of these patients validly assigned their claims to NJBSC.  There is likewise no dispute that Defendants denied at least some of these ten patients' claims in their entirety based on determinations that the patients' ERISA plans did not cover the claims.   Take, for instance, Patient R.G., who NJBSC admits in its brief assigned NJBSC benefits under a plan without an anti-assignment provision and whose claim was denied because "the services provided were not covered."  (*See* D.E. 48-3 at 6 & Compl. ¶ 69; *see also id.* for

---

[1]   Unless otherwise noted, all emphases have been added, and all citations, alterations, and internal quotation marks have been omitted.  For the purposes of this brief, "NJBSC" refers to North Jersey Brain & Spine Center, "Cigna" refers to Connecticut General Life Insurance Company, and the "ERISA Plan Sponsors" refer to the entities named in the Complaint as the "Other Payor Defendants" and consist of GM Financial, Interplex NAS, Inc., Humanscale, Teterboro Learning Center, Sharp Electronics Corp., Macy's Inc., Ferring Pharmaceuticals, Inc., Tata Consultancy Services, JPMorgan Chase & Co., Nippon Express USA, Inc., Samsung C&T America, Inc., LSG Sky Chefs Group, Tam Metal Products, Inc., Daiichi Sankyo, Inc., and EMSL Analytical, Inc.  In some cases, Plaintiffs appear to have named the wrong party.  For example, Defendants Samsung C&T America, Inc. and JPMorgan Chase & Co. are not the plan sponsors for any of the patients named in the Complaint.  Whether the Complaint names the proper entities as plan sponsors is irrelevant to this motion.

Patients A.P. and J.G.)  The Third Circuit has stated the basic law clearly: "a claim seeking coverage of a service may only be brought under ERISA."  *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 178 (3d Cir. 2014).  ERISA preempts NJBSC's causes of action related to at least these claims, and federal jurisdiction thus exists.

Try as it might, NJBSC cannot avoid this simple result.  For instance, NJBSC argues that it did not receive valid assignments of benefits for eight of the eighteen patients whose claims are at issue.  Even if this argument had merit, it is irrelevant because at a minimum, NJBSC admits that at least ten patients have executed valid assignments of benefits, and as noted above, there is no dispute that several of these patients' claims were denied in full.  The inquiry ends there. NJBSC has the right to pursue claims under ERISA, and ERISA applies to at least some of NJBSC's claims.  In any event, as Section II explains, NJBSC is wrong that none of the eight remaining patients has a valid assignment.

NJBSC also repeats its arguments that its claims involve duties independent of ERISA because its claims are supposedly "all grounded on the independent duties relating to, directly or indirectly, the Provider Agreement."  (D.E. 48-3 at 32.)  But as Cigna and the ERISA Plan Sponsors explained in their original brief, they were not parties to this agreement.  Indeed, the Complaint does not identify a single interaction that the ERISA Plan Sponsors had with either NJBSC or Multiplan.  Instead, the only obligation that they could have possibly had to NJBSC was under the ERISA plans at issue.  In any event, and regardless of the Provider Agreement, NJBSC cannot dispute that it is seeking money for claims that Defendants determined were not covered under ERISA plans.  Under well-settled case law, this alone is enough to invoke federal jurisdiction under ERISA Section 502(a).  *See CardioNet*, 751 F.3d at 178 ("[A] claim seeking coverage of a service may only be brought under ERISA."); *Zgrablich v. Cardone Indus., Inc.*,

2016 WL 427360, at *6 (E.D. Pa. Feb. 3, 2016) ("right to payment claim[s]" are preempted by ERISA).

Finally, NJBSC claims that it can avoid removal because it has now dismissed its counts on alleged violations of certain New Jersey statutes and regulations that relate to claim processing and reimbursement, which are clearly preempted by ERISA.  *See Cohen v. Horizon Blue Cross Blue Shield of N.J.*, 2017 WL 685101, at *6 (D.N.J. Feb. 21, 2017).  But the relevant inquiry is whether federal jurisdiction existed at the time of removal, not when NJBSC filed its renewed motion to remand, so NJBSC's belated dismissal of the New Jersey statutory claims is irrelevant to the Court's analysis.

For these reasons, and those explained below and in Cigna's and the ERISA Plan Sponsors' first response to NJBSC's motion to remand, the Court should deny NJBSC's renewed motion to remand.[2]

## FACTUAL BACKGROUND[3]

### A.      The Parties.

All Defendants other than Cigna and MultiPlan are employers that have sponsored ERISA benefits plans for the benefit of their employees and their employees' dependents.  These ERISA Plan Sponsors retained Cigna to administer claims for employees who participate in those plans (the "ERISA Plan Participants").   (Compl. ¶¶ 9, 68-85.)   The health benefits

---

[2]    In the interest of space, Cigna and the ERISA Plan Sponsors do not repeat all of the arguments they made in their brief in opposition to NJBSC's original motion to remand and instead incorporate those arguments by reference.  (D.E. 34.)

[3]    This section cites the factual allegations of the Complaint and the Notice of Removal, both of which are taken as true for purposes of this motion only. *See Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987); *J&J Mobile Home Park Inc. v. Bell*, 266 F. App'x 195, 196 (3d Cir. 2008).

3

available to the ERISA Plan Participants are set forth in healthcare benefits plans, and are subject to various limitations and restrictions set forth in those plans. (*See id.* ¶ 33.)

Cigna maintains a network of healthcare providers—known as "participating" or "in-network" providers—who accept negotiated discounted rates from Cigna in exchange for receiving access to Cigna's plan members. (*See id.* ¶¶ 32-33.) Providers who are not part of Cigna's network, on the other hand, are considered "non-participating" or "out-of-network" providers. (*See id.* ¶¶ 31-32.) NJBSC "is an out-of-network (or non-participating) medical practice." (*Id.* ¶ 6.) NJBSC alleges that between 2012 and 2016, it rendered medical services to eighteen "exemplar" patients—identified as A.P., R.G., M.G., D.B., P.A., M.R., M.C., A.F., N.N., A.N., H.T., J.L., M.B., I.G., J.G., T.J., E.M., and V.G. (Compl. ¶¶ 68-85, D.E. 48-3 at 27.) Each of these ERISA Plan Participants was entitled to benefits set forth in an ERISA benefits plan (the "ERISA Plans"). (*See* D.E. 1, Notice of Removal, ¶ 5.)[4]

### B.    Most of the ERISA Participants Assigned Their Benefits to NJBSC.

NJBSC regularly obtains assignments of benefits from its patients. When the ERISA Plan Participants arrived at NJBSC, NJBSC required them to "complete forms or other documents providing the patients' insurance information and request[s] the patients' provide their insurance cards." (Compl. ¶ 86.) Those documents included a form titled the "Insurance Authorization and Assignment" form—which currently contains the following broad assignment provision, whereby each patient assigns to NJBSC all of his or her ERISA-related rights:

> I authorize . . . North Jersey Brain and Spine to appeal to my insurance company on my behalf . . . . I hereby assign to North Jersey Brain & Spine Center all payments for medical services rendered to myself or my dependents . . . . I hereby further assign to North Jersey Brain & Spine Center all of my rights under my

---

[4]    The ERISA Plan Sponsors are private employers that sponsor plans for the benefit of their employees and their employees' dependents. (*See* D.E 1 ¶ 5.) Cigna administers members' claims through the ERISA Plans. (*See id.*)

2617058.1   106782-95640

insurance contract, including all of my rights governed by the statutes and regulations of [ERISA], including, without any limitation whatsoever, my rights to "recover benefits" under ERISA Section 502(a)(1)(B), my rights to recover civil statutory penalties under ERISA Section 502(c)(1)(B); and my rights to pursue breach of fiduciary claims under ERISA Sections 502(a)(2) and 502(a)(3).

D.E. 48-4, at Ex. A-N.

NJBSC has represented that it was able to locate assignment of benefits for fourteen of the eighteen patients at issue in this case. *See* D.E. 48-3 at 7 (chart listing eighteen exemplar patients and acknowledging assignments of claims for fourteen of those patients); *see also* D.E. 48-4, at Exs. A-N (copies of assignments).[5]   And while NJBSC argues that anti-assignment provisions precluded assignments for five of those fourteen patients including one for whom it could not find an assignment), it also admits (as it must), that for each patient for whom NJBSC claims an anti-assignment provision should apply, partial payment was still made by Cigna on the claims. *Id.*

**C.     NJBSC's Claims for Benefits.**

NJBSC filed its Complaint in the Superior Court of New Jersey, alleging thirteen causes of action—some only against MultiPlan, and others against Cigna and ERISA Plan Sponsors. NJBSC alleges that Cigna and the ERISA Plan Sponsors failed to reimburse NJBSC properly, claiming that it should have been reimbursed pursuant to its Provider Agreement with MultiPlan, rather than the terms of the ERISA Plans.  (Compl. ¶ 137.)  NJBSC concedes that neither Cigna nor the ERISA Plan Sponsors are parties to that agreement.  But NJBSC nevertheless claims that these Defendants should be held to the Provider Agreement rates, because they supposedly

---

[5]   This Court can properly take these claim forms into account when ruling on the remand motion, because "when removal is based on preemption, the court may look beyond the face of the complaint to determine whether the plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Elite Orthopedic & Sports Med. PA v. Aetna Ins. Co.*, 2015 WL 5770474, at *3 (D.N.J. Sept. 30, 2015).

conspired with MultiPlan to induce NJBSC to enter into the Provider Agreement. (*Id.* ¶¶ 97-111.)

This argument misses the point completely as to a substantial portion of the case. Even as alleged by NJBSC, the rates in the Provider Agreement had nothing to do with at least eight of the eighteen claims at issue. The claims for these patients involve an outright denial of services (as opposed to a dispute about the amount of payment), because NJBSC alleges claims for those services were denied because they were either not covered under the plans or were untimely. (*See* Compl. ¶¶ 68-71, 78-79, 82, 85 (patients A.P., R.G., M.G., D.B., H.T., J.L., J.G., V.G.).) At the time of removal, NJBSC also alleged that Defendants failed to pay about a third of the patients' out-of-network emergency service claims and to timely reimburse certain claims pursuant to New Jersey state laws and regulations. (*See id.* ¶¶ 69-70, 74, 81, 83-84.)

**D.    Defendants' Notice of Removal and NJBSC's Motion to Remand.**

Defendants Nippon Express USA, Inc. and GM Financial timely removed the state court action to this Court with the consent of each other defendant. As set out in the Notice of Removal, this Court has original subject matter jurisdiction under 28 U.S.C. § 1331 because the Complaint asserts claims to enforce rights and to recover benefits due under ERISA-governed plans; such claims are preempted by ERISA and are removable pursuant to 28 U.S.C. §§ 1331 and § 1441(a)-(c) as well as the complete preemption doctrine. NJBSC then filed its motion to remand.

**E.    The Court's Denial of Remand Without Prejudice and Plaintiffs' Subsequent Dismissal of Counts XI and XII.**

On April 25, 2018, counsel for the parties appeared at a hearing before the Court to address NJBSC's motion to remand, and the Court denied the motion without prejudice. D.E. 42. During the hearing, counsel for Cigna explained that remand was inappropriate, among other

reasons, because Counts XI and XII of NJBSC's Complaint were for New Jersey statutory violations that another court in this District previously found was preempted by ERISA.  D.E. 46 at 17:11-21:2; *see also Cohen*, 2017 WL 3623746, at *1.   On June 8, 2018, just before filing its second motion to remand, NJBSC voluntarily dismissed Counts XI and XII of its Complaint with prejudice.  D.E. 47.

## ARGUMENT

## I.   STANDARD FOR ERISA PREEMPTION.

 "ERISA possesses 'extraordinary pre-emptive power.'" *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 293 (3d Cir. 2014) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).   One of ERISA's main objectives is "to provide a uniform regulatory regime over employee benefit plans."  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).   ERISA's sweeping preemption provisions are necessary to accomplish this goal, because otherwise, "the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."  *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).

ERISA contains two preemption provisions.  The first—and the one that applies here—is Section 502(a), known as complete preemption.  *See* 29 U.S.C. § 1132(a).[6]  As the Supreme Court explained, in light of ERISA's exclusive civil enforcement provisions, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is

---

[6]   29 U.S.C. § 1132(a)(1) ("A civil action may be brought—(1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."). The second preemption provision, not relevant to this brief, is Section 514(a), known as express preemption. *See* 29 U.S.C. § 1144(a).

therefore pre-empted." *Davila*, 542 U.S. at 209.  Under this analysis, it does not matter whether a plaintiff raises claims under state law (as NJBSC purported to do here)—because "when the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.* at 207-08.  Such disguised ERISA claims are preempted, no matter how they are styled.

Thus, an action may be removed under Section 502(a) even if federal jurisdiction is not presented on the face of the complaint.  *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399 (3d Cir. 2004).  Section 502(a) has such "extraordinary pre-emptive power in that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."  *Davila*, 542 U.S. at 209. Removal under Section 502(a) is proper if: (1) the provider-plaintiff could have brought its claims under Section 502(a), and (2) no other independent legal duty supports the provider's claims.  *Pascack*, 388 F.3d at 400. As detailed below, both prongs are met here.

## II.   NJBSC RECEIVED VALID ASSIGNMENT OF BENEFITS FOR MOST OF THE PATIENTS AT ISSUE.

### A.   NJBSC Produced Valid Assignments for Fourteen of the Eighteen Patients With Claims at Issue.

"[W]hen a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a)."  *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015).  NJBSC no longer disputes that all of the plans for patients identified in its complaint are governed by ERISA.  Instead, NJBSC argues

that of the eighteen patients with claims at issue, it did not locate assignments from four,[7] and the plans covering four other patients had anti-assignment provisions, making their assignments invalid.  *See* D.E. 48-3 at 9-10.

Even if the Court were to accept these arguments, NJBSC still concedes that ten of the patients at issue provided NJBSC with valid assignments of benefits.  Nor could NJBSC argue otherwise, given that the Third Circuit expressly found that assignments from NJBSC containing the exact same language are sufficient to confer healthcare providers the right to sue under ERISA 502(a).  *See N. Jersey Brain & Spine Ctr.*, 801 F.3d at  374 ("[A]n assignment of the right to payment is sufficient to confer standing to sue for payment under ERISA § 502(a)(1)."); *see also N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*, 2011 WL 4737067, at *5 (D.N.J. June 30, 2011), *report and recommendation adopted*, 2011 WL 4737063 (D.N.J. Oct. 6, 2011) (rejecting argument that assignments with language identical to assignments in the present case were insufficient to confer 502(a) standing to provider).  This concession leaves no doubt NJBSC could have brought claims related to these ten patients' services under ERISA, and thus the first *Pascack* prong is clearly met.

Moreover, NJBSC is wrong to contend that four of the remaining eight patients participated in plans with anti-assignment provisions.  The Third Circuit recently found that anti-assignment clauses that entirely prohibit the assignment of benefits, regardless of the plan's

---

[7]   The fact that NJBSC did not locate assignments for these patients does not mean they do not exist. To the contrary, NJBSC has previously made factual representations to courts in this District that have suggested valid assignments exist even where those assignments are not provided to the court.  Courts have found such representations alone are sufficient to support the first *Pascack* prong.  *See, e.g.*, *N. Jersey Brain & Spine Ctr. v. Saint Peter's Univ. Hosp.*, 2013 WL 5366400, at *4 (D.N.J. Sept. 25, 2013); *see also Sportscare of Am., P.C. v. Multiplan, Inc.*, 2011 WL 500195, at *1 (D.N.J. Feb. 10, 2011) (finding properly pleaded facts established standing by assignment despite the fact that provider plaintiff did not attach an actual assignment form to the Complaint).

approval of an assignment, are valid. *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 455 (3d Cir. 2018).  But *American Orthopedic* did not address provisions that give the plan the right to reject assignments for certain claims or providers, rather than preclude such assignments entirely.  That is the case for three of the plans that NJBSC purports to have anti-assignment clauses here: these plans do not prohibit assignments, they merely indicate that Cigna or the plan must recognize the assignment for it to be valid.  NJBSC does not argue that Cigna or the plan rejected its assignments.  Just the opposite: NJBSC alleges that these plans all paid NJBSC's claims at least in part.  *See Bd. of Trustees of Laborers Health & Welfare Tr. Fund for N. Cal. v. Doctors Med. Ctr. of Modesto, Inc*., 2007 WL 2385097, at \*6 (N.D. Cal. Aug. 17, 2007), *aff'd sub nom. Bd. of Trustees of Laborers Health & Welfare Tr. Fund for N. Cal. v. Doctors Med. Ctr. of Modesto*, 351 F. App'x 175 (9th Cir. 2009) (finding partial payment from a plan rendered the recipient an assignee).  NJBSC therefore cannot claim these plans rendered its assignments ineffective in this case, so NJBSC could have brought ERISA claims under these plans too.

### B. The Third Circuit Has Already Found NJBSC's Claims in this Suit Are Not Beyond the Scope of the Assignments.

NJBSC also argues that its assignments are not sufficiently broad to cover its conspiracy, fraud, and business tort claims.  The Court should note, however, NJBSC does not dispute that its contract and quasi-contract claims (Counts II, III, and IV) fall squarely within the scope of its assignments.  At a minimum, NJBSC's assignments convey the right to pursue relief through these claims—relief which courts have repeatedly found falls within the scope of the civil enforcement remedies provided under ERISA § 502(a).

The same is true for NJBSC's remaining claims.  In arguing that its assignments are not broad enough to cover non-contract claims, NJBSC conflates the two *Pascack* prongs.  The first

*Pascack* prong concerns only whether NJBSC's assignments are sufficient to convey the right to bring claims under ERISA, and the Third Circuit has already said that they do.  *See N. Jersey Brain & Spine Ctr.*, 801 F.3d at 374.  The question then turns to the second *Pascack* prong, which asks whether NJBSC's non-contract claims arise from duties independent of the terms of its patients' ERISA plans.  For the reasons explained in the next section, NJBSC's claims do not, so they are preempted.

NJBSC also erroneously cites *Premier Health Center, P.C. v. UnitedHealth Group*, 292 F.R.D. 204 (D.N.J. 2013), for the proposition that it may escape federal jurisdiction by pleading claims outside the scope of its assignment.  (*See* D.E. 48-3 at 12-13.)  The question in *Premier* was not whether the provider had the right to pursue a particular cause of action—which again is a question reserved for the second *Pascack* prong—but whether the provider had the right to pursue a particular type of relief.  292 F.R.D. at 218 ("[A]n assignment of benefits to a provider logically gives the provider standing to bring claims under ERISA for the benefits it was assigned. On the other hand, an assignment of benefits from a patient for services rendered by a given healthcare provider cannot logically imply the right to assert ERISA claims for injunctive relief...").  But the answer to that question is irrelevant with respect to the first *Pascack* prong, which requires only that the assignment provides the provider with the right to recover under ERISA § 502(a).  *Pascack*, 388 F.3d at 402 (exclusively addressing existence of valid assignment under the first prong).  Any other result would allow a provider like NJBSC to avoid preemption simply by seeking relief not available under ERISA, like punitive damages—a tactic that the Supreme Court has already rejected.  *See Pilot Life*, 481 U.S. at 54 (holding punitive damages preempted by ERISA).

11

### III.   NJBSC'S CLAIMS ARE NOT BASED ON LEGAL DUTIES INDEPENDENT OF ERISA.

The second prong of the *Pascack* test asks whether an independent legal duty supports the plaintiff's claim.  *See* 388 F.3d at 400.  A legal duty is "independent" only if it "would exist whether or not an ERISA plan existed." *N.J. Carpenters & the Tr. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 303-04 (3d Cir. 2014); *see also Khan v. Guardian Life Ins. Co. of Am.*, 2016 WL 1574611, at *2 (D.N.J. Apr. 19, 2016) ("[T]he claims 'relate to' the Plan because if there were no Plan, there would be no alleged causes of action.").  The Third Circuit has distinguished between claims that dispute the amount of payment under a contract, *see Pascack*, 388 F.3d at 403 ("The dispute here is not over the *right* to payment…but the *amount*…") (emphasis in original), and claims that require coverage determinations under the terms of the patient's ERISA plan, and it has made clear that "a claim seeking coverage of a service may only be brought under ERISA." *CardioNet*, 751 F.3d at 178.

NJBSC's renewed motion to remand rehashes arguments from its original brief that its claims are not removable because they involve duties independent of its patients' ERISA plans and challenge the plans' rate of payment, not right to payment.  But no matter how NJBSC couches its claims, it concedes that it is challenging the decision to deny payment entirely for several of its patients' claims, including because the patient lacked coverage for the services that NJBSC provided under the relevant ERISA Plans and because NJBSC failed to submit the claim within the ERISA plan's filing deadlines.[8]  For this reason alone, ERISA preemption applies.

Moreover, NJBSC no longer disputes what several courts in this district have found: that

---

[8]   To the extent that Plaintiffs take issue with Cigna's denial of payments that were untimely, (*see* D.E. 48-3 at 7 n.4), those denials "relate to" the ERISA plans because there would be no conflict if not for the plans and the relevant patients' failure to file benefits claims in a timely manner pursuant to the plan's terms.  *See Khan,* 2016 WL 1574611, at *2.

2617058.1   106782-95640

its causes of action under the Healthcare Information Networks and Technologies Act ("HINT") and the Health Claims Authorization, Processing and Payment Act ("HCAPPA") are preempted. Instead, NJBSC tried to avoid preemption of these counts by voluntarily dismissing them. But as NJBSC knows, having unsuccessfully tried to this tactic before, federal jurisdiction is determined at the time of removal. Because there is no dispute that NJBSC's Complaint contained claims preempted by ERISA at the time the action was removed, this Court retains jurisdiction over this matter.

### A.    NJBSC's Claims Involve Disputes Over Coverage Under ERISA Plans.

It is undisputed that for at least eight of the eighteen patients at issue here, NJBSC's own allegations demonstrate that NJBSC is challenging the denial of its patients' claims—not merely the amount of payment made—because at least some of the services NJBSC provided were not covered under the ERISA Plans or because the claim was not timely. From NJBSC's Complaint:

- A.P. - "Defendants refused to make payment, incorrectly alleging that *the claim was untimely*";
- R.G. - "Defendants refused to make payment, incorrectly alleging that *the services provided were not covered* because NJBSC is an out-of-network provider";
- M.G. - "Defendants . . . refused to make any payment on the second claim";
- D.B. - "On or about May 9, 2015, NJBSC timely submitted a clean claim for reimbursement to Horizon Blue Cross Blue Shield ("Horizon"), the patient's primary health insurance carrier. Horizon processed the claim and provided plaintiff an Explanation of Benefits ("EOB") . . . *Defendants nevertheless did not make payment*, refusing to acknowledge the Horizon EOB";
- H.T. - "Defendants . . . *refused to pay* for CPT codes 63056 and 63057";
- J.L. - "Defendants . . . *refused to pay* for several services";
- J.G. - "Defendants *denied coverage*, asserting that J.G. did not have out-of-network benefits";
- V.G. - "[D]efendants refused to make payment, erroneously contending that *the claim was submitted too late*."

(*See* Compl. ¶¶ 68-71, 78-79, 82, 85 (emphasis added).)

To determine whether NJBSC was properly reimbursed for these claims, the Court will need to determine whether Defendants appropriately administered benefits for the patients at

issue in accordance with the terms of their ERISA Plans. For those claims that were denied, this inquiry necessarily involves analysis of the plan provisions that define the patients' coverage and related payment obligations. And as the Third Circuit recently affirmed in *CardioNet*, "a claim seeking coverage of a service may only be brought under ERISA." *CardioNet*, 751 F.3d at 178.[9]

NJBSC tries to limit the impact of its allegations by arguing that not all of these claims were completely denied since "defendants determined partial payments," which NJBSC contends makes these claims "disputes over the amount of coverage," not the existence of coverage. (D.E. 48-3 at 33.) But the fact that a partial payment was made does ***not*** mean that "[c]overage and eligibility [for those claims] . . . are not in dispute," which was the case in *Pascack*. 388 F.3d at 402-403. In fact, even for patients' claims where a defendant made partial payments, NJBSC still challenges Defendants' coverage and eligibility determinations by alleging that Defendants failed to pay for certain services that were supposedly covered by the ERISA Plans. (*See* Compl. ¶ 78 (alleging that for patient H.T., partial payment was made, but that Defendants "refused to

---

[9] *See also Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 273 (3d Cir. 2001) (a claim that "challenges the administration of or eligibility for benefits . . . falls within the scope of § 502(a) and is completely preempted"); *Sportscare of Am. v. Multiplan, Inc.*, 2011 WL 223724, at *4 (D.N.J. Jan. 24, 2011) (in finding the second *Pascack* prong satisfied for provider's action against insurance plan and third party repricer, noting that "[t]he amount of payment . . . at issue would necessarily implicate the rates in the ERISA plans under which Plaintiff claims it has received assignments"); *Shore v. Independence Blue Cross & Independence Health Grp.*, 2016 WL 6821944, at *3 (E.D. Pa. Nov. 17, 2016) ("While Plaintiff's claims will likely not require detailed interpretation of the underlying ERISA plan, they clearly rely upon the existence, and alleged breach, of an ERISA contract. Federal jurisdiction is appropriate on these grounds."); *Elite Orthopedic*, 2015 WL 5770474, at *3 (claims that "obviously look for recovery of insurance benefits under the insureds' health plan . . . fall within the scope of § 502(a)"); *Conn. State Dental Ass'n v. Anthem Health Plans Inc.*, 591 F.3d 1337, 1353 (11th Cir. 2009) (no independent legal duty for claims that "assert[] improper denials of medically necessary claims and violations of ERISA procedural requirements"); *N. Shore-Long Island Jewish Health Care System Inc. v. Multiplan, Inc.*, 953 F. Supp. 2d 419, 443 (E.D.N.Y. 2013) ("given that any payments here for medical services are derived from rights created under the [ERISA plan], these claims remain inextricably intertwined with the interpretation of Plan coverage and benefits.").

2617058.1  106782-95640

pay for CPT codes 63056 and 63057"); *id.* ¶ 79 (alleging that for patient J.L., partial payment was made, but that Defendants "refused to pay for several services").)

In any event, in making this argument, NJBSC concedes that the claims of at least four of the eighteen patients turn solely on whether Cigna or the ERISA Plan Sponsors properly denied claims in their entirety.  NJBSC further concedes that it received valid assignment of benefits from at least three of those patients (patients A.P, R.G., and J.G.).  (*See* D.E. 48-3 at 6.)  These admissions leave no question that—at the very least—this Court has jurisdiction with respect to those benefits claims and all causes of action that relate to them.  Given that NJBSC repeatedly refers to these patients as "exemplar[s]," (*id.* at 27), NJBSC will no doubt try to raise more of these denied claims later on.  All such claims belong in this Court.

NJBSC also tries to justify its remand request on the grounds that the contract claims against Cigna and the ERISA Plan Sponsors are "direct" *quasi* contract claims and thus not subject to ERISA preemption.  (*See id.* at 34-37.)  But as noted above, the Third Circuit explained in *CardioNet* that while "a provider may bring a contract action for an insurer's failure to reimburse the provider pursuant to the terms of the agreement, . . . *a claim seeking coverage of a service may only be brought under ERISA*."  751 F.3d at 178 (emphasis added).  In other words, the operative question is not whether there existed a "direct contract between Cigna and NJBSC," (*see* D.E. 48-3 at 35), but whether NJBSC's claims hinge on coverage and eligibility determinations under the plans themselves. And NJBSC's own Complaint makes clear that NJBSC is disputing Defendants' coverage and eligibility determinations for nearly half of the eighteen patients at issue.[10]

---

[10]   The other cases NJBSC cites do not support its argument. A number of them are inapposite because they deal with providers who had direct contracts with the insurer defendants. *See Barnert Hosp. v. Horizon Healthcare Servs., Inc.*, 2007 WL 1101443, at *1-2 (D.N.J. Apr.

*North Jersey Brain & Spine Center v. Connecticut General Life Insurance Co.* ("*CGLIC*") is instructive.  2011 WL 4737067 (D.N.J. June 30, 2011), *report & recommendation adopted by* 2011 WL 4737063 (D.N.J. Oct. 6, 2011).   There, NJBSC brought claims for promissory estoppel and unjust enrichment, and asserted that Cigna was supposed to pay certain claims at usual, customary, and reasonable rates.  2011 WL 4737067, at *1-2.  NJBSC opposed removal, again relying on *Pascack*; but the court correctly recognized that unlike in *Pascack*, "no separate contract govern[ed] [NJBSC's] right to payment." *Id.* at *7.   Then Magistrate Judge Arleo correctly identified the nub of the issue—with no contract, NJBSC's claims were "inextricably intertwined with the interpretation and application of ERISA plan coverage and benefits," and its claims were preempted. *Id.*

Just so here: NJBSC does not, and cannot, contend that **Cigna** or the **ERISA Plan Sponsors** are parties to any contract that requires them to cover the services at issue.  Although NJBSC contends that the rates in Multiplan Provider Agreement are somehow applicable to the claims at issue, those rates only apply once there is some determination that these are covered services **under the terms of the ERISA plans**, and "covered services" is a defined term in the context of the plans at issue.  Thus, NJBSC's claims cannot be resolved without referring to the

---

11, 2007) (provider-plaintiffs were parties to "individual Network Hospital Agreements" with defendant payor); *Newark Beth Israel v. N. N.J. Teamsters Ben. Plan*, 2006 WL 2830973, at *1-2 (D.N.J. Sept. 29, 2006) (alleging contract between payor and network); *UPMC Presby Shadyside v. Whirley Indus., Inc.*, 2005 WL 2335337, at *1 (W.D. Pa. Sept. 23, 2005) (alleging that provider agreement network was "leased" to defendant payor).

Other cases cited by NJBSC did not turn—as this case does—on ERISA coverage determinations.  *See Englewood Hospital & Med. Ctr. v. Aftra Health Fund*, 2006 WL 3675261, at *5 (D.N.J. Dec. 12, 2006) (finding that any right to recover plaintiff had depended on third party contracts rather than ERISA assignments); *Temple Univ. Hospital v. Grp. Health, Inc.*, 413 F. Supp. 2d 420, 425 (E.D. Pa. June 29, 2005) (not addressing removal whatsoever and finding that plaintiff had adequately pled claim as a third party beneficiary).

16

ERISA Plans.

Finally, NJBSC repeats its argument that *Memorial Hospital* applies to this case, contending that NJBSC can avoid preemption simply by alleging it relied on pre-service communications with Cigna.  As Cigna and the ERISA Plan Sponsors explained in its opening brief, *Memorial Hospital* has not been adopted by the Third Circuit, with courts in this District expressly rejecting its application to the types of claims NJBSC pursues here.  (*See* D.E. 34, First Opp'n at 21-22 (citing *NJBSC*, 2011 WL 4737067, at *2; *Geisinger S. Wilkes-Barre Med. Ctr. v. Duda*, 2008 WL 919531, at *2-3 (M.D. Pa. Mar. 31, 2008)).)  Moreover, as the Court recognized during oral argument, the cases which NJBSC cites in support of applying *Memorial Hospital* are "factually distinguishable" because they "involve fewer parties, patients, and claims."  D.E. 46, Hr'g Tr. at 37-38 (citing cases); *see also Children's Hosp. Corp. v. Kindercare Learning Ctrs., Inc.* 360 F. Supp. 2d 202, 206 (D. Mass. 2005) (finding independent duty where there was an "independent contract between the two entities"); *Conn. State Dental*, 591 F.3d at 1342 (plaintiffs bringing claims pursuant to provider agreement directly with insurer).  But even if *Memorial Hospital* had any application here, it would only even potentially apply to Counts II and IV-VII, not Counts I, III, or VIII-XIV, which are still clearly preempted.

**B.    NJBSC's Claims Based on Alleged Violations of New Jersey Regulations and Statutes Are Preempted by ERISA.**

As Cigna and the ERISA Plan Sponsors previously explained, NJBSC's Counts XI and XII under the New Jersey statutes HINT and HCAPPA and the New Jersey regulations governing reimbursement of emergency services rendered by out-of-network providers provide independent grounds for the Court to find that NJBSC's action is preempted.  (*See* D.E. 46, Hr'g Tr. at 18:13-21:2 (discussing *Cohen*, 2017 WL 3623746, at *1).)

With no argument in response, NJBSC tried to escape this basis for removal by

dismissing both New Jersey counts with prejudice on the same day that it filed its renewed motion to remand.  D.E. 47-48.  But federal jurisdiction is determined by the pleadings ***at the time of removal***—not at the time that NJBSC files a motion to remand.  *See Allen v. Rite-Aid, Inc.*, 1991 WL 148272, *1 (E.D. Pa. July 30, 1991) ("The defendant's right of removal must be decided by reference to the pleadings, as of the time the petition for removal is filed."); *see also Albright v. R.J. Reynolds Tobacco Co.*, 531 F.2d 132, 135 (3d Cir. 1976); *Bryfogle v. Carvel Corp.*, 666 F.Supp. 730, 732 (E.D. Pa. 1987).  NJBSC can thus only justify remand "if the removal itself was jurisdictionally improper, ***not if the defect arose after removal***."  *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 223 (3d Cir. 1995) (citing *In re Amoco*, 964 F.2d at 708 (7th Cir. 1992)) (emphasis added).  Because NJBSC's Complaint was removed when it still included claims under the preempted New Jersey statutes, removal was proper and this Court retains jurisdiction.

In fact, NJBSC's post-filing dismissal of two clearly preempted claims is the type of gamesmanship that courts have found supports denying NJBSC's remand motion. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("A district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case. If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case.").

It is also a move NJBSC unsuccessfully tried in a prior case against Cigna.  In that instance, like here, NJBSC moved for remand and lost given that their New Jersey state law claims were preempted by ERISA.  *See N. Jersey Brain & Spine Ctr. v. CIGNA Healthcare of NJ, Inc.*, 2010 WL 11594901, at *6 (D.N.J. Jan. 12, 2010).  Instead of continuing to litigate in

federal court, NJBSC withdrew its complaint and refiled in state court without asserting the claims it evidently believed drove the federal court's preemption decision.  *See N. Jersey Brain & Spine Ctr. v. CIGNA Healthcare of NJ, Inc.*, No. CV 09-2630 (JAG), Notice of Removal, D.E. 1, ¶¶ 1-6 (explaining plaintiffs' dismissal of previously filed case after losing remand motion in federal court and subsequent refiling of amended action in New Jersey state court), attached as Exhibit A.  Cigna once again removed, and the federal court ***again*** found that ERISA preempted NJBSC's claims.  *See N. Jersey Brain & Spine Ctr.*, 2011 WL 4737067, at *8.  NJBSC's renewed motion to remand here should fare no better.

## IV.    SUPPLEMENTAL JURISDICTION IS APPROPRIATE.

There is no doubt that at least some of the causes of action originally set forth in NJBSC's Complaint are preempted by ERISA and were properly removed to this Court.  But even if this Court determines that only a limited number of claims or the claim of an illustrative patient is completely preempted, this Court may exercise its supplemental jurisdiction over the remaining claims, as they are "so related" to the preempted claims "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

A federal court with jurisdiction over claims may also exercise jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367.  The Third Circuit has interpreted this provision to require the following: (1) "the federal claims must have substance sufficient to confer subject matter jurisdiction;" (2) "the state and federal claims must derive from a common nucleus of operative fact;" and (3) "[the] plaintiff's claims [must be] such that he would ordinarily be expected to try them all in one judicial proceeding." *In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d 283, 302 (3d Cir. 1998).

19

These elements hardly need to be belabored.  For reasons discussed, on the conceded facts a significant portion if not all of the claims at issue here are ERISA claims and thus federal under ERISA's complete preemption doctrine.  The facts are common as to each—they involve claims for coverage by the same medical provider—and NJBSC cannot dispute that they would "ordinarily be expected to try them together" since it brought them in a single action.

Courts have discretion to decline to exercise supplemental jurisdiction in four discrete circumstances, as set forth in 28 U.S.C. § 1367(c):

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

NJBSC has failed to advance a persuasive theory under any of these exceptions.  Indeed, NJBSC does not even attempt to invoke the fourth exception.  Any arguments for the application of the first, second, or third exceptions fail.

***First***, NJBSC has not established that its claims raise a complex issue of state law. NJBSC cites *Mazzola v. AmeriChoice of New Jersey, Inc.*, 2013 WL 6022345 (D.N.J. Nov. 13, 2013), for the proposition that non-preempted, state-law claims in a healthcare dispute must be remanded to State court due to New Jersey's "strong interest" in such issues.  But *Mazzola* presented a situation completely different from this action.  (D.E. 48-3 at 38-39.)  Specifically, *Mazzola* (invoking the third exception of 28 U.S.C. 1367(c)) declined to exercise supplemental jurisdiction over the plaintiff's state-law claims after the plaintiff amended its complaint to remove its ***only federal claim***.  2013 WL 6022345, at *2.

Further, the "interest of comity" analysis in *Mazzola* was driven by the plaintiff's

2617058.1   106782-95640

remaining state law claims, which involved "the interpretation of New Jersey regulatory and statutory provisions governing state-contracted managed care organizations." *Id.* at *3. In contrast, NJBSC has voluntarily dismissed its claims for alleged violations of New Jersey statutory and regulatory healthcare provisions; thus, this interest in comity would not be served by remand. The case that remains turns on garden-variety, plan benefits disputes, not some uniquely New Jersey-centric policy considerations.

**Second**, NJBSC has not demonstrated that its state-law claims substantially predominate over the ERISA claims. The Third Circuit has recognized that the "substantially predominates" standard "was fashioned as a **limited exception** to the operation of the doctrine of pendent [now supplemental] jurisdiction—a doctrine that seeks to promote judicial economy, convenience, and fairness to litigants by litigating in one case all claims that arise out of the same nucleus of operative fact." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995). Accordingly,

> When a district court exercises its discretion not to hear state claims under § 1367(c)(2), the advantages of a single suit are lost. For that reason, § 1367(c)(2)'s authority should be invoked only where there is an important countervailing interest to be served by relegating state claims to the state court. This will normally be the case only where "a state claim constitutes the real body of a case, to which the federal claim is only an appendage"—only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog.

*Id.* Thus, a court must consider whether declining to exercise supplemental jurisdiction over state claims would create duplicative proceedings in federal and state court. *Id.*

Here, regardless of the existence of an assignment for eight of the eighteen illustrative patients, **all** of NJBSC's claims are premised on the same core facts. Each involves claims for medical treatment by a single medical provider. There are a number of ERISA plans at issue, but

21

a common entity administers claims for each one and NJBSC's grievance is based upon that claim administration, not some quirk or another of the underlying ERISA plans. The substantive allegations of liability can only be read as common to all of them.  NJBSC's complaints, though arising from the claims of individual beneficiaries, all have since been assigned to a single party—NJBSC.   Indeed, NJBSC posits that the eighteen patients and their associated claims described in the complaint are an "'illustrative' example," not the entire set of patients whose claims NJBSC intends to pursue.  (Compl. ¶ 7.)  The suggestion that the sample can "illustrat[e]" a larger whole dooms at the outset any argument that the claims are so different that they should not be litigated together.  As a matter of judicial economy, these claims—all of which have to do with monies that NJBSC contends it is owed under Defendants' plans—should proceed in a single lawsuit.

*Finally*, NJBSC cannot invoke the third exception, applicable only where the court has dismissed *all* claims over which it has original jurisdiction.   NJBSC contends its voluntary dismissal of Counts XI and XII justifies this Court's discretion to decline to exercise supplemental jurisdiction.  (See D.E. 48-3 at 37 n.22.)  As an initial matter, NJBSC's decision to drop two clearly preempted claims post-removal does not deprive the Court of jurisdiction.  *See Alicea v. Outback Steakhouse*, 2011 WL 1675036, at *4 (D.N.J. 2011) ("The fact that the federal claims which were the basis for the removal were dropped during subsequent proceedings does not automatically deprive the district court of jurisdiction.").

Moreover, this argument ignores NJBSC's other preempted claims, which, for reasons discussed, are within this Court's subject matter jurisdiction,[11] and NJBSC provides *no* authority

---

[11]   This argument is also flawed by virtue of NJBSC's (unnecessary) continued insistence that the dismissed counts (1) are not preempted; and (2) contain a private right of action. NJBSC's contentions are contrary to several recent decisions from this District.  *See Cape*

to support its request that this Court decline to exercise supplemental jurisdiction entirely even if it possesses federal jurisdiction over some of the claims at issue.  NJBSC's reliance on *Mazzola* is again easily distinguished.  *See, e.g.*, *Mazzola*, 2013 WL 6022345, at *1 (plaintiff amended its complaint to dismiss its only federal claim).

In sum, NJBSC has failed to demonstrate that any exception under 28 U.S.C. 1367(c) applies.  Supplemental jurisdiction is therefore proper here, as any state claims are substantially related to the claims subject to federal law. Severing these claims would result in parallel proceedings in federal and state court and would frustrate principles of case management and judicial economy. Accordingly, this Court should retain this lawsuit, in its entirety, in federal court.

## CONCLUSION

For the above reasons, Cigna and the ERISA Plan Sponsors respectfully request that this Court deny NJBSC's Renewed Motion to Remand.


Dated: July 2, 2018                             Respectfully Submitted,

                                                *s/ E. Evans Wohlforth, Jr.*
                                                _____
Joshua B. Simon                                 E. Evans Wohlforth, Jr.
Warren Haskel                                   Caroline E. Oks
Dmitriy Tishyevich                              Charlotte M. Howells
KIRKLAND & ELLIS LLP                            GIBBONS P.C.
601 Lexington Avenue                            One Gateway Center
New York, New York 10022                        Newark, New Jersey 07102-5310
(212) 446-4800                                  (973) 596-4500

---

*Reg'l Med. Ctr. v. Cigna Health & Life Ins. Co.*, No. CV 17-5284, 2018 WL 2980386 (D.N.J. June 14, 2018) (dismissing claim under New Jersey emergency services regulation as preempted under ERISA and holding that even if the claim were not preempted, it provides no private right of action); *Zapiach v. Empire Blue Cross Blue Shield*, 2018 WL 1838017 (D.N.J. April 17, 2018) (same).

23

*Attorneys for Defendants Connecticut General Life Insurance Co.; GM Financial; Interplex NAS, Inc.; Humanscale; Teterboro Learning Center; Sharp Electronics Corp.; Macy's Inc.; Ferring Pharmaceuticals, Inc.; Tata Consultancy Services; JPMorgan Chase & Co.; Nippon Express USA, Inc.; Samsung C&T America, Inc.; LSG Sky Chefs Group; Tam Metal Products, Inc.; Daiichi Sankyo, Inc.; and EMSL Analytical, Inc.*

2617058.1   106782-95640