# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER, <br>    Plaintiff, <br> vs. <br> MULTIPLAN, INC.; CONNECTICUT GENERAL LIFE INSURANCE CO., INC.; GM FINANICAL, d/b/a GM Financial-HRA; INTERPLEX NAS, INC., d/b/a Interplex Holding, Ltd.; HUMANSCALE; TETERBORO LEARING CENTER, d/b/a FlightSafety International, Inc.; SHARP ELECTRONICS; MACY'S INC.; FERRING PHARMA-CEUTICALS, INC.; TATA CONSULTANCY SERVICES; JP MORGAN CHASE & CO.; NIPPON EXPRESS USA, INC., d/b/a Nippon Express; SAMSUNG C&T AMERICA, INC.; LSG SKY CHEFS GROUP, d/b/a Sky Chefs, Inc.; TAM METAL PRODUCTS, INC.; DAIICHI SANKYO, INC.; EMSL ANALYTICAL, INC.; and ABC CORPS. 1-100, <br>    Defendants. | Civil Case No. 3:17-05967 <br><br><br> Before:  Michael A. Shipp, U.S.D.J. <br>         Lois H. Goodman, U.S.M.J. <br><br> Return Date:  August 20, 2018 <br><br> **Oral Argument Requested** |

**PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT
OF ITS RENEWED MOTION TO REMAND FOR
LACK OF SUBJECT-MATTER JURISDICTION**

Eric D. Katz  |  NJ Atty. No. 016791991
David M. Estes  |  NJ Atty. No.  034532011
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: 973-228-9898
F: 973-228-0303
E: ekatz@mskf.net
*Counsel for Plaintiff*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................1

REPLY ARGUMENT .............................................................................................................4

   I.  THE SECOND PRONG OF *PASCACK* IS NOT ESTABLISHED .........................................4

- Patient A.P. .......................................................................................................4

- Patient R.G. ......................................................................................................5

- Patient M.G. .....................................................................................................5

- Patient D.B. ......................................................................................................5

- Patient J.G. .......................................................................................................6

- Patients M.R., A.F., N.N., M.B. & I.G. ...................................................................6

   II.  THE FIRST PRONG OF *PASCACK* IS NOT SATISFIED ..................................................11

   III.  SUPPLEMENTAL JURISDICTION SHOULD NOT BE EXERCISED ............................14

CONCLUSION......................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Access Mediquip LLC v. UnitedHealthcare Ins. Co.*, 662 F.3d 376 (5th Cir. 2011),
  *aff'd en banc*, 698 F.3d 229 (5th Cir. 2012) ..............................................................10

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)......................................................................4,7

*Am. Ortho. & Sports Med. v. Indep. Blue Cross Blue Sh.*, 890 F.3d 445
  (3d Cir. 2018) ................................................................................................... *passim*

*Board of Trs. of Laborers Health & Welfare Tr. Fund for N. Cal. v. Drs. Med. Ctr.
  of Modesto*, 351 F. App'x 175 (9th Cir. 2009) ..........................................................12

*Board of Trs. of Laborers Health & Welfare Tr. Fund for N. Cal. v. Drs. Med. Ctr.
  of Modesto*, 2007 WL 2385097 (N.D. Cal. Aug. 17, 2007)........................................12

*Boro. of W. Mifflin v. Lancaster*, 45 F.3d 780 (3d Cir. 1995) ..................................................3,15

*CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165 (3d Cir. 2014)..................................3,14,15

*Catholic Healthcare W.-Bay Area v. Seafarers Health & Benefits Plan*,
  321 F. App'x 563 (9th Cir. 2008) ..................................................................................7

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*, No. 15-4525, 2017 WL 685101
  (D.N.J. Feb. 21, 2017)..................................................................................................15

*Cypress Fairbanks Med. Ctr. v. Pan-Am. Life Ins.*, 110 F.3d 280 (5th Cir. 1997),
  **overruled** by, Access Mediquip, supra........................................................................10

*Dieffenbach v. Cigna, Inc.*, 310 F. App'x 504 (3d Cir. 2009) ..................................................3,13

*Englewood Hosp. & Med. Ctr. v. AFTRA Health Fund*, No. 6–637,
  2006 WL 3675261 (D.N.J. Dec. 12, 2006)..................................................................11

*Garrick Cox M.D. v. Cigna Healthcare*, No. 16-4611, 2016 WL 6877778
  (D.N.J. Oct. 28, 2016), *R&R adopted*, 2016 WL 6877740 (D.N.J. Nov. 21, 2016).......8

*Goldberg v. Schindler Elevator Corp.*, No. 3:17-07147 (DNJ 2018) (D.E. 48-6, Ex. AA) ..........14

*Healy v. Ratta*, 292 U.S. 263 (1934)................................................................................................4

*Hospice of Metro Denver, Inc. v. Grp. Health Ins. of Okla., Inc.*, 944 F.2d 752
  (10th Cir. 1991)..............................................................................................................2

*Krys v. Aaron*, 112 F. Supp. 3d 181 (D.N.J. 2015) ........................................................................8

*Lone Star OB/GYN Assocs. v. Aetna Health*, 579 F.3d 525 (5th Cir. 2009) ....................................7

*Luby v. Team's Health, Welfare, & Pension Tr. Funds*, 944 F.2d 1176 (3d Cir. 1991) ..................8

*Makwana v. Medco Health Servs., Inc.*, 2016 WL 7477755 (D.N.J. Dec. 28, 2016) .....................15

*McCall v. Metro. Life Ins. Co.*, 956 F. Supp. 1172 (D.N.J. 1996) ...................................................9

*McCulloch Ortho. Surgl. Servs., PLLC v. Aetna Inc.*, 857 F.3d 141 (2d Cir. 2017) .............. passim

*Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990) ................. passim

*MHA, LLC v. Empire Healthchoice HMO, Inc.*, 2018 WL 549641 (D.N.J. Jan. 25, 2018) ..........10

*N.J. Carps. & Trs. v. Tishman Const. Corp. of N.J.*, 760 F.3d 297 (3d Cir. 2014) .......................10

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369 (3d Cir. 2015) ......................................2

*N. Jersey Brain & Spine Ctr. v. CGLIC*, No. 10–4260, 2011 WL 4737067
   (D.N.J. June 30, 2011), *R&R adopted*, 2011 WL 4737063 (D.N.J. Oct. 6, 2011) ........................8

*Pascack Valley Hospital, Inc. v. Loc. 464A UCFW Welfare Reimbursement
   Plan,* 388 F.3d 393 (3d Cir. 2004) ...................................................................................... passim

*Progressive Spine & Ortho. v. Anthem Blue Cross Blue Sh.*, No. 17-536,
   2017 WL 4011203 (D.N.J. Sept. 11, 2017) ...........................................................................12,13

*Rahul Shah, M.D. v. Horizon Blue Cross Blue Shield*, 2016 WL 4499551
   (D.N.J. Aug. 25, 2016) ..........................................................................................................13,14

*Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006 (3d Cir. 1987) ..........................5

*USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190 (3d Cir. 2003), *cert. denied*,
   541 U.S. 903 (2004) ...................................................................................................................11

**Statute**

ERISA § 502 .............................................................................................................................3,12,13

## INTRODUCTION

Plaintiff North Jersey Brain & Spine Center ("NJBSC") submits this reply brief in support of its renewed motion remand. The Court should reject defendants' attempt to misappropriate ERISA preemption into a shield to evade accountability under state law for their nefarious business practices.

At the heart of this dispute is a conspiracy and economic torts arising from a secret "target pricing" scheme between defendants MultiPlan and Connecticut General Life Ins. ("Cigna").[1] That scheme denied NJBSC the benefit of the bargain under the MultiPlan Provider Agreement. MultiPlan promised NJBSC it would be paid "contract rates," and that its (confidential) agreements with Cigna would conform. But the promises were untrue – as MultiPlan publicly admitted. Cigna tries to distance itself from MultiPlan, but it reviewed the Provider Agreement, placed the MultiPlan logo on the patients' cards, and indemnifies MultiPlan. (Compl. ¶¶ 37-44, 91-115) (D.E. 1-2). This is a dispute over the <u>amount</u> of reimbursement required by the Provider Agreement, and defendants' tortious scheme to subvert NJBSC's rights under that contract. (*Id*. ¶ 137). None of this has bearing on ERISA plans.

The factual allegations must be accepted as true and are far afield from a run-of-the-mill healthcare dispute. Congress intended ERISA preemption to protect

---

[1]   "Cigna" includes the 15 "other payor defendants," (Pl. Br. 1); their liability is predicated on the conduct of their agent, Cigna. (Compl. ¶¶ 62, 92, 111, 242).

1

patients, not the insurance industry. *N. Jersey Brain & Spine Ctr. v. Aetna*, 801 F.3d 369, 373 (3d Cir. 2015); *Hospice of Metro Denver v. Grp. Health Ins.*, 944 F.2d 752, 754-56 (10th Cir. 1991) ("stress[ing] importance of considering the 'commercial realities' of a preemption decision… if health care providers have no recourse under ERISA [there] will be reluctance [by] providers to extend care."). Removal jurisdiction is strictly construed. *Healy v. Ratta*, 292 U.S. 263, 270 (1934). Here, defendants fail to carry their burden to establish jurisdiction: that NJBSC "could have brought [these] claim[s] under ERISA" <u>and</u> "there is no other independent legal duty" implicated by defendants' tortious conduct. *Pascack Valley Hosp. v. Loc. 464A Welfare Reimb't Plan*, 388 F.3d 393, 400 (3d Cir. 2004).

Defendants have not satisfied the second prong of *Pascack*. For all patients, the services were rendered after defendants induced NJBSC through false representations and conduct, including the preapproval process (13 of 18 patients) and the MultiPlan logo on patient cards (all patients). Under the *Memorial Hospital* Rule, there is an independent duty for such claims. *McCulloch Ortho. Surg. Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 150-151 (2d Cir. 2017). For the 5 patients where emergency surgery was not preapproved, defendants issued partial payment and NJBSC merely seeks additional payment per the Provider Agreement. The Third Circuit holds there is an independent duty where the dispute is over the <u>amount</u> due under a PPO contract. *Pascack*, 388 F.3d at 402-03.

Nor have defendants satisfied the first prong of *Pascack*. Defendants must establish that NJBSC has ERISA standing. *Am. Ortho. & Sports Med. v. Indep. Blue Cross Blue Sh.*, 890 F.3d 445, 453 (3d Cir. 2018). Here, there is either no assignment of benefits ("AOB"), or an anti-assignment clause, for 8 of 18 patients. Even for the 10 patients for whom there is a valid AOB, defendants have not proven prong 1(b) as they will not concede that NJBSC's claims for conspiracy, fraud and economic torts can be shoehorned into the assignments' text, nor does ERISA § 502 provide corollary remedies. *Dieffenbach v. Cigna, Inc.*, 310 F. App'x 504, 508 (3d Cir. 2009). More fundamentally, the existence of AOBs is immaterial. This lawsuit arises from NJBSC's <u>own</u> rights based on its <u>direct</u> relationship with defendants, not derivative claims based on the patients' rights under ERISA plans. *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 178 (3d Cir. 2014).

In sum, defendants grasp for a jurisdictional hook to keep this state law action in federal court. Of the 18 patients, 8 lack standing and fail prong one. Of the remaining 10, Cigna concedes 5 involve partial payment, thus fail prong two. In the final analysis, defendants are left with 5 patients to prove preemption (A.P., R.G., M.G., D.B. and J.G.). But for these 5 patients, there are independent duties under the *Memorial Hospital* Rule. Moreover, even if *arguendo* an isolated claim was preempted, the Third Circuit instructs that, at this posture (prior to trial), the remaining state law claims "must" be remanded. *Boro. of W. Mifflin v. Lancaster*,

3

45 F.3d 780, 788 (3d Cir. 1995). The plaintiff is the master of the complaint and afforded the right to select its forum. Respectfully, remand is mandated here.

## REPLY ARGUMENT

### I.    THE SECOND PRONG OF *PASCACK* IS NOT ESTABLISHED

Defendants have not carried their burden of proof. To avoid remand, defendants must establish that "'there is no other independent legal duty that is implicated by [their] actions.'" *Pascack*, 388 F.3d at 400 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)). Cigna's primary argument is that, for the 10 patients with valid AOBs, it "denied at least some of these ten patients' claims… based on determinations that the…ERISA plans did not cover the claim." (Cigna Br. 1) (D.E. 52). This argument, however, is factually inaccurate and legally defective.

Factually, Cigna focuses myopically on whether, for the 10 patients with valid AOBs, there was a "no coverage" determination. (*Id.* 1,6,13). To cut through the obfuscation, below is a clear recitation of the existence of one or more independent duties for each of these 10 patients who have a valid AOB:

- **Patient A.P.** Prior to treating A.P. in September 2015, NJBSC obtained pre-approval from Cigna. (Compl. ¶¶ 68, 66 n.5) (D.E. 1-2). In addition, NJBSC relied on defendants' placement of the MultiPlan logo on A.P.'s insurance card, and thus MultiPlan "contract rates," in rendering medical services to A.P. (*Id.* ¶ 68, 4, 44, 56, 60-65). The Provider Agreement states that defendants' preapprovals are binding. (*See id.* ¶ 56). Under the *Memorial Hospital* rule, there is at least one independent duty.
  Defendants argue there was "no coverage" because the claim was "untimely." (Cigna Br. 6,13,15; MultiPlan Br. 5,9) (D.E. 51). The timeliness argument is counterfactual. Defendants "must assume as true all factual

4

allegations" in the complaint, *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987), which are that the claim was timely but incorrectly denied as late. (Compl. ¶ 68). Timeliness is also irrelevant, because there are duties independent of ERISA: defendants' preapproval and placement of the MultiPlan logo. Even if timeliness was a valid consideration, in this suit it is governed by the MultiPlan Provider Agreement, not an ERISA plan. (*See* Provider Agreement ¶ 5.1) (90-day period to file claim) (Ex. A of D.E. 1-2).

- **Patient R.G.** Prior to treating patient R.G. in September 2015, NJBSC obtained preapproval from Cigna. (Compl. ¶¶ 69, 66 n.5). In addition, NJBSC relied on defendants' placement of the MultiPlan logo on R.G.'s identification card in rendering medical services to R.G. (*Id.* ¶¶ 69, 4, 44, 56, 60-65). Under *Memorial Hospital*, there is at least one independent duty.

    Defendants claim there was "no coverage" because NJBSC was an "out-of-network provider." (Cigna Br. 6,13,15; MultiPlan Br. 5,10). However, whether NJBSC was an "in network" complementary provider under the Provider Agreement, or not, is another counterfactual argument. (Compl. ¶¶ 6-8, 31-36, 239). There is an antecedent independent duty from the preapproval, as well as the MultiPlan logo. A subsequent dispute over NJBSC's status is of no moment to these preexisting common law duties. Moreover, NJBSC's provider status is governed by the MultiPlan Agreement, not an ERISA plan.

- **Patient M.G.** In treating patient M.G. in July and October 2015, NJBSC relied on defendants' MultiPlan logo, and thus MultiPlan "contract rates," in rendering medical services. (Compl. ¶¶ 70, 4, 44, 56, 60-65). Additionally, prior to treating M.G. in October, NJBSC obtained preapproval. (*Id.* ¶¶ 70, 66 n.5). There is at least one independent duty under *Memorial Hospital.*

    Cigna claims there was "no coverage" because it did not approve a payment to NJBSC for the second surgery. (Cigna Br. 6,13). This is inaccurate; Cigna approved partial payments for both surgeries. (*See* M.G. EOB) (D.E. 48-5, Ex. T); (Compl. ¶ 70). **Significantly, Cigna admits that where a dispute is over the amount of payment, it is not subject to ERISA preemption**. (Cigna Br. 12). Because Cigna approved payments (but at less than MultiPlan rates), there was coverage for M.G., and NJBSC is challenging the amount paid.

- **Patient D.B.** Prior to treating patient D.B. in March 2015, NJBSC obtained preapproval from Cigna. (Compl. ¶¶ 71, 66 n.5). NJBSC also relied on defendants' placement of the MultiPlan logo on D.B.'s insurance card in rendering medical services to D.B. (*Id.* ¶¶ 71, 4, 44, 56, 60-65). The Provider

5

Agreement states that defendants' preapprovals are binding. (*Id.* ¶ 56). Under *Memorial Hospital*, there are independent duties.

Defendants claim there was "no coverage" because it did not approve a payment to NJBSC. (Cigna Br. 6,13; MultiPlan Br. 5,10). This is inaccurate; Cigna approved partial payment of $4,539.89. (*See* D.B. EOB) (D.E. 48-5, Ex. U). Because Cigna approved payments (but at less than MultiPlan contract rates), there was coverage for D.B., and NJBSC is challenging the amount paid.

- **Patient J.G.** Prior to treating patient J.G. in June 2014, NJBSC obtained pre-approval. (Compl. ¶¶ 82, 66 n.5). NJBSC also relied on defendants' MultiPlan logo on J.G.'s insurance card in rendering services. (*Id.* ¶¶ 82, 4, 44, 56, 60-65). Under *Memorial Hospital*, there are independent duties.

    Defendants claim there was "no coverage" because NJBSC was an "out-of-network provider." (Cigna Br. 6,13,15; MultiPlan Br. 5,9-10). However, after preapproving services, a post-service dispute over NJBSC's network status is irrelevant to the preexisting *Memorial Hospital* claims. NJBSC's status is governed by the MultiPlan Agreement, not J.G.'s ERISA plan. Whether NJBSC was an "in network" complementary provider, or out of network, is again a premature, counterfactual argument. (Compl. ¶¶ 6-8, 31-36, 239).[2]

Cigna predicates its opposition to remand on these patients being "no coverage" disputes, however for each patient, there are independent duties. Also telling, Cigna does not dispute or contest (and so waives) that for the remaining 5 patients with valid AOBs, *infra*, there is no ERISA preemption, as Cigna issued partial payment:

- **Patients M.R., A.F., N.N., M.B. & I.G**. Prior to treating M.R. in May 2015, A.F. in July 2014, N.N. in May 2013, M.B. in August 2015 and I.G. in November 2015, NJBSC obtained preapproval from Cigna and/or relied on the MultiPlan logo and rates. (Compl. ¶¶ 73, 75-76, 80-81). The Provider Agreement states that defendants' preapprovals are binding. (*Id.* ¶ 56). Cigna approved payment, but at less than MultiPlan contract rates. *Id.*

---

[2] Defendants made "no coverage" arguments for patients H.T., J.L., V.G. and A.N. (Cigna Br. 13-15; MultiPlan Br. 5,10). These arguments are **moot**; there is no valid AOB for these four (pg. 11, *infra*), so the first prong cannot be satisfied. Also, these 4 patients involve independent duties under *Memorial Hosp*. (Compl. ¶ 77-85).

6

In sum, Cigna's "no coverage" argument is a misdirection tactic. For every patient with a valid AOB, there are independent duties arising either from violations of the MultiPlan Provider Agreement, or defendants' direct acts and omissions in inducing NJBSC to render services to patients who participated in the MultiPlan program. Courts of Appeal have repeatedly held that these duties do not cross the line into the zone of ERISA preemption. *E.g.*, *Lone Star OB/GYN Assocs. v. Aetna Health*, 579 F.3d 525, 531-32 (5th Cir. 2009) ("majority of…courts…have held no ERISA preemption…where there is an underlying contract…and the claims are not dependent on interpretation of the plan"; "the bare fact that [an ERISA plan] will be consulted in…state-law litigation plainly does not require [it] to be extinguished"); *Cath. Healthcare v. Seafarers Health & Benefits Plan*, 321 F. App'x 563, 564–65 (9th Cir. 2008) ("fact finder will not have to interpret an ERISA plan to determine the terms of the implied contract or the nature of [an insurer's] misrepresentations").

Legally, Cigna's logic is unsound. The issue for the Court is not whether there was a determination of "no coverage." Rather, this Court **only** has removal jurisdiction if defendants prove that there is "no legal duty (state or federal) independent of ERISA or the plan terms." *Davila*, 542 U.S. at 208. Cigna's "no coverage" mantra is an attempt to sidestep the question presented: **Does defendants' conduct give rise to any** "**other independent legal duty**"? The answer is yes. Regardless of coverage, defendants' preapproval of the medical services rendered,

7

and placement of the MultiPlan logo on the patients' insurance cards (with knowledge of the contents of the Provider Agreement), give rise to the well-established independent duties under *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990) and its progeny. (*See* Pl. Br. 24-30) (D.E. 48-3) (collecting cases). After two rounds of motion practice, defendants have never disputed that, under *Memorial Hospital*, the MultiPlan logo triggers liability. *Krys v. Aaron*, 112 F. Supp. 3d 181, 197 n.18 (D.N.J. 2015) (collecting cases) (failure to brief issue results in waiver).

Cigna's only retort is that *Memorial Hospital* "has not been adopted by the Third Circuit." (Cigna Br. 17). But this position is untenable. ERISA is governed by "federal common law." *Luby v. Team's Health, Welfare, & Pension Tr. Funds*, 944 F.2d 1176, 1186 (3d Cir. 1991). Consequently, the fact that 11 sister circuits follow the Rule is highly probative of whether there is preemption here. (Pl. Br. 26-28). Nor can it be disputed that *Memorial Hospital* has been applied frequently in this District. (*Id*. 26-27) (collecting cases).[3] Critically, defendants do not dispute that, under the Rule, misrepresentations give rise to independent duties:

> **[A]ny legal duty [defendant] Aetna has to reimburse [plaintiff] McCulloch is <u>independent and distinct</u> from its obligations under the patient's [ERISA] plan**. McCulloch's promissory-estoppel claim

---

[3]  Cigna relies on *NJBSC v. CGLIC*, 2011 WL 4737063 (D.N.J. 2011) (Wigenton, J.). However, Judge Wigenton's more-recent decision demonstrates that the court no longer follows such a narrow reading of the *Memorial Hospital* Rule. *Garrick Cox M.D. v. Cigna Healthcare*, 2016 WL 6877740 (D.N.J. Nov. 21, 2016).

> against Aetna arises not from an alleged violation of some right contained in the plan, but rather from a **freestanding state-law duty grounded in conceptions of equity and fairness**…. McCulloch called Aetna for his own benefit to decide whether he would accept or reject a potential patient…. **McCulloch's conversation with Aetna, therefore, is not governed by the plan's terms or 'inextricably intertwined' with an interpretation of the plan**[]….

*McCulloch*, 857 F.3d at 150-151 (2d Cir. 2017) (citations omitted; emph. added); *accord McCall v. Metro. Life Ins. Co.*, 956 F. Supp. 1172, 1185-87 (D.N.J. 1996). And the Third Circuit recently cited *McCulloch* affirmatively. 890 F.3d at 453.

Relying on a comment by the Court during colloquy on the first motion to remand, Cigna argues that *Memorial Hospital* does not apply here – a case involving 18 patients – because prior decisional law "involved fewer parties, patients, and claims." (Cigna Br. 17). However, the Court's comment was made in the context of its forthcoming decision on jurisdictional discovery. More fundamentally, the fact that this case involves 18 patients, rather than 2 or 3 cannot be a legitimate basis to discard decades of decisional law applying *Memorial Hospital*. On that logic, plaintiff could simply move to sever this suit into several smaller suits, and those suits would no longer be subject to ERISA preemption. Such an arbitrary distinction is unworkable. Cigna's premise (that *Memorial Hospital* only applies to simple cases) is also factually inaccurate. In a recent example, Judge Wigenton applied the Rule and remanded a healthcare case involving "thousands of patients" and $39

9

million in dispute. *MHA, LLC v. Empire Healthchoice HMO, Inc.*, 2018 WL 549641, at *1 (D.N.J. Jan. 25, 2018). The Rule applies *a fortiori* here, an 18-patient case.

Defendants also contradict one another by advancing inconsistent, narrow interpretations of *Memorial Hospital*: MultiPlan argues it only applies where there is no coverage/no payment (MultiPlan Br. 9-10); Cigna argues it only applies where there is coverage/partial payment (*see* Pl. Br. 28-29). Defendants cannot both be correct. They are both **in**correct, in fact. Appellate precedent applies this Rule broadly without regard to whether the inducing misrepresentation is over the extent of payment or existence of coverage. (*Id.* 29) (collecting cases). Both defendants also peddle bad law, *Cypress Fairbanks Med. Ctr. v. Pan-Am. Life Ins.*, 110 F.3d 280 (5th Cir. 1997) (D.E 51, pg. 9; D.E. 34, pg. 22), which was **overruled** by *Access MediQuip v. UnitedHealthcare*, 662 F.3d 376, 383-85 (5th Cir. 2011), rejecting defendants' narrow interpretation: "It is difficult to see why preemption should depend on whether a provider alleges that it was misled by explicit promises of future payment or by statements about coverage that convey[] a false impression of future payment."

Separate from *Memorial Hospital*, other independent duties are triggered by the PPO contract between NJBSC and MultiPlan. (Pl. Br. 31-37) (collecting cases). Cigna selectively quotes *N.J. Carpenters & the Trs. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297 (3d Cir. 2014) to exaggerate the standard (Cigna Br. 12), but

10

there the Third Circuit held no preemption because a contract setting payment "creates just such an independent legal duty. The defendant's duty to pay…derives from the [contract], not any ERISA plan." 760 F.3d at 303; *accord Englewood Hosp. & Med. Ctr. v. Aftra Health Fund*, 2006 WL 3675261, at *5–6 (D.N.J. 2006). Like the contracts in *N.J. Carpenters*, *Pascack* and *Englewood*, here there is a separate contract setting forth defendants' duty to pay; no interpretation of an ERISA plan is required to determine the amount owed. In sum, for each of the 10 patients with a valid assignment, there are multiple independent duties; Cigna's "no coverage" argument is nonresponsive to the question presented.[4]

## II. **THE FIRST PRONG OF *PASCACK* IS NOT SATISFIED**

It is undisputed that the record contains no AOB or there is an anti-assignment provision with respect to 8 of the 18 patients, namely, E.M., V.G., P.A., M.C., A.N., H.T., J.L. and T.J. (Pl. Br. 9-10; Cigna Br. 1,9; MultiPlan Br. 6-7). The "absence of an assignment is dispositive of the complete pre-emption question." *Pascack*, 388 F.3d at 404. Therefore, all claims related to these 8 patients should be remanded.

The Third Circuit recently held anti-assignment provisions are enforceable. *Am. Ortho.*, 890 F.3d at 453 (3d Cir. 2018) (citing *McCulloch*, 857 F.3d at 147). An

---

[4] For the first time, defendants assert that Counts I, III, VIII-IX, and XIII-XIV are preempted. (Cigna Br. 17). However, a removing-defendant is limited to the bases and facts in the removal pleading (only Counts X-XII and 18 patients) (D.E. 1). So, defendants' new arguments are waived as a matter of law and must be rejected. *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 (3d Cir. 2003).

11

"anti-assignment provision renders the purported assignments ineffective; it is as if there were no assignments at all." *Prog. Spine & Ortho. v. Anthem Blue Cross Blue Sh.*, 2017 WL 4011203, at *8-9 (D.N.J. 2017) ("The result, from the insurer's point of view, should be that the provider cannot sue anywhere"). There is an anti-assignment provision in the plans for patients A.N., H.T., J.L. and T.J. (D.E. 48-4, Ex. O; D.E. 48-5, Exs. P-S). Yet, Cigna argues quixotically that its plans' anti-assignment provision was somehow waived by partial payments. (Cigna Br. 5,10). This argument is meritless on its face. The Third Circuit expressly held that "issuing payment at the out-of-network rate" is not sufficient to waive an anti-assignment clause. 890 F.3d at 454. Ignoring on-point precedent, Cigna relies on a pair of non-Third Circuit cases (Cigna Br. 10), but neither even involves an anti-assignment clause, and in fact both decisions actually support granting this motion to remand.[5]

Even for the 10 patients who provided a valid AOB, defendants have nevertheless not carried their burden of proof, under "Subpart b of the first *Pascack* prong," as defendants also must establish "that the actual claim asserted by [NJBSC]

---

[5] In *Board of Trs. of Laborers v. Drs. Med. Ctr. of Modesto*, 351 F. App'x 175, 176 (9th Cir. 2009), the Ninth Circuit held there is no preemption where, like here, the provider alleges the defendant breached a contract setting the reimbursement rates. Similarly, the district court in *Modesto* never discusses anti-assignment clauses, rather it discussed whether partial payment was proof of the existence of AOBs. 2007 WL 2385097, at *5-6 (N.D. Cal. 2007). Significantly, the court rejected Cigna's waiver-by-payment theory, holding there is no preemption where, like here, a provider "chose[] to sue…for the services provided…**based only on a contractual relationship independent** of the ERISA Plan." *Id*. at *6, 8 (emph. added).

12

can be considered a colorable claim for benefits under Section 502(a)(1)(B)." *Prog.*, 2017 WL 4011203, at *8, 5. Defendants **conspicuously avoid** tackling this issue head-on. At no point do defendants parse the text of NJBSC's assignment and articulate how it is broad enough to support a colorable claim under ERISA for fraud, conspiracy or economic torts. (*Cf.* Pl. Br. 11-17). Instead of addressing whether the AOBs permit such claims under ERISA § 502(a), Cigna asserts there is no prong 1(b) requirement in the Third Circuit. (Cigna Br. 11). However, as articulated by the Third Circuit in *Dieffenbach*, the mere existence of an assignment is not sufficient for removal; Cigna must show colorable claims under ERISA:

> [T]he question remains whether [the plaintiff's] claims…fall within the scope of ERISA's civil enforcement provision…. [N]ot all claims preempted by ERISA are subject to removal. "[**S**]**tate law claims that fall outside of the scope of** [**the civil enforcement provision**], **even if preempted by** [**ERISA**], **are still governed by the well-pleaded complaint rule**, **and therefore**, **are** <u>**not removable**</u>…"

*Dieffenbach*, 310 F. App'x at 508–10. The Third Circuit and this District have endorsed *McCulloch*, which held that under "the first prong, …we consider…also (2) whether the <u>actual claim</u> that the plaintiff asserts can be…a colorable claim," 857 F.3d at 146. *E.g.*, *Am. Ortho.*, 890 F.3d at 453; *Prog.*, 2017 WL 4011203, at *5.

There is no attempt to reconcile the position defendants must take to defeat remand (*i.e.*, NJBSC has colorable claims under ERISA) with the analysis of Judge Bumb in *Shah*, where the court concluded that the <u>same assignment</u> currently before this Court is "a barebones assignment of the right to payment" unlike the complete

13

assignment at issue in *CardioNet*, which included "all of [the patient's] rights and benefits." *Rahul Shah, M.D. v. Horizon Blue Cross Blue Sh.*, 2016 WL 4499551, at *8–9 (D.N.J. 2016). Defendants cannot have it both ways – argue here ERISA standing to defeat remand, and then flip-flop on a motion to dismiss, arguing NJBSC has no colorable ERISA claims, or its claims are beyond the scope of the assignment. Defendants have the burden and have not satisfied prong 1(b) under *Pascack*.

As this Court held in *Goldberg*, the "mere existence of an assignment does not convert [Plaintiffs'] state law claims into an ERISA claim…." Oral Op., at 26:24-27:27 (D.E. 48-6, Ex. AA). Thus, defendants' reliance on assignments is misplaced. A patient cannot assign rights she never had. The Third Circuit in *CardioNet* explained that "an assignee…can acquire through the assignment **no more**…**rights than the assignor had**, and cannot recover under the assignment any more than the assignor could recover." 751 F.3d at 178 (emph. added). Here, the claims arise from (1) the MultiPlan Provider Agreement, and (2) defendants' tortious, fraudulent and unlawful conduct directly to NJBSC. None of the 18 patients are parties to that Agreement; nor are they material to the economic torts and fraud of MultiPlan and Cigna. That 10 patients provided a "right to payment" assignment is irrelevant.

### III.  SUPPLEMENTAL JURISDICITON SHOULD NOT BE EXERCISED

The Court should decline to exercise supplemental jurisdiction, because NJBSC has voluntarily dismissed with prejudice Counts XI and XII, the claims

14

Cigna alleges to be preempted. (Cigna Br. 7,17). NJBSC maintains that such claims are not preempted. (Pl. Br. 37 n.22, 40) (critiquing *Cohen v. Horizon*, 2017 WL 685101 (D.N.J. 2017)). The "possibility–or even likelihood–that ERISA[]…may pre-empt [a] state law claim[] is not [] sufficient…for removal." *Pascack*, 388 F.3d at 398. However, even if a court holds ERISA preempts a part of a suit, courts in this Circuit routinely remand the remaining state law claims:

> [T]he Third Circuit has determined that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court **must** decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."

*Makwana v. Medco Health Servs.*, 2016 WL 7477755, at *4 (D.N.J. 2016) (quoting *Boro. of W. Mifflin*, 45 F.3d at 788 (3d Cir. 1995)). Consequently, even if *arguendo* the Court found an allegation to be preempted, the lion's share should be remanded.[6]

## CONCLUSION

Plaintiff NJBSC's renewed motion to remand should be granted.

Respectfully submitted,

BY:  _s/ Eric D. Katz_____

Dated:  August 9, 2018            ERIC D. KATZ

---

[6] Cigna engages in name-calling, alleging "gamesmanship" and "manipulative tactics" by dismissing two counts. (Cigna Br. 18). These accusations are utterly false. NJBSC's expressly acknowledged that "removal jurisdiction is dictated by the facts and claims at the time of removal." (Pl. Br. 37 n.22). These counts were dismissed "with prejudice"; the defense's speculation about them being re-filed is nonsensical.

15