**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NORTH JERSEY BRAIN & SPINE
CENTER,

               Plaintiff,

               v.

MULTIPLAN, INC., et al.,

               Defendants.

Civil Action No. 17-05967 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff North Jersey Brain & Spine Center's ("Plaintiff") Renewed Motion to Remand for Lack of Subject Matter Jurisdiction.[1] (ECF No. 48.) Defendant MultiPlan, Inc. ("MultiPlan") opposed. (ECF No. 51.) Defendants Connecticut General Life Insurance Co. ("Cigna"); GM Financial; Interplex NAS, Inc.; Humanscale; Teterboro Learning Center; Sharp Electronics Corp.; Macy's Inc.; Ferring Pharmaceuticals, Inc.; Tata Consultancy Services; JPMorgan Chase & Co.; Nippon Express USA, Inc.; Samsung C&T America, Inc.; LSG Sky Chefs Group; Tam Metal Products, Inc.; Daiichi Sankyo, Inc.; and EMSL Analytical, Inc. ("ERISA Plan Sponsors") also opposed. (ECF No. 52.) Plaintiff replied, and then filed a Notice of Supplemental Authority. (ECF Nos. 57, 58.) Cigna and the ERISA Plan Sponsors responded to the Notice of Supplemental Authority. (ECF No. 59.) The Court has carefully considered the parties' arguments and pursuant to Local Civil Rule 78.1 decides the motion

---

[1] On April 25, 2018, after Oral Argument, the Court denied Plaintiff's Motion to Remand (ECF No. 32) and ordered the parties to conduct jurisdictional discovery. (*See* Order, ECF No. 42.)

without oral argument. For the reasons stated below, Plaintiff's Renewed Motion to Remand is granted.

I.  **Background**

The instant matter presents a unique set of facts and legal allegations that deviate from the recent line of cases in this District in which the Court adjudicated motions to remand an action brought by an out-of-network medical services provider against an insurer or payor. In those cases, generally, the plaintiffs asserted a limited number of causes of action against a limited set of defendants, and the causes of actions were based on the performance of services for one patient or a small group of patients. *See, e.g., Atl. Shore Surgical Assocs. v. Local 464A United Food & Commercial Workers Union Welfare Fund*, No. 17-12166, 2018 WL 3611074 (D.N.J. July 27, 2018); *MHA, LLC v. Empire Healthchoice HMO, Inc.*, No. 17-6391, 2018 WL 549641 (D.N.J. Jan. 25, 2018); *Progressive Spine & Orthopaedics, LLC v. Anthem Blue Cross Blue Shield*, No. 17-536, 2017 WL 4011203 (D.N.J. Sept. 11, 2017). Here, Plaintiff asserts fourteen causes of action against seventeen defendants. Plaintiff also seeks damages related to Plaintiff's treatment of an undetermined number of patients over a five-year period. Plaintiff pled specific facts related to eighteen patients to illustrate Defendants' alleged conspiracy and as exemplars of the total damages sought.

Further distinguishing this matter is the limited discovery the Court ordered after Oral Argument on Plaintiff's first Motion to Remand.[2] (ECF No. 32.) On May 1, 2018, the Court ordered Plaintiff to produce "any and all assignments for the eighteen" representative patients. (Order 1, ECF No. 43.) The Court also ordered MultiPlan, Cigna, and the ERISA Plan Sponsors

---

[2] In their Opposition to Plaintiff's first Motion to Remand, Cigna and the ERISA Plan Sponsors requested that the Court compel Plaintiff to produce the assignments at issue. (*See* Defs.' Opp'n Br. 14-15, ECF No. 34.)

2

(collectively, "Defendants") to produce "copies of each of the health benefits plan documents for the" same group of representative patients, and to identify which of the health benefits plans Defendants contend are subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). (Order at 2.)

The Court ordered jurisdictional discovery recognizing that the parties' disputes included "(i) whether Defendants carried their burden to demonstrate that Plaintiff obtained a valid assignment of benefits from patients identified in the Complaint; and (ii) whether Defendants are required to provide the plans at issue, which would reveal whether the plans contain anti-assignment provisions." (Hearing Tr. 38:14-24 (citations omitted).) Moreover, the parties "essentially claim[ed] that their opponent maintain[ed] positions in other litigations inconsistent with the positions presented here—claims which imply a level of gamesmanship on both sides." (*Id.* at 38:24-39:5.) Given the complexity and uniqueness of the case and because assignments and anti-assignment provisions have been a dispositive issue in other matters, the Court ordered limited discovery to aid in the determination of subject matter jurisdiction.[3] (*Id.* at 39:6-20.)

## A. Factual Background[4]

Plaintiff is a medical practice specializing in neurosurgical procedures and treatment of the brain and spinal cord. (Compl. ¶ 6, ECF No. 1-1.) In or around November 2011, MultiPlan

---

[3] The parties' briefs related to the first Motion to Remand dedicated considerable energy to disputing the burden of producing documents the parties possessed and controlled. The wealth of cases the parties cited indicated that the presence of assignments of benefits and anti-assignment clauses represented a significant point of contention between similarly situated parties in previous matters. The course of this litigation indicated that jurisdictional discovery may quickly moot this point of contention and allow the parties, and the Court, to move to more substantive issues. Indeed, the Court found the limited discovery here helpful.

[4] For purposes of the instant motion, the Court "assume[s] as true all factual allegations of the complaint." *Glazer v. Honeywell Int'l, Inc.*, No. 16-7714, 2017 WL 1943953, at *1 n.3 (D.N.J. May 10, 2017) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).)

3

solicited Plaintiff regarding joining MultiPlan's network of medical providers. (*Id.* ¶ 36.) To induce Plaintiff to join the network, MultiPlan promised that Plaintiff would be reimbursed at 80% of Plaintiff's billed charges when Plaintiff treated patients whose health insurance plans were part of the MultiPlan program. (*Id.* ¶ 37.) Plaintiff and MultiPlan entered into a "MPI Participating Professional Group Agreement" (the "Provider Agreement") on or about December 1, 2011. (*Id.* ¶ 38.)

The Provider Agreement incorporated MultiPlan's promise to pay Plaintiff 80% of Plaintiff's rates as it includes a provision that reads: "[MultiPlan] will require Clients and its Users to use the Contract Rates agreed to in this Agreement solely for Covered Services rendered to Participants under a Program which utilizes the Network." (*Id.* ¶ 40.) "Contract Rates" is defined in the Provider Agreement as "equal to Eighty (80%) percent of Group's Billed Charges, less any Co-payments, Deductibles, and Co-insurance, if any, as specified in the Participant's Benefit Program." (*Id.* ¶ 41.) MultiPlan stated that the Provider Agreement would supersede any agreements between MultiPlan and health insurers, such as Cigna, and between MultiPlan and payors, such as the ERISA Plan Sponsors. (*Id.* ¶ 42.) This promise is reflected in a provision that reads: "[MultiPlan] agrees that it has entered into agreements with Clients that specify that the right to access the Network, including access to the Contract Rates, shall be subject to the terms of this Agreement." (*Id.*) The Provider Agreement required MultiPlan to require insurers and payors to provide patients with a means to identify themselves as members of the MultiPlan network, and this was achieved through the placement of the MultiPlan logo on patients' insurance cards. (*Id.* ¶ 59-61.)

Plaintiff alleges that Defendants "failed to reimburse [Plaintiff] for services rendered to MultiPlan Patients in accordance with the terms of the Provider Agreement and applicable New Jersey law and regulations incorporated into the contract." (*Id.* ¶ 90.) Plaintiff alleges facts related

4

to eighteen patients as illustrative of Defendants' course of conduct. (*See id.* ¶¶ 67-85.) In brief, each of the patients presented a health insurance card bearing the MultiPlan logo and Plaintiff provided services to the patients. (*Id.*) Plaintiff sought and received preapproval from Cigna for the patients' treatment, or Plaintiff performed medically necessary emergency surgery on the patient. (*Id.*) Plaintiff sought reimbursement from Cigna for the services provided to the patient and Cigna underpaid, or did not pay, Plaintiff for the services provided. (*Id.*)

Plaintiff alleges that when Plaintiff submitted payments to Cigna, Cigna pursued one of two courses of action. (*Id.* ¶ 96.) In some instances, Cigna would disregard the fact that the patient was a member of the MultiPlan network and pay the claim based on Cigna's interpretation of the patient's benefit plan. (*Id.*) In other instances, Cigna would send the claim to MultiPlan for "repricing." (*Id.*) When repricing, MultiPlan would determine whether Plaintiff's Contract Rate was above the maximum rate for such claims which Cigna and the ERISA Plan sponsors agreed they would pay, and if so, Cigna would pay at the lower rate. (*Id.*) Cigna's conduct was authorized by agreements between MultiPlan and Cigna (the "Access Agreements"). (*Id.* ¶¶ 101-06.)

In December 2015, MultiPlan attempted to modify the Provider Agreement. (*Id.* ¶ 113.) The modification process exposed certain provisions of the Access Agreements, which were previously unknown to Plaintiff. (*See id.* ¶¶ 113-19.) The attempted modifications indicated that the Provider Agreement was in fact governed, and superseded, by the Access Agreements. (*Id.* ¶¶ 115-18.) The modifications also indicated that if the Contract Rates exceeded the reimbursement amount specified in any of the relevant ERISA Plan Sponsors' patient plans (the "ERISA Benefits Plans"), Cigna could elect to not pay according to the Provider Agreement. (*Id.* ¶¶ 116-18.) As a result of the disclosures made during the attempted modification process, Plaintiff terminated the Provider Agreement and the termination became effective on April 26, 2016. (*Id.* ¶ 121.) Plaintiff

has exhausted the dispute processes identified in the Provider Agreement by filing a Notice of Dispute with MultiPlan and filing appeals with Cigna. (*Id.* ¶¶ 129-33.)

On June 20, 2017, Plaintiff filed a fourteen-count complaint against Defendants in the Superior Court of New Jersey, Somerset County, Law Division (the "Underlying Action"). (*Id.* at 1.) Plaintiff brought all causes of action pursuant to New Jersey statutory, regulatory, and common law. (*Id.* ¶ 135.) Plaintiff asserts the following causes of action against all Defendants: Conspiracy (Count I); Breach of Covenant of Good Faith & Fair Dealing (Count IV); Promissory Estoppel (Count V); Negligent Misrepresentation (Count VI); Tortious Interference (Count VIII); Unjust Enrichment and *Quantum Meruit* (Count X); Violations of New Jersey Regulations Governing Reimbursement of Emergency Services Rendered by Out-of-Network Providers (Count XI); and Violations of New Jersey's Health Information Networks and Technologies Act ("HINT") and Health Claims Authorization, Processing, and Payment Act ("HCAPPA") (Count XII). (*Id.* ¶¶ 139-47, 173-90, 198-207, 213-36.) Plaintiff asserts the following causes of action against only MultiPlan: Breach of Contract (Count III); Fraud (Count VII); and Negligence (Count IX). (*Id.* ¶¶ 165-72, 191-97, 208-12.) Plaintiff asserts the following causes of action against Cigna and the ERISA Plan Sponsors: Breach of Implied Contract (Count II); and Business Libel (Count XIII). (*Id.* ¶¶ 148-64, 237-43.) Plaintiff also seeks a declaratory judgment nullifying the Provider Agreement and allowing Plaintiff to bill patients for unpaid services. (*Id.* ¶¶ 244-48.)

### B. Removal to the District of New Jersey

On August 9, 2017, Nippon Express USA, Inc. and GM Financial (the "Removing Defendants") removed the Underlying Action to this Court pursuant to 28 U.S.C. §§ 1441, 1446, and 1331. (Notice of Removal 1, ECF No. 1.) Removing Defendants stated that ERISA Section

6

502(a) preempts Plaintiff's claims, and, thus, removal is proper pursuant to 28 U.S.C. § 1441(b). (*Id.* ¶ 10.)

Removing Defendants asserted that there are at least three different bases for complete preemption. (*Id.* ¶ 12.) First, Removing Defendants asserted that the "Court would be required to make determinations of whether [Plaintiff's] claims were for covered services and eligible for reimbursement under the ERISA Plans," because the "Complaint raises claims challenging denials of coverage for [Plaintiff's] services." (*Id.* ¶ 12.) Second, Removing Defendants argued that Plaintiff's unjust enrichment and *quantum meruit* claim "is completely preempted because [Plaintiff] alleges no independent duty that would obligate Cigna or the ERISA Plan Sponsors to reimburse [Plaintiff] for its services." (*Id.* ¶ 13.) Removing Defendants argued that the "only possible obligation that Cigna or the ERISA Plan Sponsors would have to cover and pay benefits for [Plaintiff's] services would be under the ERISA Plans," and "to recover for its services . . . [Plaintiff] must asserts its patients' rights under the ERISA Plans as an assignee." (*Id.*) Third, Removing Defendants argued that Counts XI and XII "are independently preempted by ERISA because those claims require the application and interpretation of the individual ERISA plan documents to determine the rights and responsibilities of the parties and the obligations for claims made." (*Id.* ¶ 14.) Finally, Defendants argued that the Court has "supplemental jurisdiction over any otherwise non-removable claims or causes of action . . . ." (*Id.* ¶ 16.)

## II. Legal Standard

### A. Removal

Subsection (a) of 28 U.S.C. § 1441 provides that defendants may remove a state-court civil action to the appropriate federal district court if the district court has "original jurisdiction" over the matter. The Third Circuit has advised that Section 1441 "is to be strictly construed against removal." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). The

7

removing party "carries the burden of proving that removal is proper." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015). The removing party also bears the burden of "showing that at all stages of the litigation the case is properly before the federal court." *KIA Motors Am., Inc.*, 357 F.3d at 396. When ruling on a motion to remand, courts must "focus on the plaintiff's complaint at the time the petition for removal was filed." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

Section 1331 of Title 28 of the United States Code provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A cause of action "arises under" federal law, and removal is proper, when "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 353 (3d Cir. 1995). A defense based on federal law to a state law cause of action is usually "insufficient to warrant removal to federal court." *Id.* For example, a defense of preemption "ordinarily is insufficient justification to permit removal to federal court." *Id.* at 354; *see also Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 398-99 n.4 (3d Cir. 2004) (explaining that the defense of preemption under ERISA § 514(a) must be distinguished from *complete* preemption under § 502(a) because § 514(a) "merely governs the law that will apply to state law claims . . . .") (emphasis in original). The doctrine of complete preemption "recognizes 'that Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Pascack Valley*, 388 F.3d at 399.

### B. ERISA Preemption

In *Metropolitan Life Insurance Co. v. Taylor*, the Supreme Court held that the doctrine of complete preemption applies to "state law causes of action which fit within the scope of ERISA's

8

civil-enforcement provisions" found in 29 U.S.C. § 1132(a).[5] *Dukes*, 57 F.3d at 354 (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)). The Court, accordingly, will have subject matter jurisdiction over Plaintiff's claims only if they are within the scope of Section 502.

A claim is within the scope of Section 502 if "(1) the [plaintiff] could have brought its . . . claim under [Section] 502(a), and (2) no other legal duty supports the [plaintiff's] claim." *Pascack Valley*, 388 F.3d at 400 (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 211-12 (2004)). This test is conjunctive, and a state-law cause of action is completely preempted only when both prongs of the test are satisfied. *N.J. Carpenters & The Trustees Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014). When determining whether a plaintiff's cause of action is within the scope of Section 502, the Court may examine the complaint, the statutes on which the claims are based, and the relevant plan documents. *See Davila*, 542 U.S. at 211 ("To determine whether respondents' causes of action fall "within the scope" of ERISA [Section] 502(a)(1)(B), we must examine respondents' complaints, the statute on which their claims are based . . . and the various plan documents."). The Court may also "look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Pascack Valley*, 388 F.3d at 400 (quoting *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 274 (3d Cir. 2001)).

The first prong of the *Pascack Valley* test is further broken down into two inquiries: "[(i)] [w]hether the plaintiff is the *type* of party that can bring a claim pursuant to 502(a)(1)(B) and [(ii)] whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to Section 502(a)(1)(B)." *Progressive Spine*, 2017 WL 4011203, at *5

---

[5] The statute provides, in pertinent part, that "[a] civil action may be brought . . . by a participant or beneficiary" seeking relief provided for by the statute or "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a) ("Section 502").

9

(emphasis in original). Section 502(a)(1)(B) limits the type of party that may bring a claim pursuant to the same section to a "participant"[6] or a "beneficiary."[7] 29 U.S.C. § 1132(a) ("A civil action may be brought . . . by a participant or beneficiary" seeking relief provided for by the statute or "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ."). A third-party healthcare provider that does not fit the definition of a participant or a beneficiary may nevertheless gain derivative standing under Section 502(a) when "a patient assigns payment of insurance benefits to [the] healthcare provider . . . ." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc. (NJBSC)*, 801 F.3d 369, 372 (3d Cir. 2015).

Under the second prong of the *Pascack Valley* test, "a legal duty is 'independent' if it is not based on an obligation under an ERISA plan, or if it 'would exist whether or not an ERISA plan existed.'" *N.J. Carpenters & the Trustees Thereof*, 760 F.3d at 303 (quoting *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 950 (9th Cir. 2009)). "In other words, if the state law claim is not 'derived from, or conditioned upon' the terms of an ERISA plan, and '[n]obody needs to interpret the plan to determine whether that duty exists,' then the duty is independent." *Id.* (quoting *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013)).

---

[6] A participant is "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7).

[7] A beneficiary is a "person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

10

### III. Discussion

A federal question is not present on the face of Plaintiff's Complaint. Plaintiff asserts that it is suing in an individual capacity as an out-of-network provider, not in a derivative capacity as an assignee of its patients. Plaintiff's claims are based on the Provider Agreement, quasi contract theories, alleged misrepresentations, violations of New Jersey statutes, and other theories. In Plaintiff's view, these claims are outside the scope of the relationships between Cigna and the patients.

Plaintiff frames the Complaint as a conspiracy between MultiPlan, Cigna, and the ERISA Plan Sponsors to deprive Plaintiff the benefit of the bargain codified in the Provider Agreement. The eighteen patients are merely exemplars of the conspiracy and the damages suffered by Plaintiff. Defendants, on the other hand, frame this matter as eighteen individual suits combined in one litigation for the recovery of benefits under the applicable ERISA Benefits Plans.

The Court's view is that this case resembles a sphinx, the body of which is the Provider Agreement and the wings of which are the eighteen representative patients. While the eighteen patients are on the periphery, without them, the case would struggle to move forward. Specifically, the patients provide helpful examples of how the alleged conspiracy operated. The patients also help illustrate the alleged damages Plaintiff suffered. Defendants, for their part, have good cause to believe this matter walks and talks like a more traditional claim for denied benefits.

Notwithstanding the riddles presented by the outward appearances of this matter, the resolution of the instant motion is straightforward when the Court applies the relevant case law from this Circuit to Plaintiff's claims and allegations. Ultimately, the Court holds that significant portions of Plaintiff's claims fail both prongs of the *Pascack Valley* test, and any portions of

Plaintiff's claims that survive the test, fail to provide a sufficient basis for the Court to exert supplemental jurisdiction over the other claims.[8]

### A.     Prong 1 of the *Pascack Valley* test

The first prong of the *Pascack Valley* test requires the Court to determine if Plaintiff could have brought the claims under Section 502(a). This inquiry requires the Court to determine (i) whether Plaintiff is the type of party that can bring a claim under Section 502(a)(1)(B) and (ii) whether the actual claims Plaintiff asserts "can be construed as a colorable claim for benefits." *Progressive Spine*, 2017 WL 4011203, at *5. Plaintiff is neither a "participant" nor a "beneficiary" as defined in the statute. *See* 29 U.S.C. §§ 1002(7),(8). Plaintiff, accordingly, must have a valid assignment from the patient for this first subtest to be satisfied as to that patient. *NJBSC*, 801 F.3d at 372. Even if Plaintiff has a valid assignment, an anti-assignment provision in the patient's benefits plans would prevent Plaintiff from having derivative standing. *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield (AOSM)*, 890 F.3d 445, 454 (3d Cir. 2018).

---

[8] Defendants argue that Counts XI and XII are completely preempted by Section 502. Given the nature of the counts and their statutory underpinning, there is some logic to Defendants' arguments. It is unclear to the Court, however, whether Counts XI and XII would satisfy the second prong of the *Pascack Valley* test. Specifically, the parties have not sufficiently addressed whether the Provider Agreement's incorporation of certain New Jersey statutes and regulations gives rise to an independent legal duty. There is a colorable argument that provisions of the Provider Agreement and the statutes and regulations cited in Counts XI and XII are so closely intertwined that the legal duties are one and the same. There is, however, an equally colorable argument that there are independent duties arising from the Provider Agreement and that a breach of the Provider Agreement is not necessarily a breach of the statutes and regulations, and vice versa. In any event, Plaintiff has dismissed Counts XI and XII. Given the questions regarding whether Counts XI and XII would satisfy prong two of the *Pascack Valley* test, the Court declines to use these counts as a basis of the Court's exercise of subject matter jurisdiction. Moreover, in light of the Court's holdings below, doing otherwise would result in the Court exercising supplemental jurisdiction over a suit on the basis of two dismissed causes of action while the twelve live claims fail to provide the Court with subject matter jurisdiction. This matter does not present the "extraordinary circumstances" that would justify the Court exercising jurisdiction over state law claims when the other claims are insufficient to provide subject matter jurisdiction. *See Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317, 322 (3d Cir. 2010).

Here, Plaintiff has received an assignment from fifteen of the eighteen representative patients.[9] (Pl.'s Moving Br. at 7.) Of those fifteen patients, there is an anti-assignment provision in the relevant benefits plans of four patients: A.N., H.T., J.L., and T.J. As a result, the first subpart of the first prong of the *Pascack Valley* test is satisfied as to at least eleven patients because Plaintiff could assert derivative standing.

Plaintiff argues that the anti-assignment provisions in the plans prevent Plaintiff from asserting derivative standing for A.N., H.T., J.L., and T.J.. (Pl.'s Moving Br. at 8.) Cigna and the ERISA Plan sponsors respond that the Third Circuit's recent cases on anti-assignment provisions only apply to anti-assignment provisions that raise an absolute bar on a patient assigning her or his rights and the provisions before the Court only require the patients to receive Cigna's or the ERISA Plan Sponsors' approval for the assignment of rights. (Defs.' Opp'n Br. at 9-10 (discussing *AOSM.*, 890 F.3d at 455).) Relatedly, Cigna and the ERISA Plan Sponsors assert that the previous partial payments to Plaintiff prevent Plaintiff from establishing that Plaintiff cannot receive benefits under the ERISA plan. (*Id.* at 10.)

The Third Circuit has rejected Defendant's line of reasoning by holding that "routine processing of a claim form, issuing payment at the out-of-network rate, and summarily denying the informal appeal do not demonstrate 'an evident purpose to surrender' an objection to a provider's standing in a federal lawsuit."[10] *AOSM*, 890 F.3d at 454. Moreover, even if a partial

---

[9] This group of fifteen patients includes: D.B., M.B., A.F., I.G., J.G., M.G., R.G., T.J., J.L., A.N., N.N., A.P., M.R., and H.T. (Pl.'s Moving Br. at 7.) M.G. is double-counted because Plaintiff treated M.G. twice and received assignments for both treatments. (*Id.*)

[10] In *AOSM*, the Third Circuit considered the requirements for a waiver under Pennsylvania law. *See AOSM*, 890 F.3d at 454 n.8. The requirements for waiver under New Jersey law are similar to those under Pennsylvania law. *Compare W. Jersey Title & Guar. Co. v. Indus. Tr. Co.*, 141 A.2d 782, 787 (1958) (stating that under New Jersey Law a prerequisite for a "waiver of a legal right [is] that there be 'a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part. . . .") *with Brown v. City of Pittsburgh*, 186 A.2d 399,

payment operated as a waiver of the anti-assignment provisions, such a waiver does not address those claims Plaintiff asserts that the patients could not assert themselves. For example, none of the patients could assert Counts III, VII, and IX because they are asserted only against MultiPlan and there is no indication that any of the patients have the ability to assert claims against MultiPlan in relation to the Provider Agreement. Similarly, none of the patients could assert Count XIII (Business Libel) against Cigna and the ERISA Plan Sponsors because the core of the claim is that Cigna and the ERISA Plan Sponsors published certain derogatory statements regarding Plaintiff. The Court, accordingly, finds that the first part of the first prong of the *Pascack Valley* test is satisfied as to eleven of the eighteen representative patients, but only for those claims the eleven patients could assert against Defendants: Counts II, IV, V, VI, X, XI, and XII.

As to the second part of the first prong, Defendants have not established that Plaintiff's claims are of the type permissible under Section 502(a)(1)(B). Section 502 allows a participant or beneficiary to bring suit to "recover benefits due to [the participant or beneficiary] under the terms of [the participant's or beneficiary's] plan, to enforce [the participant's or beneficiary's] rights under the terms of the plan, or to clarify [the participant's or beneficiary's] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a). Defendants' arguments regarding the second part of the first prong blend with their arguments under the second *Pascack Valley* prong and the Court will address those arguments below. Nevertheless, looking beyond the face of the Complaint, the crux of the dispute between the parties is whether Defendants were required to reimburse Plaintiff at 80% of the Contract Rates, not whether Plaintiff has a right to payment. In the Third Circuit, a suit based on the former is not preempted by ERISA while a suit based on the latter is completely preempted by ERISA. *See CardioNet, Inc. v. Cigna Health Corp*, 751 F.3d

---

401 (1962) (stating that under Pennsylvania law, a waiver requires a "clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it . . . .")

14

165, 178 (3d Cir. 2014) ("[A] provider may bring a contract action for an insurer's failure to reimburse the provider pursuant to the terms of [a separate agreement], while a claim seeking coverage of a service may only be brought under ERISA.") (citation omitted); *see also Emergency Physicians of St. Clare's v. United Health Care*, No. 14-404, 2014 WL 7404563, at *5 (D.N.J. Dec. 29, 2014) ("ERISA does not, however, preempt claims over the *amount* of coverage provided . . . .") (citation omitted) (emphasis in original).

Cigna and the ERISA Plan Sponsors argue that for at least eight of the patients at issue, Plaintiff disputes the denial of coverage of claims "because at least some of the services [Plaintiff] provided were not covered under the ERISA Plans or because the claim was not timely." (Defs.' Opp'n Br. at 13.) Cigna and the ERISA Plan Sponsors, however, provide no authority for their assertion that a dispute over a claim that was both partially denied and partially paid is actually a claim seeking coverage and thus preempted by ERISA. More substantively, the issue of whether the claims were covered under the ERISA Benefits Plans or untimely pursuant to the same is not essential to Plaintiff's claim. This issue is essential to Defendants' defenses. Plaintiff pled that the refusals to pay were in violation of the Provider Agreement, not that they were in violation of the ERISA Benefits Plans. To determine whether Plaintiff's allegations are true, the Court must turn to the Provider Agreement and the provisions therein. To the extent Defendants argue that the claims were not covered by the ERISA Benefits Plans or were untimely, the Court may then turn to the ERISA Benefits Plans. Defendants may not convert Plaintiff's state law claims to a federal question through an anticipated defense to the claims. *See Wells Fargo Bank, N.A. v. Dey-El*, No. 17-1762, 2018 WL 283732, at *3 (D.N.J. Jan. 3, 2018) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("A case 'may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the

plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.'").

### B. Prong Two of the *Pascack Valley* test

Prong Two of the *Pascack Valley* test requires the Court to determine if any independent legal duty supports Plaintiff's claim. On this prong, Plaintiff asserts that the presence of the MultiPlan logo on the insurance cards presented to Plaintiff and Plaintiff's reliance on this logo, pursuant to the Provider Agreement, establishes an independent duty. The Court agrees with Plaintiff.

Plaintiff insists that it relied on the patients' presentation of the insurance cards bearing the MultiPlan Logo with the understanding that such presentation was in accordance with the Provider Agreement. (Compl. ¶¶ 94-97.) Thus, Plaintiff proceeds, in part, on the theory that the presentation of and reliance on the MultiPlan logo created a legal duty separate and apart from any of Defendants' duties to pay according to the ERISA Benefits Plans. (*Id.*) This is enough to satisfy the second prong of the *Pascack Valley* test. Whether under New Jersey law there is any merit to Plaintiff's claims is a question for New Jersey's courts. *Pascack Valley*, 388 F.3d at 404 ("It may very well be that the [Plaintiff's] breach of contract claim against the Plan will fail under state law, or that the [Plaintiff's] state law claims are pre-empted under § 514(a). These matters, however, go to the merits of the [Plaintiff's] breach of contract claim, which can only be adjudicated in state court.").

There are parallels between this matter and *Pascack Valley* that further reveal why the second prong of the test is not satisfied. In *Pascack Valley*, the plaintiff, a hospital, entered into a "Network Hospital Agreement" with an independent consultant, MagNet, Inc. ("MagNet"). *Id.* at 396. MagNet operated as an intermediary between hospitals and certain health plans. *Id.* The health plans entered into bilateral "Subscriber Agreements" with MagNet in which the health plans

16

agreed to directly pay the hospitals a discounted rate for services provided to patients who were members of the health plans. *Id.* The hospital provided services to two patients, was not paid in a timely manner, and filed suit to recover the difference between the discounted rate it was paid and the full amount billed. *Id.* The hospital asserted: (i) it was a third-party beneficiary of the Subscriber Agreement between MagNet and the health plan and (ii) the health plan was obligated to comply with certain provisions of the Network Hospital Agreement between the hospital and MagNet. *Id.* at 397.

The Third Circuit noted that coverage and eligibility were not in dispute in the matter, and the crux of the dispute was the meaning of the Subscriber Agreement. *Id.* at 402. According to the Third Circuit, the hospital's right to recover depended on the operation of the Subscriber Agreements, not the benefits plans between the health plans and the patients. *Id.* In reaching its decision, the Third Circuit discussed the Ninth Circuit's opinion in *Blue Cross of California v. Anesthesia Care Associates Medical Group, Inc.* (*Anesthesia Care*), 187 F.3d 1045 (9th Cir. 1999), and found that the case before it was similar to *Anesthesia Care*. *Id.* Specifically, the Third Circuit found it important that: "(1) the Hospital's claims in this case arise from the terms of a contract–the Subscriber Agreement–that is allegedly independent of the Plan; (2) the participants and beneficiaries of the Plan do not appear to be parties to the Subscriber Agreement; and (3) '[t]he dispute here is not over the *right* to payment, which might be said to depend on the patients' assignments to the [Hospital], but the amount, or level, of payment, which depends on the terms of the [Subscriber Agreement].'" *Id.* at 403-04.

The three factors the Third Circuit found important in *Anesthesia Care* are also present in the instant matter. First, Plaintiff's claims arise from the terms of the Provider Agreement, which is independent from (i) the Access Agreements between Cigna and MultiPlan and (ii) the ERISA Benefits Plans. Second, the patients are not parties to the Provider Agreement. Finally, as

17

discussed above, the dispute between the parties is not over the right to payment pursuant to the ERISA Benefits Plans. Rather, Plaintiff disputes it was entitled to the rates provided for in the Provider Agreement. The Court, accordingly, finds that independent legal duties support Plaintiff's claims.

In sum, the first subpart of the first prong of the *Pascack Valley* test is satisfied for a subset of the exemplar patients and a subset of Plaintiff's claims. The second subpart of the first prong is not satisfied as to all of the claims. The second prong of the *Pascack Valley* test is not satisfied. The Court, accordingly, finds that it lacks subject matter jurisdiction over this matter.

### IV. Conclusion

For the reasons set forth above, Plaintiff's motion to remand is granted. An order consistent with this Memorandum Opinion will be entered.

*/s/ Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**